UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

JEAN SUAREZ, individually and as Personal
Representative of the Estate of DANIEL TYSON,
deceased,

       Plaintiff,

vs.

CITY OF HOLLYWOOD, a Florida Municipal
Corporation, CHIEF OF POLICE TOMAS
SANCHEZ, in his official capacity, TASER
INTERNATIONAL, INC., and JOHN DOES 1-20,
individually,

       Defendants.
_____/

**COMPLAINT**

Plaintiff, JEAN SUAREZ, individually, and as Personal Representative of the Estate of DANIEL TYSON, deceased, by and through undersigned counsel, sues Defendants, CITY OF HOLLYWOOD, CHIEF OF POLICE TOMAS SANCHEZ, TASER INTERNATIONAL, INC., and JOHN DOES 1-20, and alleges the following:

**INTRODUCTION**

1.    This action arises out of the wrongful death of Daniel Tyson. Police used unnecessary and unreasonable excessive force against Mr. Tyson, who suffered from mental illness at the time of his death, by repeatedly discharging a Taser stun gun on Mr. Tyson, as well as hitting him, after police had restrained him in handcuffs and leg shackles face down on the ground. This Complaint asserts causes of action against Defendants for wrongful death and

violations of Mr. Tyson's constitutionally protected rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

## PARTIES

2. Plaintiff Jean Suarez is mother and the personal representative of the Estate of Daniel Tyson, who died on October 27, 2014. Ms. Suarez is a citizen of Florida.

3. Defendant City of Hollywood is a political subdivision of the State of Florida, which manages and operates the Hollywood Police Department.

4. Defendant Chief of Police Tomas Sanchez ("Police Chief Sanchez") is the Chief of the Hollywood Police Department, and is charged with and responsible for the supervision, instruction, discipline, control, and conduct of the Hollywood Police Department and its personnel. At all material times, Police Chief Sanchez had the power, right, and duty to control the manner in which his officers carried out the objectives of their employment and to see that all orders, rules, instructions, regulations, and policies of the Hollywood Police Department were consistent with state and federal constitutions, statutes, ordinances, regulations, or customs of the State of Florida and the United States.

5. Defendant Taser International, Inc. ("Taser International") is an Arizona corporation doing business in Broward County, Florida.

6. Upon information and belief, at all material times, Defendants John Does 1-20 were employed by the Hollywood Police Department and are citizens of Florida. John Does 1-20 are being sued in their individual capacities.

2

**Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of rights, privileges, or immunities secured by the Constitution and laws of the United States, and pursuant to 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to a prevailing party in an action to enforce a provision of § 1983.

8. This Court has supplemental jurisdiction over the state law claims asserted in this Complaint pursuant to 28 U.S.C. § 1367, as such state law claims derive from a common nucleus of operative facts as the claims arising under federal law so as to form part of the same case or controversy.

9. Venue is proper in the Southern District of Florida because Defendant City of Hollywood is located within this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

10. All conditions precedent to this action have been complied with or have been waived. Pursuant to Florida Statute § 768.28, statutory notices of claim were properly served upon the City of Hollywood and the Hollywood Police Department, as well as the Department of Insurance. More than six months have passed since the service of these notices.

## FACTUAL ALLEGATIONS

11. Daniel Tyson lived in a small apartment complex in the 1800 block of Jackson Street in Hollywood, Florida, at the time of his death.

3

12. In the early afternoon of October 27, 2014, a neighbor observed Mr. Tyson—who suffered from severe mental illness—in an agitated state, speaking loudly with a woman who was visiting his apartment.

13. A few minutes later, Mr. Tyson appeared naked on his balcony in the courtyard of the apartment complex, talking to the air and a tree.

14. The neighbor called her landlord on the phone to let him know what was happening. She and the landlord decided it would be appropriate to call the police non-emergency number to report the incident.

15. The landlord reported the incident to police. The landlord also reported that Mr. Tyson suffered from mental illness.

16. About 5 or 10 minutes later, Officer Alex Ramirez, upon information and belief a licensed officer of the Hollywood Police Department, arrived at the courtyard of the apartment complex. By this time, Mr. Tyson was wearing a robe, although it was open in the front and he was still naked.

17. Officer Ramirez told Mr. Tyson that he could not be naked in public.

18. Mr. Tyson picked up a sundial and approached the officer.

19. Officer Ramirez told Mr. Tyson to stop or he would discharge his stun gun on him. Mr. Tyson continued to approach, and the officer discharged his stun gun (or "tased" him), striking Mr. Tyson and incapacitating him.

20. Officer Ramirez then "hip-flipped" an incapacitated Mr. Tyson to the ground. Mr. Tyson landed on his stomach.

21. Mr. Tyson was placed in handcuffs and leg shackles and remained face down on the ground.

Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

22. Once restrained in this manner, and at all material times thereafter, Mr. Tyson was under control, not resisting arrest, not posing a threat to officers or others, nor attempting to flee.

23. At around the same time as the take down, more officers, identified in this Complaint as John Does, arrived at the scene.

24. Although Mr. Tyson was now restrained completely and successfully, officers stomped on Mr. Tyson's right hamstring and tased him again.

25. A neighbor who witnessed the take down tried to inform one of the officers of what medications Mr. Tyson needed. The officer, identified as a John Doe in this Complaint, yelled at her to go back inside "and that the only thing he needs is to get in the ambulance."

26. Although it was clear to the officers and other City of Hollywood employees and agents present at the scene that at this point Mr. Tyson needed medical attention, officers failed or refused to provide such necessary medical care.

27. At all material times, Mr. Tyson was repeatedly tased in the presence of other officers who did not intervene to stop the tasing.

28. A neighbor then observed officers on top of Mr. Tyson.

29. About 2 or 3 minutes later, officers finally turned Mr. Tyson's body over. His body was limp. One of the officers removed Mr. Tyson's leg shackles.

30. At this point, there were approximately 15 to 20 responders in the courtyard of the apartment complex, where Mr. Tyson was restrained face down.

31. Officers and paramedics tried to revive Mr. Tyson for a few minutes, then put his limp body on a gurney and took him away.

32. Mr. Tyson suffered physical injury, pain and suffering, and ultimately died as a direct and proximate result of being tased repeatedly.

5

33. The stun gun or guns (also referred to as "Taser weapons" or "Tasers") used in this case by the Hollywood Police Department's officers, including the John Doe defendants, were manufactured, sold, marketed, and/or designed by Defendant Taser International.

## CAUSES OF ACTION

### COUNT I

**WRONGFUL DEATH, FLA. STAT. §§ 768.16–.26 & 768.28, AGAINST DEFENDANT CITY OF HOLLYWOOD**

34. Plaintiff incorporates and realleges paragraphs 1 through 33 as if fully set forth herein.

35. The City of Hollywood's officer, agents, and employees owed a duty to Mr. Tyson to use force reasonably necessary to gain control over him and to provide necessary medical attention to him.

36. The City of Hollywood's officer, agents, and employees breached these duties.

37. As a direct and proximate cause of the City of Hollywood's officers, agents, and employees' negligent and wrongful acts as described above, Mr. Tyson died.

38. As a direct and proximate cause of the City of Hollywood's officers, agents, and employees' negligent and wrongful acts as described above, Plaintiff, individually or on behalf of Mr. Tyson's estate, has suffered, and will continue to suffer, damages including medical or funeral expenses, loss of earnings, loss of prospective net accumulations of the estate, loss of support and services and/or mental pain and suffering.

39. The City of Hollywood is vicariously liable for the negligent and wrongful acts of its officers, agents, and employees, as described above.

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment in favor of Plaintiff for all damages allowed by law, plus any applicable interest, costs, and for any other relief the Court deems just and proper.

## COUNT II

**VIOLATION OF 42 U.S.C § 1983**
**AGAINST DEFENDANT CITY OF HOLLYWOOD AND POLICE CHIEF SANCHEZ**

40. Plaintiff incorporates and realleges paragraphs 1 through 33 as if fully set forth herein.

41. At all material times, City of Hollywood employees, agents, and officers, including the officers named as John Doe Defendants in this action, were acting under the color of state law and pursuant to the policy, custom, or usage of the City of Hollywood and Police Chief Sanchez.

42. At all material times, the City of Hollywood had a custom, policy, or practice whereby its police officers used excessive force when attempting to detain individuals, including Mr. Tyson, by overusing their department-issued Tasers.

43. At all material times, the City of Hollywood had a custom, policy, or practice whereby it failed to adequately supervise, discipline, or train its employees, agents, and officers, including the John Doe Defendants named in this action, in the appropriate and reasonable use of Tasers.

44. At all material times, the City of Hollywood had a custom, policy, or practice whereby its employees, agents, and officers, including the John Doe Defendants named in this action, failed or refused to intervene to stop other officers from using excessive force in detaining individuals, including Mr. Tyson.

7

**Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

45. The customs, policies, or practices identified in paragraphs 41 through 43 constitute deliberate indifference to Mr. Tyson's Fourth and Fourteenth Amendment rights under the United States Constitution, including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention, the right to be free from unlawful seizure, and the right to be free from excessive use of force in the course of arrest.

46. The City of Hollywood's and Police Chief Sanchez's implementation and execution of the customs, policies, or practices identified in paragraphs 41 through 43 caused the violation of Mr. Tyson's constitutional rights.

47. As a direct and proximate result of the above-described actions of City of Hollywood's employees, agents, and officers (including the John Doe defendants). Acting under the supervision, training and orders of Police Chief Sanchez, and pursuant to the City of Hollywood's customs or policies, Mr. Tyson died.

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment in favor of Plaintiff for all damages allowed by law, plus any applicable interest, as well as attorney's fees and costs, and for any other relief the Court deems just and proper.

## COUNT III

### VIOLATION OF 42 U.S.C § 1983
### AGAINST DEFENDANTS JOHN DOES 1-20

48. Plaintiff incorporates and realleges paragraphs 1 through 33 as if fully set forth herein.

49. At all material times, John Does 1-20 were acting under color of state law.

50. The force used by John Does against Mr. Tyson constituted unreasonable and excessive use of force, in violation of Mr. Tyson's clearly established constitutional rights.

**Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

51. John Does failed to provide necessary medical care to Mr. Tyson, in violation of Mr. Tyson's clearly established constitutional rights.

52. John Does failed or refused to intervene when a constitutional violation was taking place in their presence, in violation of Mr. Tyson's clearly established constitutional rights. In particular, John Does failed or refused to stop other officers from using or continuing to use excessive force against Mr. Tyson, and John Does failed or refused to stop other officers from failing to provide necessary medical care to Mr. Tyson.

53. Through their actions described above, John Does 1-20 deprived Mr. Tyson of his Fourth and Fourteenth Amendment rights under the United States Constitution, including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention, the right to be free from unlawful seizure, and the right to be free from excessive use of force during the course of arrest.

54. As a direct and proximate result of the actions of John Does 1-20, Mr. Tyson died.

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment in favor of Plaintiff for all damages allowed by law, including punitive damages, plus any applicable interest, as well as attorney's fees and costs, and for any other relief the Court deems just and proper.

## COUNT IV

### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132, AGAINST DEFENDANT CITY OF HOLLYWOOD

55. Plaintiff incorporates and realleges paragraphs 1 through 33 as if fully set forth herein.

9

**Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

56. Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

57. Defendant City of Hollywood violated Mr. Tyson's right to be free from discrimination on the basis of his disability, pursuant to Title II of the ADA.

58. The City of Hollywood is a public entity that received federal funding.

59. Mr. Tyson suffers from a qualifying disability of mental impairment including bipolar disorder and manic depression.

60. The City of Hollywood and its police officers John Does 1-20 knew that Mr. Tyson had a disability when they encountered him because Mr. Tyson's landlord relayed that information to the police dispatcher.

61. Tyson is qualified to receive the same law enforcement services that the City of Hollywood provides to other non-disabled individuals.

62. In particular, Mr. Tyson is entitled to the benefit of a lawful exercise of police powers, including the right not to be subjected to an unlawful and excessive use of force against him.

63. The City of Hollywood discriminated against Mr. Tyson solely because of his disability.

64. The City of Hollywood failed to train or supervise officers in properly complying with Title II of the ADA.

**Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

65. After Mr. Tyson was secured in handcuffs and leg shackles, and no longer posed a threat to human safety, officers were under a duty to reasonably accommodate Mr. Tyson's disability in handling him and providing proper medical care to him.

66. Instead, officers continued to inflict injury upon Mr. Tyson, in violation of his constitutional rights and his rights under Title II of the ADA.

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment in favor of Plaintiff for all damages allowed by law, including punitive damages, plus any applicable interest, as well as attorney's fees and costs, and for any other relief the Court deems just and proper.

## COUNT V

### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794, AGAINST DEFENDANT CITY OF HOLLYWOOD

67. Plaintiff incorporates and realleges paragraphs 1 through 33 as if fully set forth herein.

68. Section 504 of the Rehabilitation Act ("Rehab Act") provides that "[n]o otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

69. Defendant City of Hollywood violated Mr. Tyson's right to be free from discrimination on the basis of his disability, pursuant to the Rehab Act.

70. The City of Hollywood is a public entity that received federal funding.

71. Mr. Tyson suffers from a qualifying disability of mental impairment including bipolar disorder and manic depression.

11

72. The City of Hollywood and its police officers John Does 1-20 knew that Mr. Tyson had a disability when they encountered him because Mr. Tyson's landlord relayed that information to the police dispatcher.

73. Tyson is qualified to receive the same law enforcement services that the City of Hollywood provides to other non-disabled individuals.

74. In particular, Mr. Tyson is entitled to the benefit of a lawful exercise of police powers, including the right not to be subjected to an unlawful and excessive use of force against him.

75. The City of Hollywood discriminated against Mr. Tyson solely because of his disability.

76. The City of Hollywood failed to train or supervise officers in properly complying with the Rehab Act.

77. After Mr. Tyson was secured in handcuffs and leg shackles, and he no longer posed a threat to human safety, officers were under a duty to reasonably accommodate Mr. Tyson's disability in handling him and providing proper medical care to him.

78. Instead, officers continued to inflict injury upon Mr. Tyson, in violation of his constitutional rights and his rights under the Rehab Act.

## COUNT VI

**NEGLIGENT FAILURE TO WARN OR INSTRUCT ON SAFE USE OF TASERS AGAINST DEFENDANT TASER INTERNATIONAL**

79. Plaintiff incorporates and realleges paragraphs 1 through 33 as if fully set forth herein.

80. Taser International manufactured the Tasers, used in causing Mr. Tyson's death.

12

81. Taser International knew or should have known by exercising reasonable care that the Taser weapon is inherently dangerous or has dangerous propensities. In particular, Tasers distribute an electrical shock of up to 50,000 volts at 26 watts to their target subject for a period of at least 5 seconds. Exposure to such levels of electric shock can cause death or serious injury if the Taser is misused or overused.

82. In the reasonable and ordinary course of business, Taser International established or should have established standards governing the use of Tasers to prevent serious injury or death to persons, including Mr. Tyson.

83. In the reasonable and ordinary course of business, Taser International foresaw or should have foreseen the possible uses of its Taser weapon, including misuse or overuse, as well as the potential damage or injury that might result from such possible uses, misuses or overuses, including serious injuries and death to persons, including Mr. Tyson.

84. Taser International owes a duty of reasonable care to foreseeable subject targets of its Taser weapon, including Mr. Tyson, to warn or instruct users of the Taser weapon about unreasonably dangerous or ineffective use of Tasers.

85. Taser International breached its duty of reasonable care by negligently failing to warn or instruct the City of Hollywood of the inherent dangers and propensities associated with its Taser weapons, so that it could in turn properly train Hollywood Police Department officers on the safe and effective use of Tasers.

86. Specifically, Taser International failed to warn about the amount, duration, and electricity level of charges a human body can safely tolerate without causing serious injury or death to the person, such as Mr. Tyson.

Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

87. Taser International's breach of duty described above directly and proximately caused Mr. Tyson's death and Plaintiff's damages, including medical or funeral expenses, loss of earnings, loss of prospective net accumulations of the estate, loss of support and services and/or mental pain and suffering.

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment in favor of Plaintiff for all damages allowed by law, plus any applicable interest, costs, and for any other relief the Court deems just and proper.

## COUNT VII

**NEGLIGENT DESIGN, MANUFACTURE, ASSEMBLY OR DISTRIBUTION AGAINST DEFENDANT TASER INTERNATIONAL**

88. Plaintiff incorporates and realleges paragraphs 1 through 33 as if fully set forth herein.

89. Taser International designed, packaged, produced, and trained users of the Taser weapons at issue in this case, and received valuable consideration for its products and services.

90. Taser International had a legal duty to protect targets of its Taser weapon, including Mr. Tyson, from the unreasonable dangers of said product.

91. Taser International breached this duty by negligently designing, manufacturing, assembling, distributing, or marketing the Taser weapons at issue in this case, the result being an unreasonably dangerous product capable of causing injury or death.

92. Taser International impliedly warranted that its Taser weapons were fit for the general purpose for which it was sold, provided or distributed.

**Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

93. The City of Hollywood reasonably relied on such warranty and on the skill and judgment of Taser International in the manufacture, design, installation, maintenance, and monitoring of the Taser weapons at issue in this case.

94. In fact, the Taser or Tasers at issue in this case were not fit for the general purpose for which they were sold, provided, or distributed. Rather, they were unreasonably dangerous, defective, and unsafe.

95. Mr. Tyson died as a direct result of the use of the Taser or Tasers and the defects present in them.

96. Taser International's breaches of duty described above directly and proximately caused Mr. Tyson's death and Plaintiff's damages, including medical or funeral expenses, loss of earnings, loss of prospective net accumulations of the estate, loss of support and services and/or mental pain and suffering.

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment in favor of Plaintiff for all damages allowed by law, plus any applicable interest, costs, and for any other relief the Court deems just and proper.

## COUNT VIII

### STRICT LIABILITY – DESIGN DEFECT
### AGAINST DEFENDANT TASER INTERNATIONAL

97. Plaintiff incorporates and realleges paragraphs 1 through 33 as if fully set forth herein.

98. Taser International manufactured, sold, marketed, and designed the Taser weapons at issue in this case, and the components thereof.

15

**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

99. Taser International marketed its Tasers, including the Taser or Tasers at issue in this case, as being designed to be able to incapacitate targets without causing their death or serious injury.

100. Taser International' Tasers, including the Taser or Tasers at issue in this case, were unreasonably dangerous or ultra hazardous and failed to perform properly, causing the death of Mr. Tyson, despite Taser International's representations to its users that the Tasers would incapacitate targets without causing serious significant injury or death.

101. As a direct and proximate result of the design defect and unreasonably dangerous condition, Mr. Tyson died.

102. Taser International's breaches of duty described above directly and proximately caused Mr. Tyson's death and Plaintiff's damages, including medical or funeral expenses, loss of earnings, loss of prospective net accumulations of the estate, loss of support and services and/or mental pain and suffering.

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment in favor of Plaintiff for all damages allowed by law, plus any applicable interest, costs, and for any other relief the Court deems just and proper.

## COUNT IX

### STRICT LIABILITY – MANUFACTURING DEFECT
### AGAINST DEFENDANT TASER INTERNATIONAL

103. Plaintiff incorporates and realleges paragraphs 1 through 33 as if fully set forth herein.

104. Taser International manufactured, sold, marketed, and designed the Taser weapons at issue in this case, and the components thereof.

16

Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

105. Taser International marketed its Taser weapons, including the Taser or Tasers at issue in this case, as being designed and manufactured to be able to incapacitate targets without causing their death or serious injury.

106. The Tasers, including the Taser or Tasers at issue in this case, were defective in that they failed to perform as Taser International represented they would and/or they were unreasonably dangerous and hazardous.

107. Due to their defective, unreasonably dangerous condition, the Tasers proximately caused Mr. Tyson's death.

108. As a direct and proximate result of the manufacturing defect and unreasonably dangerous condition, Mr. Tyson died.

109. Taser International's breaches of duty described above directly and proximately caused Mr. Tyson's death and Plaintiff's damages, including medical or funeral expenses, loss of earnings, loss of prospective net accumulations of the estate, loss of support and services and/or mental pain and suffering.

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment in favor of Plaintiff for all damages allowed by law, plus any applicable interest, costs, and for any other relief the Court deems just and proper.

**Colson Hicks Eidson Colson Matthews Martínez Gonzalez Kalbac & Kane**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all issues so triable.

Dated this 16<u>th</u> day of September, 2016.

                                    Respectfully submitted,

                                    *s/JOSEPH J. KALBAC, JR*.
                                    JOSEPH J. KALBAC, JR.
                                    Florida Bar No. 628270
                                    jkalbac@colson.com
                                    STEPHANIE A. CASEY
                                    Florida Bar. No. 97483
                                    scasey@colson.com
                                    DENISE H. GEORGES
                                    Florida Bar No. 55861
                                    denise@colson.com
                                    COLSON HICKS EIDSON
                                    Attorneys for the Plaintiff
                                    255 Alhambra Circle, Penthouse
                                    Coral Gables, Florida  33134
                                    Telephone: (305) 476-7400
                                    Facsimile: (305) 476-7444
                                    E-mail: eservice@colson.com;
                                    nicky@colson.com; mabel@colson.com