UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-62215-CIV-DIMITROULEAS

JEAN SUAREZ, individually and as Personal
Representative of the Estate of DANIEL TYSON,
deceased,

        Plaintiff,

vs.

CITY OF HOLLYWOOD, a Florida Municipal
Corporation,

        Defendant.

_____/

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, JEAN SUAREZ, individually, and as Personal Representative of the Estate of DANIEL TYSON, moves for partial summary judgment in her favor and against the Defendant CITY OF HOLLYWOOD ("COH" or "the City") on the City's Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Fourteenth, Fifteenth, and Seventeenth Affirmative Defenses.

### INTRODUCTION

Daniel Tyson died as a direct and proximate result of the actions of COH Police Officers Ramirez, Pantaloukas, Kerns, Karl, Truntz and Falcon. Following the restraint of Daniel Tyson with both handcuffs and leg restraints, COH officers proceeded to apply their full body weight with the use of their legs and arms on various positional points on Daniel Tyson's body while in a prone position until the Officers discovered that Daniel was unresponsive.

In response to Plaintiff's Amended Complaint, Defendant filed an Amended Answer and Affirmative Defenses, which includes seventeen affirmative defenses. (ECF No. 96). Many of the Affirmative Defenses are not true defenses and are instead, denials. Others are wholly unsubstantiated by any evidence in the record and fail to support a genuine issue of material fact.

1

## **FACTUAL BACKGROUND**

Daniel Tyson died on October 27, 2014 after he was Tased ten separate times by COH police officers in a time span of 6 minutes and 30 seconds and smothered by four to six police officers, even after he was placed in handcuffs and leg shackles. Plaintiff's Statement of Facts ("SOF") ¶¶ 10, 12.

Daniel suffered from schizoaffective disorder, bipolar type and manic depression. SOF ¶ 46. Behaviors consistent with schizophrenia include hallucinations, delusions, and agitation. SOF ¶ 47. Behaviors consistent with a manic episode include yelling, screaming, agitating, mood swings and most often, require hospitalization for stabilization. SOF ¶ 48.

The day before he died, Daniel began exhibiting behavior consistent with a manic episode and made statements implying that he was not taking his prescribed Wellbutrin. SOF ¶ 50. Failure to take his medication would cause Daniel to decompensate resulting in a manic episode and behavioral manifestations of his mental illness. SOF ¶ 49. On the date of Daniel's death, October 27, 2014, Daniel decompensated further and was out of touch with reality. SOF ¶ 51. From the period which lead to the City's police officers being dispatched through his death, Daniel was screaming unintelligible, incoherent speech. SOF ¶¶ 51–52.

On October 27, 2014, witnesses observed Daniel naked outside his apartment and seemingly talking to trees. SOF ¶ 1. Officers were dispatched as a "Signal 20," which is used to identify a mental illness or crisis-related call. *Id.* Officer Ramirez was the first to arrive at the scene. SOF ¶ 2. According to Officer Ramirez, when he arrived at Daniel's home, Daniel was standing outside naked, acting erratically, and yelling incoherently. *Id.* Daniel had an object in his hand and was approaching Officer Ramirez, who then deployed his Taser on Daniel. *Id.* Daniel then struck Officer Ramirez with the object in his hand. *Id.*

Officer Pantaloukas arrived shortly thereafter and began deploying his Taser on Daniel.

SOD ¶ 2. In approximately 6 minutes and 30 seconds, Daniel was Tased a total of ten times. SOF ¶ 10. In one of the Tasings, Daniel was Tased continuously for 9 seconds, in violation of COH Standard Operating Procedure 201. *Id.* Even after Daniel was face-down and restrained in handcuffs and leg shackles, officers continued to Tase him and exert pressure on top of his body, which prevented him from breathing. SOF ¶ 11. These actions were also in violation of COH SOP 200 and 201. *Id.* Four to six officers bore down on Daniel's body after he was placed in handcuffs and leg shackles, preventing him from breathing. SOF ¶ 12. Officers failed to place Daniel on his side or sitting up to prevent him from asphyxiating. SOF ¶ 13. At no point during this encounter with police was Daniel coherent or intelligible. *See* SOF ¶¶ 1–19.

Police officers asphyxiated Daniel to death while he was face down, handcuffed, and in leg shackles. *See* SOF ¶¶ 13, 19, 22.

Plaintiff is Daniel's mother. SOF ¶ 41. She raised Daniel in Miami, taking him to the beach, trick-or-treating on Halloween, throwing birthday parties with family and family-friends, and supporting Daniel's singing, piano, and Boy Scouts activities. *Id.* Although Plaintiff had previously been diagnosed with depression and anxiety, her distress was exacerbated by Daniel's death. SOF ¶ 42. Since Daniel's death, Plaintiff has experienced depression, severe migraines with dizziness and vision loss, heart palpitations, and has suffered a mini-stroke. SOF ¶ 43. As a result, Plaintiff sought treatment with a cardiologist who performed a full cardiac work-up and prescribed medication. SOF ¶ 44. Additionally, the Plaintiff sought treatment which is ongoing with her primary care physician, psychiatrist and a neurologist for her remaining symptoms. *Id.*

Plaintiff brought this action individually and on behalf of the Estate of her son, Daniel Tyson. She asserts four causes of action against the City: wrongful death (Count I); violation of Title II of the American with Disabilities Act (Count II); violation of Section 504 of the

Rehabilitation Act (Count III); and violation of 42 U.S.C. § 1983 (Count IV). Second Am. Compl., ECF No. 76. The City asserts seventeen affirmative defenses. Am. Answer & Affirmative Defenses, ECF No. 96. Plaintiff seeks summary judgment as to the City's Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Fourteenth, Fifteenth, and Seventeenth Affirmative Defenses. These defenses are either inapplicable to this case or unsupportable by the evidence.

## LEGAL STANDARD

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must 'go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Vasconez v. Hansell*, 6:12-CV-236-ORL-31, 2013 WL 1968502, at *1 (M.D. Fla. May 13, 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). "An issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment;

there must be evidence from which a jury could reasonably find for the non-moving party." *Id*. at 26–27 (*citing Anderson*, 477 U.S. at 252).

## ARGUMENT

### A. The Undisputed Evidence Establishes That There is No Third-Party Liability In This Case.

The City's Fourth Defense is based on third-party liability; it seeks apportionment of damages of the "total fault of all participants," citing *Fabre v. Marin*, 623 So. 2d 782 (Fla. 1993); Am. Answer & Aff. Defs., pg. 7, ECF No. 96.  Yet, the only participants actively involved in Daniel's death are the City's police officers.  *See, e.g.*, SOF ¶ 3, 12.  None of the officers, nor the City's corporate representative, have testified that there was a third party involved with Daniel's death.  *See, e.g.*, *id*. ¶ 3–8; *cf. Jones v. Carnival Corp*., 04-20407-CIV-AJ, 2005 WL 8156680, at *2 (S.D. Fla. Sept. 29, 2005) (granting summary judgment on affirmative defense of third party liability).

Summary judgment is appropriate where no identification or evidence of a third party is introduced to support a *Fabre* affirmative defense.  For example, in *Assimack v. J.C. Penney Corp.,* No. 8:04-CV-2436-T-30MAP, 2005 WL 2277535, at *2 (M.D. Fla. Sept. 19, 2005), the court granted Plaintiff's motion for summary judgment on Defendant's *Fabre* affirmative defense where discovery was complete and—like here—Defendant had developed no evidence to support its *Fabre* affirmative defense. No deposition testimony or other record evidence demonstrated fault on the part of a third-party.  Accordingly, the court found that the Defendant had failed to present any evidence creating a genuine issue of material fact as to its *Fabre* affirmative defenses.  *See also G & G Closed Circuit Events, LLC v. Nguyen*, No. 5:10-CV-05718 EJD, 2011 WL 6293922, at *2 (N.D. Cal. Dec. 15, 2011) (The court found that the Defendant did not identify any third parties or their acts and accordingly struck down the defense with leave to amend).

5

Similarly, the evidence in this case establishes that no such third party caused Daniel's death. For this reason, summary judgment should be granted in favor of Plaintiff on this affirmative defense.

### B. The Undisputed Evidence Establishes that Plaintiff Did Not Fail to Mitigate Damages.

The City's Fifth Affirmative Defense states that Plaintiff has "failed to mitigate damages, and therefore, cannot recover or cannot fully recover damages from the City." Am. Ans. & Aff. Defs. Pg.7, ECF No. 96. However, Plaintiff's damages are primarily the pain and suffering resulting from the City's actions that caused Daniel's death. She previously suffered from depression and anxiety, which was exacerbated as a result of Daniel's death. SOF. ¶ 42. Also after Daniel's death, she began experiencing, for the first time, frequent and severe migraines with dizziness and vision loss, heart palpitations, sleeping issues and suffered a Trans Ischemic Attack ("TIA"), which is a mini-stroke. *Id*. ¶ 43. The mini-stroke Plaintiff suffered was direct result of her pain and suffering, and there is no evidence of a pre-existing condition. *Id*. ¶ 43–44. Plaintiff sought treatment with a cardiologist who performed a full cardiac work-up and prescribed medication. *Id*. ¶ 44. Additionally, the Plaintiff sought treatment which is ongoing with her primary care physician, psychiatrist and a neurologist for her remaining symptoms. *Id*.

There are no facts that show or support a genuine issue of material fact as to whether Ms. Suarez delayed in treating her symptoms and whether such a delay was unreasonable. *See Point Blank Solutions, Inc. v. Toyobo America, Inc.*, No. 09-cv-61166-SEITZ, 2011 WL 13174652, at *1 (S.D. Fa. May 20, 2011) (entering summary judgment on failure to mitigate defense where defendant offered no evidence to support the affirmative defense); *Jones v. Carnival Corp.*, No 04-cv-20407-JORDAN, 2005 WL 8156680, at *2 (S.D. Fla. Sept. 29, 2005) (denying summary judgment where there was sufficient evidence in record to raise a genuine issue of material fact as

to a delay in reporting and whether the delay was unreasonable). The Florida Supreme Court has explained that

> [t]he doctrine of avoidable consequences, which is also somewhat inaccurately identified as the "duty to mitigate" damages, commonly applies in contract and tort actions. There is no actual "duty to mitigate," because the injured party is not compelled to undertake any ameliorative efforts. The doctrine simply "prevents a party from recovering those damages inflicted by a wrongdoer that the injured party *could have* reasonably avoided." The doctrine does not permit damage reduction based on what "could have been avoided" through Herculean efforts. Rather, the injured party is only accountable for those hypothetical ameliorative actions that could have been accomplished through "ordinary and reasonable care," without requiring undue effort or expense.

*Branch Banking & Tr. Co. v. S&S Dev., Inc.,* No. 8:13-CV-2776-T-35MAP, 2015 WL 12683834, at *8–9 (M.D. Fla. June 30, 2015) (quoting *Sys. Components Corp. v. Florida Dept. of Transp.*, 14 So. 3d 967, 982 (Fla. 2009) (emphasis in original)); *see also McGuire v. Ryland Group, Inc.*, 497 F. Supp. 2d 1347, 1356 (M.D. Fla. 2007) *on reconsideration in part*, 497 F. Supp. 2d 1356 (M.D. Fla. 2007) ("[T]he party seeking damages cannot recover any damages, which could have been avoided through reasonable care.").

In fact, the undisputed evidence is that Suarez took steps to obtain and receive treatment from a cardiologist and her primary physician after Daniel's death. Summary judgment is appropriate where Defendants do not provide any evidence as to how a plaintiff failed to mitigate damages. *Point Blank Solutions, Inc.*, 2011 WL 13174652, at *5.

### C. The City's Seventh and Fifteenth Affirmative Defenses are Inapplicable to this Case.

In its Seventh Affirmative Defense, the City alleges that it is immune from punitive damages. Plaintiff is not seeking punitive damages. *See* Pl.'s Resp. to Interrogatory No. 18, attached to SOF as Ex. 38. This affirmative defense is inapplicable to this case.

In its Fifteenth Affirmative Defense the City states the legal proposition that no action for personal injury of Daniel survives his death under Florida law. Plaintiff has at no point in this

7

litigation ever stated a claim for personal injury to Daniel. *See* Compl. Count I, ECF No. 1 (stating claim for wrongful death); Second Am. Compl. Count I, ECF No. 76 (same); *see also* Pl.'s Resp. to Interrogatory No. 18, attached to SOF as Ex. 38. This affirmative defense is inapplicable to this case.

Because the City's Seventh and Fifteenth Affirmative Defenses are inapplicable to this case, summary judgment on these defenses should be entered in favor of Plaintiff and against Defendant.

### D. The Court has Already Ruled on the City's Ninth Affirmative Defense.

The City states in its Ninth Affirmative Defense that "Plaintiff has failed to allege a policy, custom, or practice sufficient to impose liability on the City." This defense—which challenges the sufficiency of the Plaintiff's allegations regarding her section 1983 claim—is the defense set out in Rule 12(b)(6), i.e., failure to state a claim upon which relief can be granted. This issue has already been ruled upon by the Court.

In response to Plaintiff's initial Complaint, the City filed a motion to dismiss pursuant to Rule 12(b)(6), arguing, in relevant part, that the Plaintiff failed to state a section 1983 claim against the City. ECF No. 7. On December 5, 2016, the Court entered an Order on the Motion to Dismiss (ECF No. 17), which dismissed Plaintiff's section 1983 claim without prejudice.

In order to file her Second Amended Complaint to state a claim under 42 U.S.C. § 1983, Plaintiff sought and obtained leave of Court. ECF Nos. 72 & 75. In its Order, the Court held that the amendment would not be futile. ECF No. 75. The Eleventh Circuit "has consistently recognized that an amendment to a complaint is only futile when the amended complaint would be subject to dismissal as a matter of law." *Travelers Casualty & Surety Co. of America v. Madsenm Sapp, Mena, Rodriguez & Co., P.A.*, 07-60917-CIV, 2008 WL 11399642, at *1 (S.D. Fla. Jan. 31, 2008). Having determined that the amendment of the complaint to add a Section 1983

claim was not futile, the Court necessarily found that the Plaintiff sufficiently alleged a policy, custom, or practice sufficient to impose liability on the City.

Because the Court has already ruled that the Second Amended Complaint sufficiently alleges a policy, custom, or practice sufficient to impose liability on the City, this affirmative defense is moot. *Cf. U.S. Commodity Futures Trading Comm'n v. U.S. Bank, N.A.*, No. 13-CV-2041-LRR, 2014 WL 294219, at *6 (N.D. Iowa Jan. 27, 2014) (striking affirmative defense of failure to state a claim where the court previously ruled on the issue, noting that the affirmative defense should not give the defendant "a second bite of the apple after the court already determined that its assertion that a plaintiff failed to state a claim is without merit"); *Joe Hand Promotions, Inc. v. Davis*, No. C 11-6166 CW, 2012 WL 4803923, at *3 (N.D. Cal. Oct. 9, 2012) (striking affirmative defense of failure to state a claim where the Court previously denied a motion to dismiss and ruled on the sufficiency of the allegations).

**E. The City's Sixth, Eighth, and Tenth "Affirmative Defenses" Are Merely Denials.**

"A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). Denials that are asserted as defenses are subject to summary judgment in favor of the plaintiff and against the defendant. *See, e.g.*, *Lopez v. Allstate Fire & Cas. Ins. Co.*, 14-20654, 2015 WL 5320916, at *3 (S.D. Fla. Sept. 14, 2015) (granting summary judgment to plaintiff on affirmative defenses that were actually denials and collecting cases).

The City's Sixth "Affirmative Defense" states that the City's policies are constitutional and comply with the ADA and the Rehab Act. This "defense" merely negates the central element of Plaintiff's section 1983, ADA, and Rehab Act claims; it is not a confession and avoidance. *See also Hernandez v. Cty. of Monterey*, 306 F.R.D. 279, 290 (N.D. Cal. 2015). In *Hernandez*, the

9

County asserted as an affirmative defense that its conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  The court found that the County's affirmative defense was "improper and not an affirmative defense as it merely negate[d] Plaintiff's contentions that the County violated their statutory and constitutional rights." *Id.* at 290.  In addition, the County provided no facts to identify or support any particular action the County took to comply with the statute.

The City's Eighth "Affirmative Defense" states that the City, its agents, and employees did not cause the death of Daniel.  This is a denial that Plaintiff has proven causation, not an affirmative defense.  *See Jones*, 2005 WL 8156680, at *2 (granting summary judgment on affirmative defense that defendant's negligence, if any, did not cause the plaintiff's injuries).

For its Tenth "Affirmative Defense" the City states that the City, its agents, and employees did not act with deliberate indifference towards the rights of Daniel. Once again, acting with deliberate indifference in an element of Plaintiff's section 1983 claim.  This "defense" is not a confession and avoidance; it merely refutes an element of the claim.  *See Hernandez*, 306 F.R.D. at 290 (affirmative defense that the county did not have a policy or practice which would amount to 'deliberate indifference' in the care and treatment of inmates only negated the plaintiff's contentions)

Because the City's Sixth, Eighth, and Tenth "Affirmative Defenses" are in fact denials, summary judgment should be granted in favor of Plaintiff and against Defendant as to these "defenses."

### F. The Undisputed Evidence Establishes That This Action Is Not Barred By Equitable Estoppel.

As its Fourteenth Affirmative Defense, the City alleges that this action is barred by the doctrine of equitable estoppel.  "In Florida law, the defense of equitable estoppel requires a

10

showing of (1) a representation as to a material fact contrary to a later asserted position; (2) reliance on that representation; and (3) a detrimental change in position in reliance on that representation." *Irvine v. Cargill Inv'r Services, Inc.*, 799 F.2d 1461, 1463 (11th Cir. 1986): *see also United States v. Zolot*, 09-61071-CIV-WPD, 2011 WL 13213614, at *5 (S.D. Fla. Feb. 17, 2011) (applying elements); *see also* Fla. Standard Jury Instructions 416.33 (Affirmative Defense – Equitable Estoppel) (setting forth similar elements). The elements of equitable estoppel under federal common law are essentially the same. *Nat'l Companies Health Ben. Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558, 1572 (11th Cir. 1991), *abrogated on other grounds*, *Geissal v. Moore Med. Corp.*, 524 U.S. 74 (1998). "The burden of proving all facts essential to working an estoppel rests on the party asserting it." *Irvine*, 799 F.2d at 1463.

The City cannot satisfy its burden of proving the elements of a defense of equitable estoppel because that defense simply does not fit the facts of this case. Daniel made no representation of fact—by words, action, or inaction—that was contrary to a later position. When officers arrived, they knew or should have known that Daniel was off his medication and suffered from mental illness. SOF ¶ 1. Daniel said nothing at all to the officers; he was speaking incoherently when Officer Ramirez arrived and at no time spoke coherently. SOF ¶ 2, 51. His actions or inactions were in line with what officers already knew before they arrived at the scene: he was decompensating as a result of mental illness. SOF ¶ 1, 49–52. Accordingly, the officers did not rely (or, consequently, suffer any detrimental reliance) on any prior inconsistent statement or action by Daniel. *See Regions Bank v. Old Jupiter, LLC*, 10-80188-CIV, 2010 WL 5148467, at *5 (S.D. Fla. Dec. 13, 2010), *aff'd,* 449 F. App'x 818 (11th Cir. 2011) ("a party asserting equitable estoppel must demonstrate justifiable reliance on the claimed prior inconsistent statement or conduct.").

### G. The Undisputed Evidence Establishes that the City's Statutory Defense Cannot Be Supported.

The City amended its Answer and Affirmative Defenses on July 3, to add the following new defense as its Seventeenth Affirmative Defense:

> This action arose from injury, if any, sustained by a participant during the commission or attempted commission of a forcible felony. Therefore, Plaintiff's claims for damages for personal injury or wrongful death are barred pursuant to Florida Statute 776.085, Florida Statutes.

ECF No. 96. The City represented to the Court that no further discovery is needed for it to prove this affirmative defense and that Daniel's mental state is not relevant to the City's defense. ECF No. 92, at 3. In fact, whether Daniel had the mental state to commit an intentional act is a required element of the defense, and the undisputed evidence establishes that Daniel did not have the mental state to commit such an act.

Florida law provides that "[i]t shall be a defense to any action for damages for personal injury or wrongful death ... that such action arose from injury sustained by a participant during the commission or attempted commission of a forcible felony." Fla. Stat. § 776.085(1). The term "forcible felony" means

> treason; murder; manslaughter; sexual battery; carjacking; home-invasion robbery; robbery; burglary; arson; kidnapping; aggravated assault; aggravated battery; aggravated stalking; aircraft piracy; unlawful throwing, placing, or discharging of a destructive device or bomb; and any other felony which involves the use or threat of physical force or violence against any individual.

Fla. Stat. § 776.08. The affirmative defense, as drafted, fails to place Plaintiff on notice of what felony the City claims Daniel committed or was attempting to commit. In its response to Interrogatories, the City cited, without further explanation, to the following statutes, which Plaintiff assume are the felonies at issue: Fla. Stats. § 784.07 (assault or battery of law enforcement officers), § 843.01 (resisting officer with violence), § 843.02 (resisting officer without violence).

12

*See* Def.'s Resp. to Interrogatory No. 6, attached to SOF as Ex. 39.  Statute 784.07 requires a person to "knowingly" commit an assault or battery upon a law enforcement officer. Section 843.01 requires a person to "knowingly and willfully" resist, obstruct, or oppose an officer by offering or doing violence to the person of such officer. Section 843.02 is a misdemeanor offense, not a felony, and therefore it cannot be a "forcible felony" that supports the City's defense under Statute 776.085.

The undisputed evidence establishes that Daniel did not have the requisite mental state to commit a forcible felony.  *See Martinez v. City of Pembroke Pines*, 0:14-CV-61303, 2015 WL 13164705, at *6 (S.D. Fla. Apr. 21, 2015), *aff'd,* 648 Fed. Appx. 888 (11th Cir. 2016).  Daniel was diagnosed with schizoaffective disorder, bipolar type and manic depression.  SOF ¶ 46.  Behaviors consistent with schizophrenia include hallucinations, delusions, and agitation. *Id*. ¶ 47.  Behaviors consistent with a manic episode include yelling, screaming, agitation, and mood swings.  *Id*. ¶ 48. Failure to take his medication would cause Daniel to decompensate resulting in a manic episode and behavioral manifestations of his mental illness. *Id*. ¶ 49.  The undisputed evidence is that the day before he died, Daniel began exhibiting behavior consistent with a manic episode and made statements implying that he was not taking his prescribed Wellbutrin. *Id*. ¶ 50. On the day of his death, Daniel decompensated further and was out of touch with reality.  *Id*. ¶ 51–52.  He was naked, agitated, and seemingly talking to trees. *Id*.  ¶ 1, 51–52. Officers who responded to the call involving Daniel, as well as witnesses, all consistently testified that Daniel was screaming unintelligible, incoherent speech, and was not responsive to any commands.  *Id*.

The *Martinez* case is instructive.  There, officers responded to a call to a home and found the plaintiff in his underwear, pacing, waving his arms, and yelling in Spanish. *Martinez*, 2015 WL 13164705, at *6.   The plaintiff was "somewhat responsive" but "attempts at verbal

13

communication with [him] were largely unsuccessful" and he continued to yell. *Id.* When officers attempted to grab the plaintiff's arm without warning to handcuff him, he immediately began resisting, flailing his arms, hitting officers with the handcuff attached to his arm, and "violently" rotating his torso. *Id.* In attempting to secure the plaintiff, officers eventually Tased the plaintiff twice and shot him once in the abdomen. *Id.* The court concluded that the undisputed facts did not establish by a preponderance of the evidence that the plaintiff was injured during the commission of a forcible felony (namely, battery against a law enforcement officer or resisting with violence). *Id.* at 7. In particular, the court noted that the evidence established that the plaintiff "lacked the requisite intent to commit a battery" and "lacked the requisite mental state to resist an officer with violence." *Id.*

Even assuming Daniel had the mental state to commit a forcible felony, the § 776.085 defense would not apply because his death occurred over 7 minutes after he first approached Officer Ramirez after he was already handcuffed and secured. The § 776.085 defense to a wrongful death action only applies if the death occurs "*during* the commission or attempted commission of [the] crime," not after it. *King v. Shoar*, 306-CV-61J-33TEM, 2007 WL 2066173, at *2 (M.D. Fla. July 17, 2007) (emphasis in original) (finding the defense inapplicable where officer used his Taser after the alleged forcible felony occurred). A death that occurred "after the forcible felony was completed would not support this defense." *Id.* (citing *Copeland v. Albertson's Inc.,* 947 So.2d 664, 667 (Fla. 2d DCA 2007)). Here, the undisputed evidence shows that Daniel died as a result of four to six officers using their entire bodies and knees to put pressure on his body, which prevented him from being able to breathe. SOF ¶ 12–18. That occurred more than 7 minutes after Daniel approached Officer Ramirez and after Daniel was in handcuffs and leg shackles. *Id.* ¶ 1–19.

Because the undisputed evidence shows that Daniel did not have the mental state to commit a forcible felony, the City's defense based on Fla. Stat. § 776.085 fails.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter partial summary judgment in her favor and against the Defendant City of Hollywood (the "City") on the City's Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Fourteenth, Fifteenth, and Seventeenth Affirmative Defenses.

Dated July 19, 2018                                                          Respectfully submitted,

*s/JOSEPH J. KALBAC, JR*.
JOSEPH J. KALBAC, JR.
Florida Bar No. 628270
jkalbac@colson.com
STEPHANIE A. CASEY
Florida Bar. No. 97483
scasey@colson.com
DENISE H. GEORGES
Florida Bar No. 55861
denise@colson.com
COLSON HICKS EIDSON
Attorneys for the Plaintiff
255 Alhambra Circle, Penthouse
Coral Gables, Florida  33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com;
nicky@colson.com; mabel@colson.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, this 19th day of July, 2018, and a true and correct copy of the foregoing was served either via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing, on: Daniel L. Abbott, Esq., Adam M. Hapner, Esq., Email: dabbott@wsh-law.com; pgrotto@wsh-law.com; ahapner@wsh-law.com; Weiss Serota Helfman Cole & Bierman, P.L., Attorneys for Defendant, City of Hollywood, 200 E. Broward Blvd., Suite 1900, Fort Lauderdale, FL 33301.

*s/JOSEPH J. KALBAC, JR*.
JOSEPH J. KALBAC, JR.
Florida Bar No. 628270