# EXHIBIT 8

# CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*      Case Mng Status: *ACTIVE*     Occurred: *10/27/2014*

Offense: *DEATH INVESTIGATION*

Investigator: *RILLO, R. (2535)*     Date / Time: *06/29/2015 09:36:31, Monday*

Supervisor: *BIEN, L. (2075)*     Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday*

Contact:     Reference: *Follow Up*

---

33-1410-143555
DEATH INVESTIGATION
DETECTIVE R. RILLO 2535

10/27/14

I WAS REQUESTED TO RESPOND TO 1836 JACKSON STREET APARTMENT 112 BY LIEUTENANT COFFIN 2777 IN REFERENCE TO AN IN CUSTODY DEATH INVESTIGATION. I ARRIVED AT THE INCIDENT LOCATION AT 1535 HOURS AND MADE THE FOLLOWING OBSERVATIONS. THE ADDRESS CONSISTS OF A FREE STANDING MULTIPLE UNIT RESIDENCE ON THE FRONT OF THE PROPERTY AND A SECONDARY FREE STANDING TWO STORY RESIDENCE LOCATED AT THE REAR OF THE PROPERTY. THE SCENE WAS SECURED WITH CRIME SCENE TAPE AND POSTED HOLLYWOOD UNIFORMED POLICE OFFICERS ENCOMPASSING 1830 AND 1836 JACKSON STREET. I WAS INFORMED THAT OFFICER RAMIREZ AND PANTALOUKAS WERE IN THE SHADOWING PHASE OF THE FIELD TRAINING PROGRAM. OFFICER KERNS WAS THE FIELD TRAINING OFFICER FOR RAMIREZ AND FLORES WAS THE TRAINING OFFICER FOR PANTALOUKAS.

I WAS BRIEFED BY SERGEANT RUIZ 3009 IN REFERENCE TO THE NATURE OF THE CALL. HE ADVISED THAT THE HOLLYWOOD POLICE DEPARTMENT RECEIVED A REPORT FROM THE OWNER OF THE PROPERTY WHO STATED THAT ONE OF THE TENANTS IDENTIFIED AS DANIEL TYSON (DECEDENT) WAS NAKED, TALKING TO TREES AND POSSIBLY MANIC DEPRESSIVE.

INITIAL INFORMATION REVEALED THAT OFFICER RAMIREZ 3403 WAS THE FIRST OFFICER ON SCENE. THE OFFICER MADE CONTACT WITH THE DECEDENT AND ATTEMPTED TO CALM HIM DOWN. THE OFFICER`S EFFORTS WERE MET WITH NEGATIVE RESULTS. THE DECEDENT BECAME INCREASINGLY AGITATED AND AT SOME POINT ARMED HIMSELF WITH AN ACRYLIC LIKE EXTERIOR CLOCK AND CHARGED OFFICER RAMIREZ. OFFICER RAMIREZ DEPLOYED HIS DEPARTMENTALLY ISSUED TASER. THE TASER WAS INEFFECTIVE. THE DECEDENT STRUCK OFFICER RAMIREZ ON THE HEAD WITH CLOCK CAUSING A LARGE LACERATION REQUIRING IMMEDIATE MEDICAL CARE. OFFICER PANTALOUKAS 3402 ARRIVED AND SUBSEQUENTLY DEPLOYED HIS TASER IN AN ATTEMPT TO STOP THE DECEDENT`S PHYSICAL RESISTANCE AND PLACE HIM INTO CUSTODY. HOLLYWOOD FIRE RESCUE WAS REQUESTED TO RESPOND TO THE SCENE TO TREAT OFFICER RAMIREZ. ULTIMATELY, SEVERAL OFFICERS WERE REQUIRED TO RESTRAIN THE DECEDENT. WHILE HOLLYWOOD RESCUE WAS ON SCENE TREATING OFFICER RAMIREZ, OFFICERS NOTICED THAT THE DECEDENT WAS NO

---

| Investigator Signature | Supervisor Signature |
|---|---|
| #2535 | 2075 |

TYSON
00911

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: *331410143555*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| Case Status: *ACTIVE* | Case Mng Status: *ACTIVE* | Occurred: *10/27/2014* |
| Offense: *DEATH INVESTIGATION* | | |

| | |
|---|---|
| Investigator: *RILLO, R. (2535)* | Date / Time: *06/29/2015 09:36:31, Monday* |
| Supervisor: *BIEN, L. (2075)* | Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday* |
| Contact: | Reference: *Follow Up* |

LONGER BREATHING. RESCUE STOPPED TREATING THE INJURED OFFICER AND IMMEDIATELY RENDERED AIDE TO THE DECEDENT. A SECOND HOLLYWOOD RESCUE UNIT WAS DISPATCHED TO TREAT AND TRANSPORT OFFICER RAMIREZ TO MEMORIAL REGIONAL HOSPITAL LOCATED AT 3550 JOHNSON STREET. THE ORIGINAL RESCUE UNIT TRANSPORTED THE DECEDENT TO MEMORIAL REGIONAL HOSPITAL, ARRIVING AT 1525 HOURS. A RECTAL TEMPERATURE OF 102.38 FAHRENHEIT OR 39.1 CELSIUS WAS TAKEN SHORTLY AFTER ARRIVAL BY MEMORIAL STAFF. THE DECEDENT WAS PRONOUNCED DECEASED BY MEMORIAL STAFF AT 1538 HOURS. THE DECEDENT WAS TRANSFERRED TO THE BROWARD COUNTY MEDICAL EXAMINER`S OFFICE.

THE CRIME SCENE CONSISTED OF THE COURT YARD BETWEEN 1830 AND 1836 JACKSON STREET TO INCLUDE THE DECEDENTS APARTMENT. I OBSERVED SEVERAL HOUSEHOLD ITEMS THAT APPEARED TO HAVE BEEN THROWN EAST FROM THE DECEDENTS` SECOND STORY LANDING. SEVERAL ARTICLES WERE OBSERVED IN THE GRASS COURT YARD TO INCLUDE MEDICAL SUPPLY PACKAGING, BROKEN CLOCK PIECES, TASER WIRE, TASER CARTRIDGE, FOUR TASER DOORS, AND A TASER MICRO DOT. SEE THE CRIME SCENE REPORT AND DETECTIVE KEOUGHS SUPPLEMENT FOR FURTHER INFORMATION.

I MADE PHONE CONTACT WITH THE OWNER OF THE PROPERTY IDENTIFIED AS XAVIER LESMARIE. HE ADVISED THAT HE RECEIVED A TELEPHONE CALL FROM A TENANT THAT HE IDENTIFIED AS LEQNI MOORE. SHE ADVISED HIM THAT SHE COULD HEAR YELLING BETWEEN A MALE AND FEMALE ORIGINATING FROM THE DECEDENT`S APARTMENT EARLIER IN THE DAY. SHE ALSO ADVISED THAT THE FEMALE LEFT THE PREMISE ON A BIKE. SHE WOULD ULTIMATELY NOTIFY THE OWNER THAT THE DECEDENT WAS OUTSIDE THE APARTMENT NAKED TALKING TO TREES. THE LATEST REPORT FROM THE TENANT PROMPTED THE OWNER OF THE PROPERTY TO CONTACT THIS AGENCY. HE ADVISED THAT THE DECEDENT MOVED INTO THE BUILDING APPROXIMATELY TEN DAYS PREVIOUS. LESMARIE PROVIDED ME WITH CONTACT INFORMATION FOR A FRIEND OF THE DECEDENT`S THAT HE IDENTIFIED AS JOHN COLLETTE. HE ALSO PROVIDED THE DECEDENT`S MOTHER`S NAME AND CONTACT NUMBER.

I MADE PHONE CONTACT WITH THE DECEDENT`S MOTHER IDENTIFIED AS JEAN MARIE, WHO WAS ADVISED THAT HER SON WAS CURRENTLY BEING TREATED AT MEMORIAL REGIONAL HOSPITAL DUE TO AN ALTERCATION. AT THE TIME OF CONTACT, I WAS UNAWARE OF THE MEDIAL CONDITION OF THE DECEDENT. PERTINENT INFORMATION REGARDING THE HOSPITAL WAS PROVIDED TO THE DECEDENT`S MOTHER.

| | |
|---|---|
| #2535 | 2075 |
| Investigator Signature | Supervisor Signature |

Page 2

TYSON
00912

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

---

*Hollywood Police Department*

OCA: *331410143555*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*                    Case Mng Status: *ACTIVE*                    Occurred: *10/27/2014*

    Offense: *DEATH INVESTIGATION*

---

Investigator: *RILLO, R.  (2535)*                    Date / Time: *06/29/2015 09:36:31, Monday*

Supervisor: *BIEN, L.  (2075)*                    Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday*

    Contact:                    Reference: *Follow Up*

---

I MADE PHONE CONTACT WITH THE DECEDENT`S FRIEND IDENTIFIED AS JOHN COLLETTE.
COLLETTE ADVISED THAT THE DECEDENT IS MANIAC DEPRESSIVE AND ATTENDS HENDERSON
HEALTH. HE STATED THAT ON 10/26/14, HE WAS ATTACKED AT HIS APARTMENT BY THE DECEDENT.
HE ADVISED THAT THE DECEDENT WAS AT HIS RESIDENCE AND BEGAN TO YELL AT HIM. THE
DECEDENT THREW DISHES ONTO THE FLOOR AND CORNERED COLLETTE IN THE KITCHEN,
GRABBED HIM BY THE HAIR AND THREW HIM ONTO THE GROUND. COLLETTE STATED THAT HE
RECEIVED CUTS TO HIS KNEES, LEFT HAND AND LEFT EYE. THE DECEDENT REMOVED A
CHAMPAGNE BOTTLE FROM THE REFRIGERATOR AND STRUCK COLLETTE WITH THE BOTTLE ON
HIS SHOULDER. AT ONE POINT, THE DECEDENT ARMED HIMSELF WITH A KITCHEN KNIFE AND
STABBED A CHAIR INSIDE THE RESIDENCE. HE THEN EXITED THE APARTMENT AND THREW THE
CHAMPAGNE BOTTLE THROUGH THE REAR WINDOW OF COLLETTE`S VEHICLE BEARING FLORIDA
TAG CYEK51. COLLETTE STATED THAT THE DECEDENT`S BEHAVIOR WAS OUT OF CHARACTER AND
THAT HE IS NOT AWARE OF ANY KNOWN DRUG USE.

I MADE PERSONAL CONTACT WITH JOHN COLLETTE AT 2646 POLK STREET APARTMENT SEVEN, AT
APPROXIMATELY 1810 HOURS. I DID OBSERVE AN ABRASION BELOW HIS LEFT EYE, CUTS AND
ABRASIONS ON HIS RIGHT KNEE. I ALSO OBSERVED THAT THE REAR WINDOW TO HIS RED AUDI
WAS SMASHED OUT. I TOOK A SWORN DIGITALLY RECORDED STATEMENT FROM COLLETTE IN MY
VEHICLE. AFTER I COMPLETED SWEARING IN COLLETTE, HE STATED THAT HE WAS UNABLE TO
CONTINUE THE STATEMENT. HE ADVISED THAT HE WOULD COMPLETE THE STATEMENT AT A
LATER TIME. HE DID STATE THAT HE REMEMBERED HAVING THE PHONE CONVERSATION WITH ME.
I ASKED HIM IF EVERYTHING HE ADVISED IN OUR PHONE CONVERSATION WAS TRUE AND
ACCURATE. HE STATED HE HOPED SO, AND HE WAS STRESSED. THE STATEMENT WAS TERMINATED.
I LEFT NUMEROUS MESSAGES FOR COLLETTE WHICH HE FAILED TO RETURN. ON 10/28/14 AT 1520
HOURS, I RESPONDED TO COLLETTE`S RESIDENCE. COLLETTE REFUSED TO ANSWER THE DOOR AND
YELLED THROUGH THE CLOSED DOOR THAT HE REFUSES TO SPEAK WITH ME AND THAT WE CAN
CONTACT HIS ATTORNEY.

I MADE PHONE CONTACT WITH A FRIEND OF THE DECEDENT IDENTIFIED AS JESSICA AUERBACH.
SHE STATED THAT SHE HAS BEEN FRIENDS WITH THE DECEDENT FOR SOME TIME. THE DECEDENT
SLEPT AT HER RESIDENCE ON OCTOBER 26, 2015 DUE TO HIS UNUSUAL BEHAVIOR. THE DECEDENT
WENT HOME SOME TIME THE NEXT MORNING.  SHE STATED THAT AT APPROXIMATELY 1400 HOURS
SHE TRAVELED TO THE DECEDENT`S APARTMENT TO CHECK ON HIS WELFARE. SHE STATED THAT

---

    Investigator Signature                    Supervisor Signature

TYSON
00913

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*                                    OCA: ***331410143555***

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| Case Status: *ACTIVE* | Case Mng Status: *ACTIVE* | Occurred: *10/27/2014* |
| Offense: *DEATH INVESTIGATION* | | |

| | |
|---|---|
| Investigator: *RILLO, R. (2535)* | Date / Time: *06/29/2015 09:36:31, Monday* |
| Supervisor: *BIEN, L. (2075)* | Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday* |
| Contact: | Reference: *Follow Up* |

THE DECEDENT WAS EXTREMELY DETACHED FROM REALITY, BREAKING ITEMS IN THE APARTMENT, YELLING, AND SCHIZOPHRENIC. HE DID NOT BECOME AGGRESSIVE WITH HER, HOWEVER HE FEARS STRANGERS BECAUSE HE BELIEVED THAT THEY WOULD HURT HIM. SHE REITERATED THAT HE WAS COMPLETELY DETACHED MENTALLY WITH NO SENSE OF REALITY. HE STOPPED TAKING HIS MEDICATION THAT SHE IDENTIFIED AS WELLBURTIN APPROXIMATELY SEVEN TO TEN DAYS AGO.

I MADE PERSONAL CONTACT WITH JESSICA AUERBACH AT THE GUITAR CENTER LOCATED AT 1101 HALLANDALE BEACH BOULEVARD. AUERBACH PROVIDED A SWORN DIGITALLY RECORDED STATEMENT. SHE STATED THAT ON 10/26/14 SHE WENT TO DINNER WITH THE DECEDENT DUE TO HIM NOT FEELING WELL. SHE TRAVELED TO HIS APARTMENT AT APPROXIMATELY 1600 TO 1700 HOURS AND THE APARTMENT WAS ORDERLY AND CLEAN. DURING DINER, THE DECEDENT APPEARED TO BE GETTING PROGRESSIVELY WORSE. AT THE CONCLUSION OF THE DINNER, THE DECEDENT WENT HOME. AT APPROXIMATELY 2200 HOURS, SHE SPOKE WITH THE DECEDENT ON THE PHONE AND HE WAS VERY UPSET AND SHE WAS UNABLE TO UNDERSTAND WHAT HE WAS SAYING. THE DECEDENT DID TRAVEL TO AUERBACH'S RESIDENCE. THE TWO STAYED UP ALL NIGHT TAKING. DURING THE NIGHT, THE DECEDENT WAS TALKING TO HIMSELF AND HIS DEMEANOR BECAME PROGRESSIVELY ERRATIC, IRRATIONAL, AND SCHIZOPHRENIC. AT APPROXIMATELY 0800 HOURS ON 10/27/14 AUERBACH STATED THAT HIS CONDITION HAS DETERIORATED. THE DECEDENT WAS NOW HAVING DELUSIONAL CONVERSATIONS WITH PEOPLE THAT ARE NOT PRESENT. THE DECEDENT GOT DRESSED AND TRAVELED TO HIS RESIDENCE.

AT APPROXIMATELY 1330 HOURS, AUERBACH TRAVELED TO THE DECEDENTS APARTMENT TO CHECK ON HIM. WHILE APPROACHING THE APARTMENT SHE COULD HEAR WHAT SOUNDED LIKE MOANING SOUNDS. SHE STATED THAT SHE "... WAS SHOCKED AT HOW EXTREMELY DETERIORATED HE HAD BECOME FROM THE TIME I HAD SEEN HIM". SHE ADVISED THAT THE DECEDENT WAS NAKED AND WEARING ONE MOON BOOT. THE APARTMENT WAS DESTROYED "...LIKE A HURRICANE BLEW THROUGH IT". THE DECEDENT HAD BROKEN QUITE A BIT OF DISHES AND OTHER THINGS IN THE APARTMENT TO INCLUDE THE DOOR. AUERBACH ATTEMPTED TO CONTACT THE DECEDENT'S MOTHER, HOWEVER SHE COULD NOT REMEMBER THE SECURITY CODE FOR HIS PHONE AND THE BATTERY WAS DRAINED. SHE DECIDED TO CONTACT 911 AS SHE WAS WORRIED ABOUT HIM BEING ALONE AS HE WAS BEYOND HER MEANS OF CONTROLLING HIM. SHE HAD RESERVATIONS CONCERNING THE DECEDENT'S "...INTERPRETATION WOULD HAVE BEEN TO REACT IN A WAY THAT HE WAS BEING ATTACKED BY THEM SO HE WOULD HAVE BEEN PERHAPS

| | |
|---|---|
| #2535 | 2075 |
| Investigator Signature | Supervisor Signature |

Page 4

TYSON
00914

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*          Case Mng Status: *ACTIVE*          Occurred: *10/27/2014*

Offense: *DEATH INVESTIGATION*

Investigator: *RILLO, R.  (2535)*                    Date / Time: *06/29/2015 09:36:31, Monday*

Supervisor: *BIEN, L.  (2075)*          Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday*

Contact:                              Reference: *Follow Up*

AGGRESSIVE TOWARDS SOMEONE WHO REALLY ACTUALLY TRYING TO HELP HIM". SHE STATED THAT THE DECEDENT WAS DETACHED, NO LONGER CAPABLE OF MAKING COGNITIVE DECISIONS, NOT MAKING RATIONAL COMMENTS AND UNABLE TO RESPOND TO HER QUESTIONS. WHILE IN THE RESIDENCE, THE TWO WERE SPEAKING IN ELEVATED VOICES TO TALK OVER EACH OTHER. AUERBACH BELIEVED THAT THE DECEDENT WAS RECEIVING TREATMENT FROM HENDERSON BEHAVIOR HEALTH. SHE BELIEVED THAT HE WAS DIAGNOSED WITH MANIC BIPOLAR DISORDER OR SCHIZOPHRENIA. SHE STATED TO THE DECEDENT THAT SHE WAS GOING TO HAVE TO CALL 911 AND THAT HE WAS GOING TO HAVE TO BE TREATED AT A HOSPITAL. SHE COLLECTED THE DECEDENT`S DOG AND BEGIN TO RIDE HER BICYCLE HOME. SHE CALLED 911 FROM HER CELLULAR PHONE AND WAS TOLD THAT AN OFFICER WAS ALREADY AT THE DECEDENT`S RESIDENCE.

A PRELIMINARY NEIGHBORHOOD CANVASS WAS CONDUCTED BY DETECTIVE SPARKMAN, KEOUGH AND I. DETECTIVE KEOUGH IDENTIFIED TWO WITNESS IDENTIFIED AS JENNIFER AND CHRISTINE CORBO. DETECTIVE KEOUGH TOOK SWORN DIGITALLY RECORDED STATEMENTS FROM BOTH WITNESSES. SEE HIS SUPPLEMENTS FOR ADDITIONAL INFORMATION. THE CANVASS FAILED TO LOCATE ANY VIDEO SURVEILLANCE THAT WOULD HAVE CAPTURED THE INCIDENT. I ATTEMPTED TO MAKE CONTACT WITH LEQNI MOORE WHO RESIDES AT 1830 JACKSON STREET. SHE VERBALLY REFUSED TO PROVIDE A STATEMENT OR GIVE ANY INFORMATION CONCERNING THE INCIDENT. MOORE IS THE RESIDENT WHO REPORTED THE INCIDENT TO THE LANDLORD RESULTING IN HIM CONTACTING THIS AGENCY.

AT APPROXIMATELY 2056 HOURS, CRIME SCENE TECHNICIAN UNGER 2995 AND I ENTERED THE DECEDENTS APARTMENT THROUGH THE OPEN FRONT DOOR. THE RESIDENCE IS DESCRIBED AS A TWO BEDROOM, ONE BATHROOM APARTMENT. IT APPEARED THAT THE DECEDENT WAS STILL MOVING INTO THE APARTMENT BY THE UNPACKED BOXES THAT WERE PRESENT. I MADE THE FOLLOWING OBSERVATIONS. THE BLACK COUCH APPEARED TO HAVE BEEN PUSHED AROUND THE APARTMENT. THERE WAS DEBRIS, BROKEN GLASS, CIGARETTES AND FOOD ON THE FLOOR.  I LOCATED TWO BOTTLES OF BUPROPION HCL 100 MG (WELLBURTIN) IN THE BATHROOM OF THE RESIDENCE. ONE BOTTLE WAS FILLED ON 10/10/13 FOR 150 PILLS, CONTAINING 172 PILLS. THE OTHER BOTTLE WAS FILLED ON 09/16/14 FOR 150 PILLS, CONTAINING 77 PILLS.  A TOTAL OF 249 PILLS REMAINED BETWEEN THE TWO PRESCRIPTION BOTTLES. HOUSEHOLD ITEMS WERE DISCOVERED ON THE GROUND JUST EAST OF THE SECOND STORY FRONT DOOR AS IF IT WAS THROWN OVER THE RAILING.

| | |
|---|---|
| IF 2535 | 2075 |
| Investigator Signature | Supervisor Signature |

Page 5

TYSON
00915

# CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: ***331410143555***

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*  Case Mng Status: *ACTIVE*  Occurred: *10/27/2014*

Offense: *DEATH INVESTIGATION*

| | |
|---|---|
| Investigator: *RILLO, R. (2535)* | Date / Time: *06/29/2015 09:36:31, Monday* |
| Supervisor: *BIEN, L. (2075)* | Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday* |
| Contact: | Reference: *Follow Up* |

BROWARD COUNTY POLICE BENEVOLENT ASSOCIATION ATTORNEY JULIO GONZALEZ RESPONDED TO THE SCENE AS LEGAL REPRESENTATION FOR THE SUBJECT OFFICERS. THE SUBJECT OFFICERS WERE IDENTIFIED AS:

1. RAMIREZ 3403
2. PANTALOUKAS 3402
3. KARL 3293
4. FALCON 3386
5. KERNS 3198
6. WAGNER 3132
7. TRUNTZ 2904

JULIO GONZALEZ PROFFERED THE FOLLOWING ACCOUNT OF EVENTS AFTER MEETING WITH THE SUBJECT OFFICERS.

OFFICER RAMIREZ WAS THE FRIST OFFICER ON THE SCENE. AS THE RESULT OF A NONCOMPLYING AGGRESSIVE CONFRONTATION WITH THE DECEDENT HE WAS STRUCK ON THE HEAD BY A LARGE CLOCK RESULTING IN A LACERATION ON THE TOP OF HIS HEAD, A CUT BEHIND HIS LEFT EAR AND SCRATCHES TO HIS LEGS. OFFICER RAMIREZ DID DEPLOY HIS TASER TO THE FRONT (ABDOMINAL) OF THE DECEDENT. OFFICER PANTALOUKAS WAS THE SECOND OFFICER ON THE SCENE. OFFICER PANTALOUKAS OBSERVED THAT OFFICER RAMIREZ WAS INJURED AND BLEEDING FROM THE HEAD. OFFICER PANTALOUKAS GAVE THE DECEDENT VERBAL COMMANDS AND AFTER NONCOMPLIANCE, WARNINGS OF AN IMMINENT TASER DEPLOYMENT. OFFICER PANTALOUKAS DEPLOYED HIS TASER TO THE DECEDENTS BACK. AFTER FAILING TO GAIN PHYSICAL RESTRAINT AND COMPLIANCE, OFFICER PANTALOUKAS DEPLOYED HIS TASER AN UNKNOWN NUMBER OF TIMES. DURING THE COURSE OF THE INCIDENT, THE DECEDENT FAILED TO RESPOND TO VERBAL COMMANDS AND WAS ACTIVELY PHYSICALLY RESISTING ATTEMPTS BY THE OFFICERS TO GAIN CONTROL OF HIM. OFFICER KERNS HANDCUFFED THE DECEDENT. AFTER THE DECEDENT WAS HANDCUFFED HE CONTINUED TO PHYSICALLY RESIST THE OFFICER`S ATTEMPTS TO GAIN CONTROL OF HIM.

10/28/14

I MET WITH TRAINING OFFICER JULIO ALVAREZ AT 0930 HOURS. ALVAREZ PROVIDED ME WITH THE HOLLYWOOD POLICE DEPARTMENTS EQUIPMENT ASSIGNMENT LIST, TASER TRAINING DOCUMENTS AND CERTIFICATION CONCERNING OFFICER RAMIREZ AND PANTALOUKAS. THE TRAINING DOCUMENTS INCLUDE THE TASER CERTIFICATION CURRICULUM, COURSE TEST AND UPDATE COURSE TAKEN BY RAMIREZ AND PANTALOUKAS.

_____
Investigator Signature

_____
Supervisor Signature

TYSON
00916

**CASE SUPPLEMENTAL REPORT**                          Printed: 07/20/2015  14:37

*Hollywood Police Department*                          OCA: *331410143555*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*            Case Mng Status: *ACTIVE*            Occurred: *10/27/2014*

    Offense: *DEATH INVESTIGATION*

Investigator: *RILLO, R. (2535)*                    Date / Time: *06/29/2015 09:36:31, Monday*

Supervisor: *BIEN, L. (2075)*                    Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday*

    Contact:                                            Reference: *Follow Up*

HOLLYWOOD POLICE DEPARTMENT TRAINING RECORDS INDICATED THAT OFFICER RAMIREZ AND PANTALOUKAS WERE CERTIFIED TO UTILIZE THE TASER INTERNATIONAL X26/P ON JULY 17, 2014 BY CERTIFIED INSTRUCTOR OFFICER JULIO ALVAREZ. OFFICER RAMIREZ AND PANTALOUKAS WERE PROVIDED A TASER TRAINING ACADEMY, TASER CONDUCTED ELECTRICAL WEAPON TASER CERTIFIED END USER CERTIFICATE ON THAT DATE. OFFICER ALVAREZ IS A TASER INTERNATIONAL CERTIFIED INSTRUCTOR FOR THE TASER X26, X2 AND X26P. TASER INTERNATIONAL VERIFIED THAT OFFICER ALVAREZ IS CURRENTLY AN INSTRUCTOR IN GOOD STANDING AND HIS CERTIFICATION EXPIRES ON JULY 17, 2015. ON OCTOBER 8, 2014, OFFICER RAMIREZ AND PANTALOUKAS ATTENDED AN IN-SERVICE TRAINING CLASS THAT INCLUDED A ONE HOUR REFRESHER COURSE ON THE USE OF THE TASER. THE TASERS ISSUED TO BOTH OFFICERS WERE DOWN LOADED AND SYNCHRONIZED TO REAL TIME DURING THE CLASS.

THE HOLLYWOOD POLICE DEPARTMENT EQUIPMENT ASSIGNMENT LIST INDICATED THAT THE FOLLOWING TASER RELATED EQUIPMENT WAS ISSUED TO OFFICER RAMIREZ AND PANTALOUKAS ON JULY 18, 2014:


SEE EXHIBIT A


CRIME SCENE TECHNICIAN UNGER 2995 AND DETECTIVE KEOUGH 2630 RECOVERED A TASER CARTRIDGE AND A PINK ANTI-FELON IDENTIFICATION (AFID) TAG BEARING SERIAL NUMBER C4102VNY8 FROM THE COURTYARD. THE CARTRIDGE AND AFID WERE ISSUED TO OFFICER PANTALOUKAS. ADDITIONALLY, FOUR GREEN TASER CARTRIDGE BLAST DOORS WERE RECOVERED FROM THE COURT YARD. EACH TASER CARTRIDGE HAS TWO BLAST DOORS. THE BLAST DOORS DO NOT HAVE SERIAL NUMBERS.

OFFICER ALVAREZ PROVIDED THE TASER DOWNLOAD REPORTS FROM ALL OFFICERS THAT WERE DIRECTLY INVOLVED IN THIS INCIDENT. DURING THE DOWNLOADS OF THE DATA, THE TASERS ARE SYNCHRONIZED TO REAL TIME. THE OFFICERS INCLUDE:

1.  RAMIREZ 3403            6. KERNS 3198
2.  PANTALOUKAS 3402        7. WAGNER 3132

_____                    _____
Investigator Signature                    Supervisor Signature

TYSON
00917

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*                                           OCA: ***331410143555***

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *ACTIVE* | **Case Mng Status:** *ACTIVE* | **Occurred:** *10/27/2014* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | |
|---|---|
| **Investigator:** *RILLO, R. (2535)* | **Date / Time:** *06/29/2015 09:36:31, Monday* |
| **Supervisor:** *BIEN, L. (2075)* | **Supervisor Review Date / Time:** *07/10/2015 07:38:53, Friday* |
| **Contact:** | **Reference:** *Follow Up* |

3.  KARL 3293                    8. TRUNTZ 2904
4.  FALCON 3386               9. GIBBONS 0137
5.      RUIZ 309                  10. OWENS 3391

THE TASER DOWNLOAD REPORTS INDICATED THAT ONLY OFFICER RAMIREZ AND PANTALOUKAS UTILIZED THEIR TASER ON OCTOBER 27, 2014. THE TIME, DURATION, TIME GAP BETWEEN DEPLOYMENTS AND NUMBER OF DEPLOYMENTS ARE INDICATED BELOW:

SEE EXHIBIT B

OFFICERS REQUIRED SIX MINUTES AND THIRTY SECONDS TO GAIN CONTROL OF THE DECEDENT. DURING THAT TIME PERIOD, TASERS WERE UTILIZED TEN TIMES FOR A TOTAL DURATION OF FIFTY FOUR SECONDS. RAMIREZ DEPLOYED HIS TASER ONE TIME FOR A DURATION OF FIVE SECONDS WITH NO EFFECT. PANTALOUKAS DEPLOYED HIS TASER NINE TIMES FOR A DURATION OF FORTY NINE SECONDS. THE TASER DEPLOYMENT OF NINE SECONDS IS THE RESULT OF THE TRIGGER OF THE TASER BEING HELD DOWN. THE TASER INTERNATIONAL X26/P TASER WILL AUTOMATICALLY CYCLE FOR FIVE SECONDS PER TRIGGER PULL. THE CYCLE CAN BE STOPPED BY TURNING THE TASER OFF. THE TASER CYCLE CAN BE EXTENDED BEYOND FIVE SECONDS BY HOLDING THE TRIGGER DOWN; ONCE THE TRIGGER IS RELEASED THE CYCLE WILL END.

DETECTIVE FLOYD 2774 AND I CONDUCTED A SECONDARY NEIGHBORHOOD CANVASS IN THE SURROUNDING AREA OF 1836 JACKSON STREET. THE CANVASS FAILED TO IDENTIFY ANY ADDITIONAL WITNESSES OR VIDEO SURVEILLANCE THAT WOULD HAVE MEMORIALIZED THE INCIDENT.

10/29/14

A SWORN DIGITALLY RECORDED STATEMENT WAS TAKEN FROM THE OWNER OF THE PROPERTY AND REPORTEE OF THE INCIDENT IDENTIFIED AS XAVIER LESMARIE AT THE HOLLYWOOD POLICE DEPARTMENT AT 0803 HOURS.  HE STATED THAT THE DECEDENT SIGNED A RESIDENTIAL LEASE (INCLUDED IN FILE) ON OCTOBER 10, 2014 AND MOVED IN ON THE SEVENTIETH. THE DECEDENT WAS THE SOLE LEASEE AND RECEIVES $880.00 PER MONTH FOR AN UNKNOWN HANDICAP FROM THE

| | |
|---|---|
| Investigator Signature | Supervisor Signature |

TYSON
00918

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*                                    OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *ACTIVE*          **Case Mng Status:** *ACTIVE*          **Occurred:** *10/27/2014*

**Offense:** *DEATH INVESTIGATION*

**Investigator:** *RILLO, R.  (2535)*                    **Date / Time:** *06/29/2015 09:36:31, Monday*

**Supervisor:** *BIEN, L.  (2075)*                    **Supervisor Review Date / Time:** *07/10/2015 07:38:53, Friday*

**Contact:**                                    **Reference:** *Follow Up*

STATE OF FLORIDA. LESMARIE ADVISED THAT HE RECEIVED A PHONE CALL ON 10/27/14 FROM TENANT PATRICK MCCONNELL, BETWEEN 1000 THROUGH 1100 HOURS THAT THE PERSON LIVING IN APARTMENT 14 WAS GOING CRAZY. HE STATED TO LESMARIE THAT HE COULD HEAR LOTS OF NOISE AND BANGING.

LESMARIE THEN RECEIVED SEVERAL TEXT MESSAGES FROM ANOTHER TENANT THAT HE IDENTIFIED AS LEKNI MOORE (619-988-0247) ADVISING THAT THE DECEDENT WAS ACTING STRANGELY, YELLING AT FICTITIOUS PEOPLE AND THROWING ITEMS OFF THE BALCONY. LESMARIE THEN TELEPHONED JOHN COLLETTE WHO WAS THE EMERGENCY CONTACT FOR THE DECEDENT. HE ADVISED COLLETTE OF THE SITUATION AND COLLETTE ADVISED HIM THAT THE DECEDENT WAS AT HIS RESIDENCE THE PRIOR NIGHT AND THAT HE WAS ACTING ERRATICALLY AND WAS MANIC DEPRESSIVE. COLLETTE STATED THAT THE DECEDENT WAS VIOLENT WITH HIM AND HIT HIM. COLLETTE TOOK THE DECEDENTS KEYS PRIOR TO DEPARTING HIS APARTMENT DUE TO HIS ERRATIC BEHAVIOR. LESMARIE ADVISED THAT HE ACTUALLY HAD CONTACT WITH COLLETEE AND OBSERVED AN INJURY TO HIS LEFT EYE ATTRIBUTED TO BEING HIT BY THE DECEDENT DURING THEIR ALTERCATION.

LESMARIE THEN CONTACTED THIS AGENCY TO REPORT THE OBSERVATIONS OF HIS TENANTS AND PART OF THE CONVERSATION THAT HE HAD WITH COLLETTE. THE HOLLYWOOD DISPATCH RELAYED THE FOLLOWING SYNOPSIZED INFORMATION TO RESPONDING UNITS (ACTUAL RECORDING IS INCLUDED IN THE FILE):

  2ND HAND 1043...COMP ADV HIS TENANT IS VERY AGITATED ,SUBJ IS A WM
  DANIEL TYSON 5`6 NAKED W/ BOOTS TALKING TO TREES, ADV SUBJ IS A MANIAC

  DEPRESSANT AND DOES NOT HAVE HIS MEDS

LESMARIE THEN CALLED TENANT MOORE AND IN REAL TIME SHE RELAYED HER OBSERVATIONS OF THE INTERACTION BETWEEN THE RESPONDING OFFICERS AND THE DECEDENT TO LESMARIE. LESMARIE IS ALSO ABLE TO HEAR PARTS OF THE INTERACTION THROUGH MOORE`S TELEPHONE. MOORE RELAYED THE FOLLOWING INFORMATION TO LESMARIE:

THE FIRST OFFICER TO ARRIVE (RAMIREZ) WAS VERY KIND AND WAS ATTEMPTING TO CALM THE DECEDENT DOWN AND COVER UP AS HE WAS NAKED. SHE ADVISED THAT THE TENANT WENT

_____                    _____
Investigator Signature                    Supervisor Signature

TYSON
00919

# CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: ***331410143555***

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| Case Status: *ACTIVE* | Case Mng Status: *ACTIVE* | Occurred: *10/27/2014* |
| Offense: *DEATH INVESTIGATION* | | |

| | |
|---|---|
| Investigator: *RILLO, R. (2535)* | Date / Time: *06/29/2015 09:36:31, Monday* |
| Supervisor: *BIEN, L. (2075)* | Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday* |
| Contact: | Reference: *Follow Up* |

CRAZY ON HIS BALCONY AND FLASHED THE OFFICER. THE OFFICER INSTRUCTED THE DECEDENT TO STOP. THE DECEDENT CHARGED DOWN THE STAIRS TOWARDS THE OFFICER. THE OFFICER WAS REPEATEDLY INSTRUCTING THE DECEDENT TO BACK UP. THE OFFICER WARNS THE DECEDENT TO BACK UP OR HE IS GOING TO TASER HIM. THE OFFICER IS THEN PUSHED BY THE DECEDENT. ONLY ONE OFFICER WAS AT THE SCENE AT THIS POINT. HE IS JOINED BY TWO MORE OFFICERS WITH IN A COUPLE OF MINUTES, ACCORDING TO LESMARIE. MOORE RELAYED THAT THE DECEDENT WAS VERY AGITATED AND STRONG. HE WAS ABLE TO MOVE THREE OFFICERS TRYING TO RESTRAIN HIM. MOORE RELAYS THAT FOUR OFFICERS ARE ATTEMPTING TO RESTRAIN HIM AND THE DECEDENT IS NOT MOVING. SHE ADVISED LESMARIE THAT PEOPLE WERE DOING CPR (SEE THE LESMARIE STATEMENT FOR DETAILS).

LESMARIE RETURNED TO THE HOLLYWOOD POLICE DEPARTMENT ON NOVEMBER 3, 2014 AND SIGNED A CONSENT TO SEARCH FORM FOR HIS SONY XPERIA Z, MODEL C6606 CELLULAR PHONE BEARING SERIAL NUMBER 356768052450667. THE PHONE WAS THEN PROVIDED TO DETECTIVE KNAPP WHO CREATED A CELLULAR FORENSICS REPORT EXHIBITING THE TEXT MESSAGE EXCHANGES BETWEEN MOORE AND LESMARIE. SOME DETAILS ARE INCLUDED BELOW:


SEE EXHIBIT C


LEKNI MOORE TEXTS TO LESMARIE (TEXT IN ASCENDING ORDER):


| From | 10/27/2014 +120631300 +16199880247 3:12:10 PM(UTC- Tena Lekni moore* 4) | Read 24 | Ok |
|---|---|---|---|
| From | 10/27/2014 +140445500 +16199880247 3:10:26 PM(UTC- Tena Lekni moore* 4) | Read 07 | They are putting up crime scene tape in the back yard. |
| From | 10/27/2014 +140445500 +16199880247 3:01:10 PM(UTC- Tena Lekni moore* 4) | Read 07 | The head police officer is being a jerk. |
| From | 10/27/2014 +140445500 | Read | Police are here and they tasted him |

Investigator Signature                          Supervisor Signature

TYSON 00920

**CASE SUPPLEMENTAL REPORT**

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *ACTIVE* | **Case Mng Status:** *ACTIVE* | **Occurred:** *10/27/2014* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | | |
|---|---|---|
| **Investigator:** *RILLO, R.  (2535)* | **Date / Time:** *06/29/2015 09:36:31, Monday* | |
| **Supervisor:** *BIEN, L.  (2075)* | **Supervisor Review Date / Time:** *07/10/2015 07:38:53, Friday* | |
| **Contact:** | **Reference:** *Follow Up* | |

---

+16199880247 2:54:18 PM(UTC- 08
Tena Lekni moore* 4)

| From | 10/27/2014 +140445500 | Read | Ok the other neighbor in the house just saw him naked on the steps right |
|---|---|---|---|
| +16199880247 2:46:59 PM(UTC- 08 | | | now too. |

Tena Lekni moore* 4)

| From | 10/27/2014 +120631300 | Read | Yes now he is naked on his balcony |
|---|---|---|---|
| +16199880247 2:37:02 PM(UTC- 24 | | | |

Tena Lekni moore* 4)

| From | 10/27/2014 +140445500 | Read | Not sure sounds like she`s trying to calm him down |
|---|---|---|---|
| +16199880247 2:34:23 PM(UTC- 08 | | | |

Tena Lekni moore* 4)

| From | 10/27/2014 +120631300 | Read | Uh oh they are yelling and screaming at each other |
|---|---|---|---|
| +16199880247 2:32:39 PM(UTC- 23 | | | |

Tena Lekni moore* 4)

| From | 10/27/2014 +120631300 | Read | Ok a lady just went up to his apartment. She rode her bicycle over. |
|---|---|---|---|
| +16199880247 2:29:28 PM(UTC- 24 | | | Maybe that`s a friend of his? |

Tena Lekni moore* 4)

| From | 10/27/2014 +140445500 | Read | Ok now he`s getting weird. He`s outside yelling at no one and throwing |
|---|---|---|---|

TEXTS EXCHANGE BETWEEN MOORE AND LESMARIE (TEXT IN ASCENDING ORDER):

To 16199880247
Tena Lekni moore* 10/29/2014
10:08:35 AM(UTC-
4)  Sent    Lekni fyi, was call by police for deposition regarding Daniel. Had to disclosed our conversations during incident as well as some text in order.to get straight time line of the.events. X
To 16199880247
Tena Lekni moore* 10/27/2014
3:11:27 PM(UTC-
4)  Sent    I. Coming asap
To 16199880247
Tena Lekni moore* 10/27/2014
2:51:38 PM(UTC-
4)  Sent    Ok....

_____
Investigator Signature

_____
Supervisor Signature

TYSON
00921

**CASE SUPPLEMENTAL REPORT**

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: *331410143555*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *ACTIVE* | **Case Mng Status:** *ACTIVE* | **Occurred:** *10/27/2014* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | |
|---|---|
| **Investigator:** *RILLO, R.  (2535)* | **Date / Time:** *06/29/2015 09:36:31, Monday* |
| **Supervisor:** *BIEN, L.  (2075)* | **Supervisor Review Date / Time:** *07/10/2015 07:38:53, Friday* |
| **Contact:** | **Reference:** *Follow Up* |

To 19545341397
handyman Patrick the* 10/27/2014
2:46:17 PM(UTC-
4)  Sent     ....police on the way now
To 16199880247
Tena Lekni moore* 10/27/2014
2:46:00 PM(UTC-
4)  Sent     ....police on the way now
To 16199880247
Tena Lekni moore* 10/27/2014
2:36:29 PM(UTC-
4)  Sent     I understand... If you don`t mind, keep me posted and see I you manage to be able to speak to her. Thxs. X
To 16199880247
Tena Lekni moore* 10/27/2014
2:33:10 PM(UTC-
4)  Sent     Should I call police??!!
To 16199880247
Tena Lekni moore* 10/27/2014
2:31:14 PM(UTC-
4)  Sent     Maybe...Or his mother....patrick just left to Hallandale unfortunately... If you see her maybe ser if I should call someone,. Police.... Let me know. Thxs. Xavier
To 7862716462
Lesmarie Valerie * 10/27/2014
1:07:44 PM(UTC-
4)  Sent     Lekni wrote " Guesthouse new tenant has a pb... Ok now he`s getting weird. He`s outside yelling at no one and throwing stuff in the yard and off his balcony. Just an FYI."
I answer " Mmmmm... This is worrysome.... Thxs for the.info Lekni. X"
To 19545341397
handyman Patrick the* 10/27/2014
1:07:44 PM(UTC-
4)  Sent     Lekni wrote " Guesthouse new tenant has a pb... Ok now he`s getting weird. He`s outside yelling at no one and throwing stuff in the yard and off his balcony. Just an FYI."
I answer " Mmmmm... This is worrysome.... Thxs for the.info Lekni. X"

| | |
|---|---|
| _____ | _____ |
| Investigator Signature | Supervisor Signature |

TYSON
00922

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015 14:37

*Hollywood Police Department*

OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*          Case Mng Status: *ACTIVE*          Occurred: *10/27/2014*

   Offense: *DEATH INVESTIGATION*

Investigator: *RILLO, R.  (2535)*          Date / Time: *06/29/2015 09:36:31, Monday*

Supervisor: *BIEN, L.  (2075)*          Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday*

   Contact:          Reference: *Follow Up*

ALL OF THE FORTHCOMING SUBJECT OFFICER STATEMENTS WERE TAKEN AT THE HOLLYWOOD POLICE DEPARTMENT. THE OFFICERS WERE REPRESENTED BY BROWARD COUNTY POLICE BENEVOLENT ASSOCIATION ATTORNEY JULIO GONZALEZ, WHO WAS PRESENT DURING EACH STATEMENT.

01/14/15

A SWORN DIGITALLY RECORDED STATEMENT WAS TAKEN FROM OFFICER RAMIREZ. HE STATED THAT UPON HIS ARRIVAL, HE OBSERVED THE LARGE NAKED DECEDENT STANDING AT THE SECOND FLOOR LANDING OF HIS APARTMENT MUMBLING INCOMPREHENSIBLE WORDS.  THE DECEDENT ENTERED HIS APARTMENT RETRIEVING ITEMS THAT HE BEGAN TO THROW OVER THE BALCONY RAILING ONTO THE GROUND. RAMIREZ IDENTIFIED HIMSELF AS A POLICE OFFICER AND ORDERED HIM TO STOP THROWING THE ITEMS. THE DECEDENT BECAME INCREASINGLY ENRAGED AND STARTED TO SCREAM LOUDER. HE TOOK A MEDIUM SIZED CIRCULAR ITEM OFF OF THE EXTERIOR WALL OF HIS APARTMENT AND RAN DOWN THE STEPS HOLDING THE ITEM TOWARDS RAMIREZ. AT THE LAST STEP, HE PAUSED. HE WAS ISSUED COMMANDS TO DROP THE OBJECT AT TASER POINT. THE DECEDENT WAS HOLDING THE OBJECT IN HIS RIGHT HAND OVER HIS SHOULDER IN A THREATENING FASHION. HE FAILED TO COMPLY WITH VERBAL COMMANDS AND CHARGED RAMIREZ. IN FEAR, RAMIREZ DEPLOYED HIS TASER TO THE DECEDENTS FRONT CENTER MASS WITH NO EFFECT. THE DECEDENT STRUCK RAMIREZ ON THE LEFT SIDE TOP OF HIS HEAD CAUSING RAMIREZ TO DROP HIS TASER. RAMIREZ STATED THAT HE BECAME DISORIENTATED AND WAS "...JUST SEEING STARS..." BLOOD BEGAN TO GUSH FROM HIS WOUND. RAMIREZ TOOK HOLD OF THE DECEDENT IN AN ATTEMPT TO AVOID BEING STRUCK AGAIN AND WAS FEELING "...WOBBLY". THE TWO OF THEM FELL TO THE GROUND WHILE THE DECEDENT CONTINUED TO SCREAM AT THE OFFICER.  RAMIREZ CONTINUED TO GIVE VERBAL COMMANDS TO STOP RESISTING AND FIGHTING WHILE THE DECEDENT CONTINUED TO STRIKE HIM. RAMIREZ WAS ABLE TO RADIO FOR ASSISTANCE WHILE THE TWO OF THEM WERE FIGHTING.

OFFICER PANTALOUKAS ARRIVED.  RAMIREZ ADVISED HIM THAT HE NEEDED HELP AND THE DECEDENT HAD STRUCK HIM ON THE HEAD. RAMIREZ WAS ATTEMPTING TO CONTROL THE UPPER BODY AND PANTALOUKAS WAS ATTEMPTING TO CONTROL THE DECEDENT'S LOWER EXTREMITIES. THE DECEDENT WAS SCREAMING WHILE LYING FACE DOWN AND BEGAN TO KICK PANTALOUKAS SEVERAL TIMES. PANTALOUKAS GAVE VERBAL COMMANDS TO STOP OR HE WAS GOING TO TASER

Investigator Signature          Supervisor Signature

TYSON
00923

**CASE SUPPLEMENTAL REPORT**

Printed: 07/20/2015  14:37

*Hollywood Police Department*                    OCA: *331410143555*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*          Case Mng Status: *ACTIVE*          Occurred: *10/27/2014*

Offense: *DEATH INVESTIGATION*

Investigator: *RILLO, R. (2535)*               Date / Time: *06/29/2015 09:36:31, Monday*

Supervisor: *BIEN, L. (2075)*          Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday*

Contact:                    Reference: *Follow Up*

HIM. THE DECEDENT FAILED TO COMPLY, A FINAL TASER WARNING WAS ISSUED AND THE TASER WAS DEPLOYED TO THE DECEDENT'S BACK WITH LITTLE TO NO EFFECT. AT THE COMPLETION OF THE TASER CYCLE, THE DECEDENT BECAME MORE AGGRESSIVE AND HOSTILE. HE WAS SWINGING HIS ARMS, ATTEMPTING TO GET UP AND KICKING. RAMIREZ STATED THAT THE DECEDENT WAS ABNORMALLY STRONG. RAMIREZ WAS ATTEMPTING TO PLACE THE DECEDENT'S HANDS BEHIND HIS BACK BUT WAS OVER POWERED. THE DECEDENT CONTINUED TO STRIKE RAMIREZ ON HIS LEGS AND THIGH. HE WAS MAKING CONTACT WITH HIS MIDSECTION CONTAINING HIS DUTY BELT. RAMIREZ WAS IN FEAR THAT THE DECEDENT WOULD DISARM HIM DUE TO HIS PHYSICAL STRENGTH. RAMIREZ'S VISION WAS OBSTRUCTED BY BLOOD FLOWING FROM HIS WOUND AND HIS GRIP WAS SLIPPERY FROM THE BLOOD INCREASING THE DIFFICULTY OF CONTROLLING THE DECEDENT. THE DECEDENT WAS TASERED AGAIN. AT THE COMPLETION OF THE CYCLE, HE BECAME MORE AGITATED.

OFFICER KERNS ARRIVED. RAMIREZ AND KERNS WERE ABLE TO HANDCUFF THE DECEDENT WHO WAS LYING FACE DOWN. THE DECEDENT CONTINUED TO FIGHT AND SCREAM INCOMPREHENSIBLE WORDS AFTER BEING HANDCUFFED. HE WAS ATTEMPTING TO GET ONTO HIS KNEES, THRASHING AND KICKING PANTALOUKAS. RAMIREZ STATED THAT AT NO TIME DID THE DECEDENT STOP PHYSICALLY RESISTING THE OFFICER'S EFFORTS TO CONTROL HIM OR COMPLY WITH VERBAL COMMANDS. ADDITIONAL OFFICER'S ARRIVED AND RAMIREZ WAS RELIEVED TO SEEK MEDICAL ATTENTION. RAMIREZ WAS TRANSPORTED TO MEMORIAL REGIONAL HOSPITAL WHERE HE RECEIVED SIX STAPLES. THE RESIDUAL EFFECTS OF THE INJURY WERE SCARRING AND HEADACHES.

A SWORN DIGITALLY RECORDED STATEMENT WAS TAKEN FROM OFFICER PANTALOUKAS AT THE HOLLYWOOD POLICE DEPARTMENT. HE STATED UPON EXITING HIS VEHICLE, HE COULD HEAR RAMIREZ SCREAMING IN A DISTRESSED VOICE TO GET ON THE GROUND, STOP RESISTING AND CALM DOWN. PANTALOUKAS RAN INTO THE COURTYARD AND OBSERVED RAMIREZ WITH BLOOD ON HIS FACE, ON THE GROUND, FIGHTING WITH A VERY LARGE NAKED MALE. RAMIREZ WAS ATTEMPTING TO PIN THE DECEDENT TO THE GROUND, WHILE HE WAS BEING STRUCK BY THE DECEDENT. THE DECEDENT WAS ON HIS STOMACH ATTEMPTING TO STAND UP AND WAS GRABBING RAMIREZ AROUND THE AREA OF HIS DUTY BELT. THE DECEDENT HAD THE ADVANTAGE OVER RAMIREZ. PANTALOUKAS BEGAN TO ISSUE VERBAL COMMANDS TO THE INCOMPREHENSIBLE SCREAMING DECEDENT TO STOP RESISTING, WITH NO EFFECT. RAMIREZ ADVISED PANTALOUKAS THAT THE DECEDENT HAD CUT HIM. THE DECEDENT CONTINUED FLAILING HIS ARMS AND

_____                    _____
Investigator Signature                    Supervisor Signature

TYSON
00924

**CASE SUPPLEMENTAL REPORT**

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| Case Status: *ACTIVE* | Case Mng Status: *ACTIVE* | Occurred: *10/27/2014* |
| Offense: *DEATH INVESTIGATION* | | |

| | |
|---|---|
| Investigator: *RILLO, R. (2535)* | Date / Time: *06/29/2015 09:36:31, Monday* |
| Supervisor: *BIEN, L. (2075)* | Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday* |
| Contact: | Reference: *Follow Up* |

ATTEMPTING TO STAND UP WHILE KICKING PANTALOUKAS. PANTALOUKAS WAS IN FEAR FOR HIS SAFETY AND THAT OF THE WOUNDED RAMIREZ. IN AN ATTEMPT TO USE THE LEAST AMOUNT OF FORCE POSSIBLE TO DE-ESCALATE THE SITUATION, HE ORDERED THE DECEDENT TO STOP RESISTING, STOP HITTING THEM AND TO CALM DOWN. BELIEVING THAT RAMIREZ`S LIFE WAS ENDANGERED, HE DEPLOYED HIS TASER IN CLOSE PROXIMITY TO THE DECEDENT`S BACK. THE TASER DID NOT HAVE ANY EFFECT ON THE DECEDENT AS HE CONTINUED HIS ONSLAUGHT ON RAMIREZ AND KICKING PANTALOUKAS. HE KEPT THE TRIGGER OF THE TASER DEPLOYED AND TOUCHED STUNNED THE DECEDENT`S ANKLE INCREASING THE NEUROMUSCULAR AREA EFFECT BY THE TASER. THE DECEDENT STOPPED FIGHTING DURING THE TOUCH STUN. VERBAL COMMANDS WERE GIVEN DURING THE TASER CYCLE TO THE DECEDENT TO PLACE HIS HANDS BEHIND HIS BACK AND TO STOP RESISTING. WHEN THE CYCLE ENDED THE DECEDENT IMMEDIATELY STARTED TO ATTACK BOTH OFFICERS AGAIN. THE DECEDENT HAD HIS HANDS AROUND RAMIREZ`S MIDSECTION WHICH CONTAINED HIS GUN BELT. PANTALOUKAS WAS CONCERNED THAT THE DECEDENT WOULD DISARM RAMIREZ. HANDCUFFING WAS NOT ATTEMPTED DUE TO ACTIVE PHYSICAL RESISTANCE OF THE DECEDENT. THE TASER WAS DEPLOYED AGAIN IN THE  SAME FASHION AND VERBAL COMMANDS WERE ISSUED. RAMIREZ VOICED TO PANTALOUKAS THAT HE IS HAVING DIFFICULTY SEEING DUE TO HIS BLOOD FLOWING INTO HIS EYES. RAMIREZ`S BLOOD IS ALSO DRIPPING ONTO THE DECEDENT MAKING HIM SLIPPERY. THE DECEDENT STOPPED RESISTING AFTER THE DEPLOYMENT AND IS CALM FOR A SHORT TIME. OFFICER KERNS AND RAMIREZ ULTIMATELY HANDCUFFED THE DECEDENT.

THE DECEDENT REMAINED CALM FOR A BRIEF TIME. HE THEN BEGAN TO SCREAM AND KICK PANTALOUKAS WITH HIS LEGS WHILE ATTEMPTING TO STAND UP. THE DECEDENT WAS CONTINUALLY GIVEN VERBAL COMMANDS TO CALM DOWN AND STOP RESISTING WITH NO EFFECT. AT ONE POINT, THE DECEDENT WAS ABLE TO LIFT RAMIREZ UP WHILE THE THREE OFFICERS` WERE ATTEMPTING TO HOLD HIM DOWN. PANTALOUKAS STATED THAT THE DECEDENT HAD "...SUPERHUMAN STRENGTH". PANTALOUKAS STATED DUE TO THE DECEDENTS CONTINUAL PHYSICAL RESISTANCE CONSISTING OF ATTEMPTING TO GET UP, GRABBLING AND KICKING HIM IN CONJUNCTION WITH HIS FAILURE TO COMPLY WITH VERBAL COMMANDS, THE DECEDENT WAS TASERED AN UNKNOWN NUMBER OF TIMES. THE VERBAL COMMANDS GIVEN WERE TO STOP RESISTING AND IMPENDING TASER WARNINGS. COMPLIANCE WAS ONLY GAINED DURING THE TASER CYCLE AND THE DECEDENT WOULD IMMEDIATELY BEGAN TO PHYSICALLY RESIST ONCE THE CYCLE ENDED. PANTALOUKAS ADVISED THAT EACH TASER DEPLOYMENT WAS A RESULT OF HIM BEING CONTINUALLY KICKED.

| | |
|---|---|
| 2535 | 2075 |
| Investigator Signature | Supervisor Signature |

TYSON
00925

**CASE SUPPLEMENTAL REPORT**    Printed: 07/20/2015  14:37

*Hollywood Police Department*    OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *ACTIVE*    **Case Mng Status:** *ACTIVE*    **Occurred:** *10/27/2014*

   **Offense:** *DEATH INVESTIGATION*

**Investigator:** *RILLO, R. (2535)*    **Date / Time:** *06/29/2015 09:36:31, Monday*

**Supervisor:** *BIEN, L. (2075)*    **Supervisor Review Date / Time:** *07/10/2015 07:38:53, Friday*

   **Contact:**    **Reference:** *Follow Up*

KERNS RETURNED TO HIS VEHICLE TO RETRIEVE ANKLE RESTRAINTS. UPON HIS RETURN, OTHER OFFICERS ARRIVED AND WERE ATTEMPTING TO RESTRAIN THE DECEDENT. THE DECEDENT CONTINUED TO KICK AND FAILED TO FOLLOW VERBAL COMMANDS. ONCE THE LEG RESTRAINTS WERE PLACED ON THE DECEDENT, HE EXHIBITED OSCILLATING MOOD SWINGS FROM CALM TO VIOLENT. PANTALOUKAS PLACED HIS BODY WEIGHT ON THE DECEDENT`S LEGS, WHO WAS LYING CHEST DOWN, TO KEEP FROM BEING KICKED. HOLLYWOOD RESCUE ARRIVED AND BEGAN TO RENDER AID TO OFFICER RAMIREZ. AN OFFICER NOTICED THAT THE DECEDENT WAS NOT BREATHING. THE OFFICER`S IMMEDIATELY ALERTED THE PARAMEDICS ATTENDING TO RAMIREZ WHO IMMEDIATELY RENDERED AID TO THE DECEDENT.

A SWORN STATEMENT WAS TAKEN FROM OFFICER KERNS ON 01/27/15. OFFICER RAMIREZ AND PANTALOUKAS WERE IN THE SHADOW PHASE OF THE FIELD TRAINING PROGRAM ON THE INCIDENT DATE. KERNS WAS THE FIELD TRAINING OFFICER FOR RAMIREZ AND RESPONDED TO THE CALL AFTER IT WAS INITIALLY DISPATCHED. UPON ARRIVAL, HE HEARD SCREAMING COMING FROM THE YARD AND WAS ABLE TO DISCERN RAMIREZ`S DISTRESSED VOICE. UPON ENTERING THE COURT YARD, KERN`S OBSERVED A LARGE NAKED MAN IN A VIOLENT STRUGGLE ON THE GROUND WITH RAMIREZ. RAMIREZ WAS PROFUSELY BLEEDING, WITH BLOOD FLOWING DOWN HIS FACE. KERNS REQUESTED A RESCUE UNIT AND ADDITIONAL OFFICERS. RAMIREZ AND THE DECEDENT WERE ROLLING AROUND ON THE GROUND AND PANTALOUKAS WAS ATTEMPTING TO CONTROL THE DECEDENT`S FEET. THE THREE OFFICERS` BEGAN TO ISSUE VERBAL COMMANDS FOR THE DECEDENT TO STOP RESISTING, CALM DOWN; THAT THEY WERE ATTEMPTING TO HELP HIM AND TO PLACE HIS HANDS BEHIND HIS BACK. THE DECEDENT FAILED TO COMPLY AND CONTINUED VIOLENTLY RESISTING BY GRABBING RAMIREZ, ROLLING AROUND AND KICKING. NOT ONLY DID KERNS HAVE CONCERNS ABOUT THE DECEDENT DISARMING RAMIREZ, HE NOTICED THAT AN UNSECURED TASER WAS ON THE GROUND WITH-IN REACH OF THE DECEDENT. KERNS ATTEMPTED TO GRAB THE DECEDENTS ARMS TO HANDCUFF HIM. THE DECEDENT WAS SLIPPERY FROM SWEAT AND RAMIREZ`S BLOOD. HE EXHIBITED INCREDIBLE STRENGTH. THE DECEDENT WAS LYING ON HIS STOMACH AND PLACED HIS HANDS UNDER HIS CHEST. HE WAS ISSUED ADDITIONAL VERBAL COMMANDS TO PLACE HIS ARMS BEHIND HIS BACK. PANTALOUKAS ISSUED COMMANDS TO STOP RESISTING OR HE WOULD UTILIZE HIS TASER. THE DECEDENT CONTINUED TO DISPLAY "... CRAZY STRENGTH..." WHILE ACTIVELY RESISTING, KICKING AND SCREAMING. PANTALOUKAS DEPLOYED HIS TASER INTO THE DECEDENT`S BACK. AT LEAST TWO CYCLES WERE ADMINISTERED BY PANTALOUKAS. AT THE COMPLETION OF EACH CYCLE, THE DECEDENT WOULD CONTINUE TO

Investigator Signature    Supervisor Signature

TYSON
00926

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*                                                    OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *ACTIVE*                 **Case Mng Status:** *ACTIVE*                 **Occurred:** *10/27/2014*

   **Offense:** *DEATH INVESTIGATION*

**Investigator:** *RILLO, R. (2535)*                              **Date / Time:** *06/29/2015 09:36:31, Monday*

**Supervisor:** *BIEN, L. (2075)*                    **Supervisor Review Date / Time:** *07/10/2015 07:38:53, Friday*

   **Contact:**                                                **Reference:** *Follow Up*

---

ACTIVELY RESIST AS PREVIOUSLY DESCRIBED. KERNS STATED THAT THE TASER HAD LITTLE TO NO EFFECT. AFTER SEVERAL ATTEMPTS, OFFICER KERNS WAS ABLE TO PLACE THE DECEDENT INTO HANDCUFFS. POST HANDCUFFING THE DECEDENT CONTINUED TO SCREAM, KICK AND ATTEMPT TO STAND WITH EXCEPTIONAL STRENGTH. VERBAL COMMANDS WERE CONTINUALLY GIVEN FOR THE DECEDENT TO CALM DOWN AND THEY WERE ATTEMPTING TO HELP HIM. HE CONTINUED TO VIOLENTLY KICK AT OFFICERS. ADDITIONAL OFFICERS ARRIVED AND KERNS RETREATED TO HIS VEHICLE TO RETRIEVE LEG RESTRAINTS. ULTIMATELY, OFFICERS WERE ABLE TO PLACE THE LEG RESTRAINTS ON THE VIOLENTLY ACTIVE DECEDENT. THE HANDCUFFED AND LEG RESTRAINED DECEDENT CONTINUED TO ROLL AROUND ON THE GROUND AND ATTEMPT TO GET UP. KERNS ACCOMPANIED RAMIREZ TO ARRIVING RESCUE PERSONNEL FOR TREATMENT OF HIS INJURIES.

A SWORN DIGITALLY RECORDED STATEMENT WAS TAKEN FROM OFFICER KARL ON 01/15/15. KARL STATED THAT HE RESPONDED TO THE INCIDENT LOCATION AFTER HEARING AN EMERGENCY CALL FOR ASSISTANCE FROM OFFICER`S ON SCENE. UPON EXITING HIS VEHICLE, HE COULD HEAR SCREAMING COMING FROM THE INCIDENT LOCATION. UPON ENTERING THE COURTYARD, HE OBSERVED RAMIREZ, PANTALOUKAS AND KERNS STRUGGLING TO RESTRAIN A LARGE NAKED MAN. KARL ADVISED THAT RAMIREZ HAD BLOOD PROFUSELY RUNNING DOWN HIS FACE, AS HE ATTEMPTED TO RESTRAIN THE DECEDENT`S UPPER BODY. PANTALOUKAS WAS ATTEMPTING TO RESTRAIN THE DECEDENT`S LOWER EXTREMITIES. THE HANDCUFFED DECEDENT WAS SCREAMING, THRASHING AND KICKING. KARL CLASSIFIED THE DECEDENTS ACTIONS AS AGGRESSIVE, HOSTILE, AND UNCONTROLLABLE. THE DECEDENT WAS PHYSICALLY ABLE TO MOVE THE OFFICER`S WHILE HANDCUFFED WITH ALMOST SUPER HUMAN STRENGTH. OFFICER CARL ATTEMPTED TO CONTROL THE DECEDENT`S RIGHT SIDE. VERBAL COMMANDS WERE GIVEN TO THE DECEDENT TO RELAX YIELDING NO COMPLIANCE. THE SLIPPERY DECEDENT CONTINUED TO SPIT, YELL, BUCK HIS HEAD AND KICK WITH ALMOST SUPER HUMAN STRENGTH. OFFICER KERNS RETRIEVED LEG RESTRAINTS WHICH WERE PLACED ON THE DECEDENT DUE TO HIS CONSTANT KICKING. KARL WAS IN FEAR OF BEING STRUCK AND INCAPACITATED BY THE DECEDENTS` KICKING. KARL STATED THAT THE DECEDENTS ACTIONS WAS AN ATTEMPT TO INFLICT BODILY HARM TO THE OFFICERS PLACING HIM IN FEAR FOR HIS SAFETY AND FOR THE OTHER OFFICERS. KARL STATED THAT THE DECEDENT WAS TASERED AN UNKNOWN NUMBER OF TIMES WHILE HE STRUGGLED WITH THE DECEDENT WITH NO EFFECT. OFFICER FALCON RELIEVED RAMIREZ ONCE RESCUE ARRIVED, LEAVING FOUR OFFICERS ATTEMPTING TO CONTROL THE DECEDENT. THE DECEDENT CONTINUED TO FIGHT AND WAS ABLE TO PHYSICALLY MOVE THE OFFICERS WHILE THEY ATTEMPT TO GAIN COMPLIANCE. THE DECEDENT BECAME UNRESPONSIVE AND PARAMEDICS THAT WERE TREATING RAMIREZ WERE

---

_Investigator Signature_                          _Supervisor Signature_

TYSON
00927

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*    Case Mng Status: *ACTIVE*    Occurred: *10/27/2014*

   Offense: *DEATH INVESTIGATION*

Investigator: *RILLO, R. (2535)*    Date / Time: *06/29/2015 09:36:31, Monday*

Supervisor: *BIEN, L. (2075)*    Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday*

   Contact:    Reference: *Follow Up*

SUMMONED. THE DECEDENT LEG RESTRAINTS WERE REMOVED AND RESCUE BEGAN TO TREAT THE DECEDENT.

A SWORN DIGITALLY RECORDED STATEMENT WAS TAKEN FROM OFFICER TRUNTZ ON 01/15/15. OFFICER TRUNTZ STATED THAT HE RESPONDED TO THE INCIDENT LOCATION AS A RESULT OF AN EMERGENCY CALL FOR ASSISTANCE FROM AN OFFICER ON-SCENE. UPON ARRIVAL, HE OBSERVED A LARGE HANDCUFFED NAKED MAN LYING PRONE WHILE SCREAMING, ROLLING AND KICKING. OFFICER RAMIREZ WAS BLEEDING PROFUSELY FROM HIS FOREHEAD, SWEATING AND APPEARED EXHAUSTED WHILE ATTEMPTING TO SECURE THE DECEDENT`S UPPER BODY. OFFICER PANTALOUKAS APPEARED TO BE "…EXHAUSTED AS IF HE`S JUST BEEN IN A FIGHT OF HIS LIFE." OFFICER`S ISSUED THE DECEDENT VERBAL COMMANDS YIELDING NO COMPLIANCE. TRUNTZ APPLIED PRESSURE TO THE DECEDENT IN AN ATTEMPT TO KEEP HIM FROM GETTING UP. THE DECEDENT CONTINUED TO KICK WHILE AT LEAST ONE OFFICER LEFT TO RETRIEVE LEG RESTRAINTS. DURING THIS TIME, THE DECEDENT WAS TASERED AGAIN. TRUNTZ ADVISED THAT THE PROBES WERE ALREADY ATTACHED TO THE DECEDENT AND PANTALOUKAS APPEARED TO BE TOUCH STUNNING HIM IN THE FOOT AREA. THE TASER DID NOT APPEAR TO HAVE ANY EFFECT. AT ONE POINT, THE DECEDENT WAS PLACED INTO LEG RESTRAINTS. HE CONTINUED TO KICK; HOWEVER HIS RANGE OF MOTION WAS RESTRICTED. OFFICER FALCON ARRIVED AND RELIEVED RAMIREZ WHO WAS TREATED BY ARRIVING PARAMEDICS AND A SUPERVISOR WAS REQUESTED. TRUNTZ NOTICED THAT THE DECEDENT STOPPED MOVING AND MAKING NOISE. HE OBSERVED THAT THE DECEDENTS LIPS WERE POSSIBLY TURNING BLUE. HE DIRECTED ALL OFFICERS TO STOP RETRAINING THE DECEDENT AND SUMMONED THE PARAMEDICS WHO WERE ON SCENE. THE DECEDENTS HANDCUFFS WERE REMOVED AND HE WAS ROLLED ONTO HIS BACK. THE PARAMEDICS BEGAN CPR. THE LEG RESTRAINTS WERE THEN REMOVED.

TRUNTZ STATED THAT THE DECEDENT FAILED TO COMPLY WITH ALL VERBAL COMMANDS AND CONTINUED TO KICK DURING HIS INTERACTION WITH HIM. THE DECEDENT EXHIBITED EXTRA STRENGTH AND SEEMED TO BE IMMUNE FROM PAIN.

A SWORN DIGITALLY RECORDED STATEMENT WAS TAKEN FROM OFFICER FALCON ON JANUARY 21, 2014. FALCON STATED THAT HE RESPONDED TO THE INCIDENT LOCATION AS A RESULT OF A CALL FOR EMERGENCY ASSISTANCE INVOLVING AN INJURED OFFICER. UPON HIS ARRIVAL, HE OBSERVED FIVE OR SIX OFFICERS STRUGGLING WITH A COMBATIVE AND VIOLENT SUBJECT. FALCON STATED THAT BLOOD WAS EVERYWHERE. HE RELIEVED RAMIREZ AND WAS ATTEMPTING TO CONTROL THE

Investigator Signature          Supervisor Signature

TYSON
00928

**CASE SUPPLEMENTAL REPORT**

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: ***331410143555***

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*

Case Mng Status: *ACTIVE*

Occurred: *10/27/2014*

Offense: *DEATH INVESTIGATION*

---

Investigator: *RILLO, R. (2535)*

Date / Time: *06/29/2015 09:36:31, Monday*

Supervisor: *BIEN, L. (2075)*

Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday*

Contact:

Reference: *Follow Up*

---

HANDCUFFED DECEDENTS` UPPER BODY BY HIS BODY WEIGHT. THE DECEDENT WAS THRASHING VIOLENTLY AND LIFTING HIS UPPER BODY DESPITE THE WEIGHT AND EFFORTS OF SEVERAL OFFICERS TO HOLD HIM DOWN. THE DECEDENT WAS ABLE TO LIFT THE OFFICERS AND DISPLACE THEM FROM HIS UPPER BODY. HE CONTINUED TO KICK AND GRAB OFFICERS FINGERS WHILE CLAWING AT THEM. THE DECEDENT WAS COMPLETELY OUT OF CONTROL AND FAILED TO RESPOND TO ALL VERBAL COMMANDS.  FALCON STATED THAT THE DECEDENT WAS IN MORE CONTROL OF THE SITUATION THAN THE OFFICERS. HE DID NOT KNOW IF A TASER WAS DEPLOYED WHILE HE WAS PRESENT. HE WAS AWARE THAT THE TASER HAD BEEN PREVIOUSLY DEPLOYED AS HE WAS WARNED BY OFFICERS THAT PRONGS WERE ATTACHED TO THE DECEDENTS BACK. LEG RESTRAINTS WERE EVENTUALLY PLACED ON THE RESISTING DECEDENT. AT ONE POINT THEREAFTER, THE DECEDENT BECAME STILL. THE PARAMEDICS TREATING RAMIREZ WERE SUMMONED. THE DECEDENT WAS ROLLED ONTO HIS BACK WHEN HIS HANDCUFFS AND LEG RESTRAINTS WERE REMOVED.

A SWORN DIGITALLY RECORDED STATEMENT WAS TAKEN FROM OFFICER WAGNER ON 01/15/15. WAGNER STATED THAT HE RESPONDED TO THE INCIDENT LOCATION IN RESPONSE TO AN EMERGENCY CALL FOR ASSISTANCE. UPON ARRIVAL, HE OBSERVED OFFICERS RAMIREZ, PANTALOUKAS, KARL, KERNS AND FALCON ATTEMPTING TO HOLD DOWN A LARGE NAKED MAN. RAMIREZ WAS BLEEDING FROM A HEAD WOUND. HE OBSERVED A LARGE IN SIZE BROKEN CLOCK IN THE COURTYARD. WAGNER PROVIDED SCENE SECURITY FOR THE INVOLVED OFFICERS AND DID NOT MAKE PHYSICAL CONTACT WITH THE DECEDENT. THE DECEDENT WAS SCREAMING, KICKING AND BEHAVING IRRATIONALLY. OFFICERS WERE ISSUING VERBAL COMMANDS TO THE HANDCUFFED DECEDENT TO STOP RESISTING AND TO RELAX WHILE ATTEMPTING TO HOLD HIM DOWN GAINING NO COMPLIANCE. THE DECEDENT WAS ABLE TO PHYSICALLY MOVE THE OFFICERS DURING THE STRUGGLE. WAGNER STATED THAT HE WITNESSED OFFICER PANTALOUKAS TASER THE DECEDENT PRIOR TO BEING HANDCUFFED, BUT PRIOR TO LEG RESTRAINTS. HE ADVISED THAT VERBAL COMMANDS WERE GIVEN SEVERAL TIMES BEFORE THE DECEDENT WAS TASERED DUE TO NONCOMPLIANCE AND CONTINUAL KICKING. THE TASER WAS NOT EFFECTIVE. WAGNER BELIEVED THAT OFFICER KERNS AND FALCON PLACED THE DECEDENT IN LEG RESTRAINS TO RESTRICT HIS MOVEMENTS AND DETER THE CONTINUAL KICKING. WAGNER STATED THAT THE KICKING COULD CAUSE GREAT BODILY HARM. SHORTLY THEREAFTER, THE DECEDENT STOPPED BREATHING AND THE PARAMEDICS ON SCENE WERE SUMMONED TO PROVIDE MEDICAL AIDE.

A TIME LINE WAS CREATED FROM THE COMPUTER AIDED DISPATCH (CAD) AND TASER DATA DOWN

---

Investigator Signature

Supervisor Signature

TYSON
00929

**CASE SUPPLEMENTAL REPORT**                    Printed: 07/20/2015  14:37

*Hollywood Police Department*                                          OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *ACTIVE*              **Case Mng Status:** *ACTIVE*              **Occurred:** *10/27/2014*

   **Offense:** *DEATH INVESTIGATION*

**Investigator:** *RILLO, R. (2535)*                    **Date / Time:** *06/29/2015 09:36:31, Monday*

**Supervisor:** *BIEN, L. (2075)*              **Supervisor Review Date / Time:** *07/10/2015 07:38:53, Friday*

   **Contact:**                                          **Reference:** *Follow Up*

---

LOADS. THE INFORMATION IS SYNOPSIZED BELOW.


SEE EXHIBIT D


THE TIME LINE CHART INDICATES THE INCORPORATED COMPUTER AIDED DISPATCH (CAD) TIMES, OFFICERS RESPONDING (ONLY ADVISED OR DISPATCHED), TASER TIMES, DURATION OF THE TASER AND THE TIME GAP BETWEEN TASER DEPLOYMENTS. THE COMPUTER AIDED DISPATCH ONLY RECORDED THE OFFICERS THAT WERE DISPATCHED OR WHO ADVISED THAT THEY WERE RESPONDING OR ARRIVING. THE COMMUNICATIONS CHANNEL WAS DESIGNATED AS EMERGENCY RADIO TRAFFIC ONLY AT 14:54:03 HOURS. IT IS COMMON PRACTICE DURING EMERGENCY SITUATIONS FOR OFFICERS TO RESPOND TO AN INCIDENT WITH OUT ADVISING DISPATCH TO AVOID UNNECESSARY RADIO TRANSMISSIONS INTENDED FOR THE OFFICERS ALREADY ON SCENE. THE CAD DOES NOT DICTATE OFFICER WAGNER BEING DISPATCHED TO THE SCENE, ONLY HIS ARRIVAL TIME. THE CAD DOES NOT INDICATE WHEN OFFICER TRUNTZ, FALCON AND KERNS RESPONDED TO THE SCENE OR WHEN THEY ARRIVED.


THE TASER DEPLOYMENT TIMES INDICATE THE START OF THE TASER CYCLE. A TASER CYCLE OF THE TASER INTERNATIONAL X26/P IS FIVE SECONDS. IF THE TRIGGER IS STILL DEPLOYED, THE TASER WILL CONTINUE TO CYCLE UNTIL THE TRIGGER IS RELEASED. DURING THE FIRST TASER DEPLOYMENT BY PANTALOUKAS AT 14:53:55 HOURS, THE TRIGGER WAS HELD DOWN EXTENDING THE CYCLE TO NINE SECONDS. THE TIME FROM THE FIRST TASER DEPLOYMENT TO THE IN CUSTODY TIME WAS 106 SECONDS. TWO TASERS WERE DEPLOYED DURING THE NINETY SECONDS. RAMIREZ DEPLOYED HIS TASER ONE TIME FOR A FIVE SECOND CYCLE. THE DEPLOYMENT IS BELIEVED TO BE INEFFECTIVE DUE TO BOTH PRONGS FAILING TO MAKE CONTACT WITH THE DECEDENT. THE BROWARD COUNTY MEDICAL EXAMINER'S REPORT INDICATED THAT A SINGLE IRREGULAR 0.8 X 0.9 CENTIMETER ABRASION WITH A CENTRAL PUNCTURE WAS FOUND ON THE LEFT SIDE CHEST OF THE DECEDENT THUS INDICATING THE ENTRY OF ONLY ONE PROBE. ACCORDING TO OFFICER RAMIREZ, HE DEPLOYED HIS TASER WHILE THE DECEDENT WAS FACING HIM. PANTALOUKAS DEPLOYED HIS TASER FOUR TIMES DURING THE NINETY SECONDS. PANTALOUKAS STATED THAT HE DEPLOYED HIS TASER PRONGS INTO THE DECEDENTS BACK. THE MEDICAL EXAMINERS REPORT INDICATED THAT THE BARBS WERE STILL ATTACHED TO THE DECEDENTS` BACK AND IN CLOSE PROXIMITY. THE PROXIMATELY OF THE PRONGS HAVE AN

---

Investigator Signature                              Supervisor Signature

TYSON
00930

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*

OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*          Case Mng Status: *ACTIVE*          Occurred: *10/27/2014*

   Offense: *DEATH INVESTIGATION*

Investigator: *RILLO, R. (2535)*                                 Date / Time: *06/29/2015 09:36:31, Monday*

Supervisor: *BIEN, L. (2075)*                    Supervisor Review Date / Time: *07/10/2015 07:38:53, Friday*

   Contact:                                              Reference: *Follow Up*

IMPACT ON THE EFFECTIVENESS OF THE TASER. THE LARGER THE AREA BETWEEN THE PRONGS, THE GREATER THE EFFECTIVENESS WILL BE. THE FIRST DEPLOYMENT WAS NINE SECONDS AND THE SUBSEQUENT DEPLOYMENTS WERE FIVE SECONDS EACH. A TASER WAS CYCLING FOR A TOTAL OF TWENTY NINE SECONDS DURING THE INITIAL NINETY SECONDS UNTIL AN OFFICER ADVISED THAT THE DECEDENT WAS IN CUSTODY. ONLY ONE TASER WAS CYCLING AT ANY PARTICULAR TIME. THE TASER DEPLOYMENT TIMES INDICATE THE TASER CYCLE START TIME SYNCHRONIZED TO REAL TIME DURING THE TASER DOWNLOAD ON 10/28/15. THE TASER CYCLE TIMES ARE APPROXIMATE.

PANTALOUKAS CYCLED HIS TASER AN ADDITIONAL FIVE TIMES AFTER THE DECEDENT WAS HANDCUFFED. ACCORDING TO THE OFFICER STATEMENTS, THE TASER CYCLE WAS THE RESULT OF THE DECEDENT FAILING TO COMPLY WITH VERBAL COMMANDS TO CALM DOWN AND STOP RESISTING. THE DECEDENT CONTINUED TO ACTIVELY RESIST BY ROLLING, THRASHING AND VIOLENTLY KICKING AT THE OFFICERS. WARNINGS WERE GIVEN PRIOR TO MOST TASER DEPLOYMENTS. APPROXIMATELY FOUR MINUTES AND 44 SECONDS PASSED BETWEEN THE IN CUSTODY TIME UNTIL THE LAST TASER CYCLE. THE TIME BETWEEN THE FIRST AND LAST TASER DEPLOYMENT WAS APPROXIMATELY SIX MINUTES AND THIRTY SECONDS.

THE TIME GAP CATEGORY INDICATES THE AMOUNT OF TIME BETWEEN TASER CYCLES. THE TIME GAP INDICATES THAT THERE WAS SUFFICIENT TIME BETWEEN CYCLES FOR VERBAL COMMANDS TO BE GIVEN WITH THE EXCEPTION OF THE FIRST TWO CYCLES BY PANTALOUKAS.

12/15/14

THE TASERS ASSIGNED TO OFFICER PANTALOUKAS BEARING SERIAL NUMBER X00-578574 AND OFFICER RAMIREZ BEARING SERIAL NUMBER X00-578388 WERE SENT TO TASER INTERNATIONAL LOCATED AT 17800 NORTH 85 STREET, SCOTTSDALE, ARIZONA 85255 FOR ANALYSIS. TASER INTERNATIONAL VERIFIED THE DOWNLOADED DATA FROM BOTH TASERS RECORDED IN THE ACTIVATION LOG WAS FUNCTIONING PROPERLY. TASER DETERMINED THAT BOTH TASERS WERE FUNCTIONING WITHIN THE MANUFACTURER PUBLISHED ELECTRICAL SPECIFICATIONS. BOTH TASERS WERE INSPECTED FOR ANY DAMAGE THAT COULD IMPEDE FUNCTIONALITY OR ADD RISK TO THE ACTIVATION LOG INTEGRITY. NO DAMAGE WAS FOUND. THE TASER INTERNATIONAL ANALYSIS AND REPORT ARE INCLUDED IN THE FILE.

_____          _____
Investigator Signature                       Supervisor Signature

TYSON
00931

## CASE SUPPLEMENTAL REPORT

Printed: 07/20/2015  14:37

*Hollywood Police Department*                                    OCA: **331410143555**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *ACTIVE* | **Case Mng Status:** *ACTIVE* | **Occurred:** *10/27/2014* |
| **Offense:** *DEATH INVESTIGATION* | | |

| | |
|---|---|
| **Investigator:** *RILLO, R.  (2535)* | **Date / Time:** *06/29/2015 09:36:31, Monday* |
| **Supervisor:** *BIEN, L.  (2075)* | **Supervisor Review Date / Time:** *07/10/2015 07:38:53, Friday* |
| **Contact:** | **Reference:** *Follow Up* |

DOCTOR MARLON OSBOURNE OF THE BROWARD COUNTY MEDICAL EXAMINER`S OFFICE
PERFORMED THE AUTOPSY OF THE DECEDENT ON 10/28/14 AT 1122 HOURS. THE FINAL DIAGNOSES
INCLUDE:

1. SEVERE CORONARY ARTERIOSCLEROSIS
2. FIBROMUSCULAR DYSPLASIA OF THE CARDIAC CONDUCTION SYSTEM
3. ABRASIONS TO TORSO AND EXTREMITIES
4. INJURIES FROM ELECTROMUSCULAR DEVICE IMPLANTATION
5. TOXICOLOGY
a. DELTA-9 THC POSITIVE 7ng/mL - BLOOD
b. ETHANOL POSITIVE 0.03 g/Dl

DOCTOR OSBOURNE OPINIONED "...EXAMINATION OF THE HEART REVEALED SEVERE CORONARY
ARTIOSCLEROSIS AS WELL AS CONGENIAL DISORDER INVOLVING THE CARDIAC CONDUCTION
SYSTEM, INDEPENDENT OF ONE ANOTHER EITHER CONDITION COULD LEAD TO SUDDEN CARDIAC
DEATH. IN CAN BE DISCERNED TO WHAT DEGREE IF ANY THE STRUGGLE WITH THE POLICE AND
SUBSEQUENT DISCHARGE FROM THE EDD AFFECT HIS UNDERLYING NATURAL DISEASE."

THE CAUSE OF DEATH IS UNDETERMINED AND THE MANNER OF DEATH COULD NOT BE
DETERMINED.

_____
Investigator Signature    2535

_____
Supervisor Signature    2075

TYSON
00932

EXHIBIT A

| OFFICER | TASER | CARTRIDGE 1 | CARTRIDGE 2 |
|---|---|---|---|
|  |  |  |  |
| PANTALOUKAS | X00-578574 | C4102VTM2 | C4102VNY8 (SPENT) |
| RAMIREZ | X00-578388 | C4102VHV2 (SPENT) | C4102VTVP |

TYSON
00933

EXHIBIT B

| TASER | DURATION | TIME GAP |
|---|---|---|
| TIMES INDICATE CYCLE START TIME SYNCHING TASERS | OF TASER USE | SECONDS BETWEEN |
| ON 10/28/14 TO REAL TIME | | USE |
| | | |
| 14:53:26 RAMIREZ         33C7 | 5 SEC | |
| 14:53:55 PANTALOUKAS  33C5 | 9 SEC | 29 SEC |
| 14:54:05 PANTALOUKAS  33C5 | 5 SEC | 10 SEC |
| 14:54:23 PANTALOUKAS  33C5 | 5 SEC | 18 SEC |
| 14:54:56 PANTALOUKAS  33C5 | 5 SEC | 33 SEC |
| | | |
| | 29 SEC | |
| | | |
| 14:56:15 PANTALOUKAS  33C5 | 5 | 79 |
| 14:58:23  PANTALOUKAS  33C5 | 5 | 128 |
| 14:59:03 PANTALOUKAS  33C5 | 5 | 40 |
| 14:59:29  PANTALOUKAS  33C5 | 5 | 26 |
| 14:59:56  PANTALOUKAS  33C5 | 5 | 27 |
| | | |
| | 25 SECONDS | |
| | | |
| TIME BETWEEN 1ST AND LAST 390 SECONDS | 54 SECONDS | |
| 6 MINUTES AND 30 SECONDS | TOTAL | |

TYSON
00934

# EXHIBIT C

LEKNI MOORE TEXTS TO LESMARIE (TEXT IN ASCENDING ORDER):

| From / To | Date/Time | Number | Status | Message |
|---|---|---|---|---|
| From<br>+16199880247<br>Tena Lekni moore* | 10/27/2014<br>3:12:10 PM(UTC-4) | +120631300<br>24 | Read | Ok |
| From<br>+16199880247<br>Tena Lekni moore* | 10/27/2014<br>3:10:26 PM(UTC-4) | +140445500<br>07 | Read | They are putting up crime scene tape in the back yard. |
| From<br>+16199880247<br>Tena Lekni moore* | 10/27/2014<br>3:01:10 PM(UTC-4) | +140445500<br>07 | Read | The head police officer is being a jerk. |
| From<br>+16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:54:18 PM(UTC-4) | +140445500<br>08 | Read | Police are here and they tasted him |
| From<br>+16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:46:59 PM(UTC-4) | +140445500<br>08 | Read | Ok the other neighbor in the house just saw him naked on the steps right now too. |
| From<br>+16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:37:02 PM(UTC-4) | +120631300<br>24 | Read | Yes now he is naked on his balcony |
| From<br>+16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:34:23 PM(UTC-4) | +140445500<br>08 | Read | Not sure sounds like she's trying to calm him down |
| From<br>+16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:32:39 PM(UTC-4) | +120631300<br>23 | Read | Uh oh they are yelling and screaming at each other |
| From<br>+16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:29:28 PM(UTC-4) | +120631300<br>24 | Read | Ok a lady just went up to his apartment.  She rode her bicycle over.  Maybe that's a friend of his? |
| From | 10/27/2014 | +140445500 | Read | Ok now he's getting weird.  He's outside yelling at no one and throwing |

TEXTS EXCHANGE BETWEEN MOORE AND LESMARIE (TEXT IN ASCENDING ORDER):

| From / To | Date/Time | Status | Message |
|---|---|---|---|
| To<br>16199880247<br>Tena Lekni moore* | 10/29/2014<br>10:08:35 AM(UTC-4) | Sent | Lekni fyi, was call by police for deposition regarding Daniel. Had to disclosed our conversations during incident as well as some text in order.to get straight time line of the.events. X |
| To<br>16199880247<br>Tena Lekni moore* | 10/27/2014<br>3:11:27 PM(UTC-4) | Sent | I. Coming asap |
| To<br>16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:51:38 PM(UTC-4) | Sent | Ok.... |
| To<br>19545341397<br>handyman Patrick the* | 10/27/2014<br>2:46:17 PM(UTC-4) | Sent | ....police on the way now |
| To<br>16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:46:00 PM(UTC-4) | Sent | ....police on the way now |
| To<br>16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:36:29 PM(UTC-4) | Sent | I understand... If you don't mind, keep me posted and see I you manage to be able to speak to her. Thxs. X |
| To<br>16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:33:10 PM(UTC-4) | Sent | Should I call police??!! |

TYSON
00935

| To | | | |
|---|---|---|---|
| **To**<br>16199880247<br>Tena Lekni moore* | 10/27/2014<br>2:31:14 PM(UTC-4) | Sent | Maybe...Or his mother....patrick just left to Hallandale unfortunately... If you see her maybe ser if I should call someone,. Police.... Let me know. Thxs. Xavier |
| **To**<br>7862716462<br>Lesmarie Valerie * | 10/27/2014<br>1:07:44 PM(UTC-4) | Sent | Lekni wrote " Guesthouse new tenant has a pb... Ok now he's getting weird.  He's outside yelling at no one and throwing stuff  in the yard and off his balcony. Just an FYI."<br><br>I answer " Mmmmm... This is worrysome.... Thxs for the.info Lekni. X" |
| **To**<br>19545341397<br>handyman Patrick the* | 10/27/2014<br>1:07:44 PM(UTC-4) | Sent | Lekni wrote " Guesthouse new tenant has a pb... Ok now he's getting weird.  He's outside yelling at no one and throwing stuff  in the yard and off his balcony. Just an FYI."<br><br>I answer " Mmmmm... This is worrysome.... Thxs for the.info Lekni. X" |

TYSON
00936

## EXHIBIT D: 1836 Jackson Street In Custody  Death

| ALL TIMES ARE APPROXIMATE | | | TIMES INDICATE CYCLE START TIME | | |
| FIRE CAD | POLICE CAD | OFFICERS | TASER | DURATION OF TASER | TIME GAP SECONDS |
| | | | TIMES INDICATE SYNCHING TASERS ON 10/28/14 TO REAL TIME | USE | BETWEEN USE |
| | 14:47:54  DISPATCHED | 33C5 RAMIREZ, 33C7 PONTALOUKAS | | | |
| | 14:47:59  ENROUTE | 33C5 RAMIREZ, 33C7 PONTALOUKAS | | | |
| | 14:48:14  ARRIVED | 33C7 RAMIREZ | | | |
| | | | 14:53:26 RAMIREZ  33C7 | 5 SEC | |
| | 14:53:48 10-94 REQUESTED | PANTALOUKAS REQUESTS BACKUP | (INEFFECTIVE/LOST CONNECTION) | | |
| | 14:54:03 AIR 10-03 | | | | |
| 14:54:40 RESCUE REQUESTED | (EMERGENCY TRAFFIC ONLY) | | | | |
| | | | 14:53:55 PANTALOUKAS  33C5 | 9 SEC | 29 SEC |
| | | | 14:54:05 PANTALOUKAS  33C5 | 5 SEC | 10 SEC |
| | | | 14:54:23 PANTALOUKAS  33C5 | 5 SEC | 18 SEC |
| | | | 14:54:56 PANTALOUKAS  33C5 | 5 SEC | 33 SEC |
| | 14:55:12 IN CUSTODY | | 106 SECONDS TO IN CUSTODY | 29 SEC | |
| | | | FROM 1ST TASER DEPLOYMENT | | |
| | | | (1 MINUTE 46 SECONDS) | | |
| | 14:55:35 ENROUTE | 33C8 KARL, 33C09 OWENS | | | |
| | 14:55:39  ARRIVED | 33C10 WAGNER | | | |
| 14:55:40  RESCUE 105 DISPATCHED | | | | | |
| | | | 14:56:15 PANTALOUKAS  33C5 | 5 | 79 |
| | 14:56:53  AIR 1008 | | | | |
| 14:57:17 RESCUE 105 ENROUTE | EMERGENCY TRAFFIC CANCELED | | 14:58:23 PANTALOUKAS  33C5 | 5 | 128 |
| | | | 14:59:03 PANTALOUKAS  33C5 | 5 | 40 |
| | | | 14:59:29  PANTALOUKAS  33C5 | 5 | 26 |
| | | | 14:59:56  PANTALOUKAS  33C5 | 5 | 27 |
| 15:00:12 R105 APPROACHING SCENE | | | | | |
| | | | 284 SECONDS OR 4 MINUTES 44 | 25 SECONDS | |
| | 15:00:33 ARRIVED | 33C8 KARL, 33C9 OWENS | SECONDS FROM I/C TO LAST TASER | | |
| 15:01:08 RESCUE 105 ALREADY O/S | 15:01:08  ARRIVED | 33D11 SGT. RUIZ | | | |
| (ARRIVED) | | | | | |
| 15:16:22 RESCUE 105 ENROUTE | | | | | |
| TO MEMORIAL HOSPITAL | | | | | |
| | LEGEND | | | | |
| CALL SIGN | OFFICER | FTO | | | |
| 33C7 | RAMIREZ | KERNS 33C81  SHADOWING | | | |
| 33C5 | PANTALOUKAS | FLORES 33C82 SHADOWING | | | |
| 33C8 | KARL | SGT RUIZ 33D11 | | | |
| 33C10 | WAGNER | | TIME BETWEEN 1ST AND LAST | | |
| 33C9 | OWENS | | 390 SECONDS | 54 SECONDS | |
| | | | 6 MINUTES AND 30 SECONDS | TOTAL | |

TYSON
00937