# EXHIBIT 5

# In the matter re:

## Jean Suarez
## v.
## City of Hollywood et al.

## Case No: 0-16-cv-62215-WPD
United States District Court
Southern District of Florida

---

## Report

## of

## CHARLES W. DRAGO
## DRAGO PROFESSIONAL CONSULTANTS, LLC

---

April 6, 2018



EXHIBIT
1
CR 4/26/18
PENGAD 800-631-6989

## Table of Contents

Table of Contents ......................................................................................................... 2

Introduction................................................................................................................... 3

Qualifications................................................................................................................. 3

Opinions......................................................................................................................... 4

Materials considered in forming opinions.................................................................. 13

Past Expert Witness Testimony................................................................................... 15

Publications.................................................................................................................. 24

Compensation.............................................................................................................. 25

Appendix 1 – Curriculum Vitae of Charles W. Drago

Attorney Adam Hapner
Weiss Serota Helfman & Bierman, P.L.
200 E. Broward Blvd., Suite 900
Fort Lauderdale, Fl. 33301

Dear Attorney Hapner,

I have been retained as a consultant and expert in the matter known to me as Jean Suarez v. City of Hollywood, et al., United States District Court for The Southern District of Florida, Case No.: 0-16-cv-62215-WPD.

I was asked to review documents relevant to this matter and render expert opinions about the Hollywood Police Department policies, training and supervision with regards to use of force, Taser use, and the Mentally Ill.

After evaluation of all the facts and circumstances that are known to the witnesses at the time of this incident, I employed comparative methodology in determining my opinions and in evaluating the officer's actions. This method of comparing the actions of the officers with accepted practices and training in the law enforcement profession is a common and consistently applied method when evaluating an officer's actions. Therefore, I formed a number of opinions to a reasonable degree of professional certainty, as to the police policies and procedures employed by the Hollywood Police Department.

My opinions are based not only on the facts presented by all parties, but my experience and training concerning proper policies, training and police practices in use of force, dealing with the mentally ill, police internal affairs investigations, complaint processes and  supervision. I have studied the reports and other material provided to me regarding this case. Please be advised that if there are any additional depositions, policies, or other materials produced in this case, a supplemental report may be necessary; thus I reserve the right to supplement my opinions and/or this report.

## Qualifications

I am a 30 year career law enforcement officer who advanced through the ranks of the police department with an exemplary record.  Recognized for integrity and leadership, I was appointed as assistant police chief, police chief as well as deputy chief of staff and senior law enforcement advisor to the Governor of Florida.

As a senior leader of major law enforcement agencies and a member of the department's review boards; I have investigated hundreds of police misconduct allegations in all areas including use of force/Taser/pepper spray, deadly force, k-9, police pursuits, and false arrest claims. I have broad-based experience in these high liability areas including the management and development of policies and procedures in those areas.

As a senior leader of major law enforcement agencies and a member of the department's review boards; I have investigated hundreds of police misconduct allegations in all areas including officer involved shootings, use of force/Taser/pepper spray/firearms, k-9, police pursuits, and traffic stops. I have broad-based experience in high liability areas including the management and development of policies and procedures in those areas.

I have attended numerous hours of Taser training and developed a county-wide policy for the use of Tasers as well as a management accountability system for Taser Use. I was invited to sit on the county wide Taser Training and Policy Committee which incorporated all policy issues including medical, use of force and training. As the Police Chief of Oviedo Florida, Taser deployments were reduced and new training and policies were instituted.

During my career, I have attained a significant amount of experience in police officer involved shootings as a police officer in the field as well as a line supervisor and homicide detective supervisor who investigated police officer involved shootings. As a police executive, I developed numerous police policies, including use of force policies, employee discipline policies, and internal investigation policies. Additionally, I evaluated trends and individual cases pertaining to the above policies. I also served as a union representative on many officer involved shootings.  I received training in criminal investigations, homicide investigations, police officer bill of rights and internal police investigations.

As an experienced frontline law enforcement officer who was directly or indirectly involved in thousands of arrests, my experience includes service in various capacities with direct hands on involvement and/or supervision in areas such as patrol, street narcotics, SWAT, k-9, street crimes, criminal investigations, training and homicide. I have advanced through the ranks and served as a police officer, field training officer, detective, sergeant, detective sergeant, captain, major, assistant chief and police chief with 18 of those years as a commanding officer.  My career includes significant experience with the internal investigations of police officers as an officer, immediate supervisor and senior administrator.

I was a Florida State Certified Instructor in police procedures and served as a Field Training Officer as well as a police instructor for the Broward County Police Academy for approximately ten years. In addition to the police academy, I also taught numerous police officers in use of force, patrol procedures, domestic violence, narcotics investigations and search warrant execution.

My education includes an Associate's Degree in Criminal Justice, a Bachelor's Degree in Criminal Justice, and graduation from the Southern Police Institute Command Officer's School at The University of Louisville. In addition, I have had numerous hours of training in the use of force, police administration, internal affairs, supervision, and the management of those functions.

**Opinions**:

**Opinion A:  There is no evidence in the materials reviewed that the Hollywood Police Department failed to properly train their police officers in the proper use of the Taser CED**

1. There are three essential actions agencies must take to ensure the proper use of the Taser CED. First, they must set forth policies and procedures through a written directive. Then they must establish a training program that enforces the policies and ensures that police officers use the weapon within policy and the law.  Finally, the agency must supervise the officers to ensure that they are following the training and polices.

**Policies**:

2. The Hollywood Police Department established guidance for their police officer's use of the Taser Conducted Energy Device through a policy entitled Use of Force: Special Impact Weapons & Chemical Agents, Department SOP #201

3. Department SOP#201 outlines the policies and procedures for less-lethal weapons including Aerosol Chemical Agents, Impact Weapons, Special Impact Munitions and the Taser. Section E of the policy addresses the use of the Taser.

4. The SOP addresses all the appropriate issues a law enforcement professional might expect to find in a policy of this type. It also follows the recommendations as represented in the IACP Model Policy; Electronic Control Weapons such as training, weapon readiness, deployment, post deployment, and reporting.

5. The comprehensive policy is consistent with police department policies across the country as well as with the International Association of Chiefs of Police (IACP) and the Police Executive Research Forum (PERF) which all require that police officers only use the Taser in response to physical resistance.

6. **Hollywood Police Department SOP #201:** *The use of Tasers will be considered a LEVEL 4 – ACTIVE PHYSCIAL RESISTANCE response on the Department's Use of Force Continuum. The primary goal in the decision to deploy the Taser is to prevent continuing or escalating violence and to minimize injury to both the Subject and the Officer.*

7. The department SOP #201 is also consistent with the latest publications produced by numerous national and international police organizations such as Internal Association of Chiefs of Police, Fraternal Order of Police, CALEA, National tactical Officers Association and others who produced the National Consensus Policy on Use of Force.

8. **National Consensus Policy on Use of Force**: *IV C. Use of Less-Lethal Force When de-escalation techniques are not effective or appropriate, an officer may consider the use of less-lethal force to control a non-compliant or actively resistant individual. An officer is authorized to use agency-approved, less-lethal force techniques and issued equipment 1. to protect the officer or others from immediate physical harm, 2. to restrain or subdue an individual who is actively resisting or evading arrest, or 3. to bring an unlawful situation safely and effectively under control*

9. Department SOP #201 also includes two sections which pertain specifically to this matter. *A. Sop (4)(E ) Members will be Prohibited from using the Taser when the subject is handcuffed, unless they are exhibiting aggressive physical resistance, actively attempting to escape from custody or trying to harm themselves or others. B. SOP #210 (6): Repetitive Cycle/Multiple Officer Deployments.*

10. The two sections mentioned above are consistent with police department policies nationwide as well as with the IACP Model Policy "Electronic Control Weapons".

11. Hollywood Police Department SOP #201 is in accordance with the training and warnings provided by Taser International (Axon) and with the training provided by the Hollywood Police Department.

12. Hollywood Police department SOP #201 is also in accordance with Florida State Statute 943.1717- Use of dart-firing stun guns.

**Training**:

13. Hollywood police officers Pantaloukas and Ramirez received Taser Certification training while in the FDLE Basic Recruit Academy. The Hollywood Police Department also provided the officers with annual re-certification Taser training prior to this incident.

14. The Taser training provided in the FDLE Basic Recruit Academy curriculum has been approved by the Florida Criminal Justice Standards and Training Commission and consistent with Taser training throughout the State of Florida.

15. The Taser training provided by the Hollywood Police Department was consistent with Taser training throughout the country. Lieutenant Basler testified that the police department utilized the training provided by the manufacturer of the Taser; Taser International (Axon).

16. **Lt. Basler deposition 51:11**: *We follow Taser's curriculum. We have to whenever we teach any kind of Taser refresher or do any kind of Taser training. We have to use Taser. It's an agreement that we have with Taser that we use their curriculum and their PowerPoint.*

17. The Hollywood Police Department Taser training meets the accepted police standards for Taser training.

18. The Hollywood Police Department Policy SOP #201 in place at the time of this incident was consistent with nationally accepted police practices for a less lethal use of force including the Taser.

**Supervision:**

19. The Hollywood Police Department SOP #201 includes language which requires that a supervisor is notified whenever a Taser is deployed against an individual. The policy requires that the supervisor conducts an investigation into the use of force and that the supervisor completes a Supervisor's Response to Resistance Form.

20. SOP #201 contains additional procedures that are required to be adhered to in the event of suspect injury. The procedures may include a download of the Taser Data Port and an investigation by the Internal Affairs Unit.

21. The requirements of SOP #201 are consistent with police department polices nationwide as well as with the IACP Model Policy, Electronic Control Weapons.

22. It should be noted that the SOP #201 was compliant with CALEA standards and approved by CALEA which was the accrediting organization for the Hollywood Police Department at the time of this incident.

23. The Commission on Accreditation for Law Enforcement Agencies (CALEA). "CALEA Accreditation requires an agency to develop a comprehensive, well thought out, uniform set of written directives. This is one of the most successful methods for reaching administrative and operational goals, while also providing direction to personnel." "the agency must maintain compliance with applicable standards, keep its proof of compliance up to date and live by the letter and spirit of those standards" (CALEA Website).

24. The Hollywood Police Department has two policies which deal directly with proper supervision of their police officers. SOP #105 Discipline Policy which establishes guidelines for the disciplinary policy. This policy is consistent with written polices nationwide and with IACP Model Policy, Investigation of Employee Misconduct.  The purpose of this policy is to set a structure whereby the police department will hold accountable any police officers who fail to follow proper training and/or policies.

25. **SOP #105 Discipline Policy**:  *POLICY: Unless otherwise provided for in any applicable Collective Bargaining Agreement, it is the policy of the Department to train and council Members in those instances where such Members need guidance in performing their duties. Imposition of discipline becomes necessary when such training and counseling fails to rectify improper action or the Member commits a pronounced violation. Proper counseling and disciplinary guidelines are essential to efficient and orderly achievement of the Department's Mission.*

26. Hollywood Police Department has a policy entitled SOP #104 Professional Guidance which establishes accountability procedures for handling inquiries into a police officer's conduct. This written policy provides for the process of conducting investigations into any reported misconduct by police officers. The policy is well written and is consistent with such policies across the country as well as with the IACP Model Policy; Investigation of Employee Misconduct.

27. Based on the material reviewed, the Hollywood Police Department not only has the appropriate written policies but also has the provided the appropriate training and held police officers accountable if they violated that training or policy. This was evident in the investigation conducted by Hollywood Police Department in the in custody death of Mr. Tyson.

## Opinion B:  There is no evidence in the materials reviewed that the Hollywood Police Department failed to properly train their police officers in the proper procedures for dealing with the mentally ill.

28. There are three essential actions agencies must take to ensure that police officers treat everyone in a fair and equitable manner especially when the person is developmentally or mentally disabled. First, they must set forth policies and procedures through a written directive. Then they must establish a training program that re-enforces the policies. Finally, the agency must supervise the officers to ensure that they are following the training and policies.

**Policies:**

29. The Hollywood Police Department has numerous polices which are designed to ensure that police officers are following all state and federal laws and preserving the civil rights of all individuals that might come into contact with the police including the mentally, developmentally or physically disabled.

30. These polices include SOP #203 Arrest Procedures, SOP #211 Marchman Act, SOP #212 Baker Act, SOP #216 Patrol Functions and Responsibilities, Procedures, SOP #218 Public Information Desk, SOP #227 Police Canine, SOP #200 Use of Force, SOP #201, SOP #120 Harassment and Discrimination, SOP #104 Professional Compliance,   This list is not intended to be complete but rather an example of the policies relating to mentally, physically or developmentally disabled individuals.

31. **SOP # 203 – Arrest Procedures XI.A.5.:** *"Care should be taken when restraining disabled, sick, injured, intoxicated, drug impaired, and mentally disturbed persons so as not to complicate or compound their condition."*

32. **SOP #203 Arrest Procedures XI.A.6.b:** *"In cases involving violent prisoners/detainees, mentally ill patients, intoxicated or drug impaired persons it is often necessary to subdue the person, as soon as possible, without regard for ideal positioning. In such cases, the Officer will make every effort to place the person in an upright position as soon as the situation allows avoiding the possibility of Positional Asphyxia.*

33. **SOP #227 – Police Canine III.B.3:** *Canine use prohibited "[t]o apprehend a known mentally ill person, unless the subjects actions pose a physical threat to the general public. Such deployment will be determined at the discretion of the Shift Lieutenant."*

34. **Operations Manual 1.6:** *Defines "ADA"*

35. **SOP # 120 – Harassment and Discrimination III.A.6.d.:** *Providing contact person for ADA complaints*

36. **SOP #120 III.A.7d.:** *Providing contact person for ADA complaints*

37. **SOP #216 – Patrol Functions and Responsibilities IV.A.2.:** *Providing accommodations to persons with hearing disabilities*

38. **SOP #218 – Public Information Desk V.A.:** *Defining service animal*

39. **SOP #212 – Baker Act**: *"The purpose of this SOP is to establish standards and guidelines for the handling, care and transportation of individuals who meet the criteria of Florida's Baker Act."*

40. **SOP #212 Baker Act:** *"The Florida Legislature, through the Baker Act, established a comprehensive plan to provide for the social, educational, rehabilitative needs and general welfare of persons experiencing mental health problems. It is the policy of the Department that the individual dignity of persons suffering from emotional disorders will be respected at all times. Procedures dealing with detention, custody, or transport of all individuals will comply with the Laws of the State of Florida and the guidelines established by the Department of Children and Family Services (DCF)."*

41. **SOP # 200 – Use of Force C 5c 4:** *Situational factor to be considered: Non-criminal nature of incident (Baker Act, Marchman Act, or mentally handicapped individual).*

42. **SOP #211 Marchman Act:** *Policy: The Hollywood Police Department recognizes the need for other alternative methods in dealing with, and treating, subjects with substance abuse addictions. This SOP establishes criteria for involuntary admission including protective custody, emergency admission, and involuntary treatment for the purpose of assessment and stabilization of subjects with sub-stance abuse addictions.*

43. **Basler deposition 127:20:** *In October of 2014, were the City of Hollywood standard operating procedures, did they meet or exceed the guidelines offered by FDLE? A. Yes.*

**Training:**

44. Hollywood police officers received training in dealing with mentally ill and developmentally disabled persons in the Police Academy Basic Recruit Curriculum. This is training provided by and sanctioned by the Florida Department of Law Enforcement which is the licensing and regulatory agency which oversees training and standards for police officers in the State of Florida.

45. Police officers also received in-house training which included dealing with mentally ill persons and the liability associated with the use of force and the mentally ill.

46. The police officers in the Hollywood Police Department receive training on how to deal with people suffering from mental illness in various forms and in various training sessions.

47. **Basler deposition 108:1**: *Q. And do officers receive training on responding to calls involving those that are mentally ill?  A. Again, I think we -- we address all disabilities in our training and make sure that it's all -- you know, that the officers consider all the alternatives that they have during all kinds -- all use of force trainings.*

48. The Hollywood Police Department participates in the Broward County Crisis Intervention Team and several officers have received that training which provides information on substance abusers, mentally ill and developmentally disabled persons. It also provides officers with de-escalation skills and practical alternatives to force or arrest.

49. **Wagner deposition 6:10:** *A. I can tell you that I've taken the crisis intervention training, which is a week-long course while I was a police officer at Hollywood.*

50. Officers Ramirez and Pantaloukas attended Taser training which incorporates the considerations needed when officers are dealing with those who are mentally or developmentally disabled.

51. **Pantaloukas deposition 12:22:** *Q. So those that are mentally ill are to be treated like any other citizen prior to deploying your Taser? A. No. We go under specific training for dealing with the mentally ill. Usually you want to try to deescalate the situation with them, let them know that you're there to help them. Let them know that. You know, you're not there to -- we have to put handcuffs on people we*

*place in the back of our cars, and we transport mentally ill people to the hospital. So they have to have handcuffs on them. So just deescalating the situation and letting them know: Listen, you're not under arrest. You're not in any trouble. These handcuffs are going on just because it's policy that you have to wear them in my backseat.*

52. Officers Ramirez and Pantaloukas received in house training in SOP #212 Baker Act. (Basler deposition 24:6): *Q. Do you know when Officers Pantaloukas and Ramirez were trained in SOP 212? A. Well, they began in -- January 2014, they started the academy. This is gone over in the academy curriculum as well as our in-house. I don't have the exact dates of when their in-house training was on this, but they do have it in --once they come out of the academy, before they even go out on the road, they are trained in this policy.*

53. **Basler deposition 78:10:** *Q. Do you know if the police officers at City of Hollywood have been educated on the theory of excited delirium and the cause of death as tithe use of a Taser on someone who's experiencing excited delirium? A. I know we have -- it is definitely in our Taser training and has been brought up in use of force. I just don't know -- because I know the next question will be when was that training given. I don't know, but it's something that is definitely in our use of force trainings. It's not a foreign -- a foreign concept to the officers.*

54. **Basler deposition 109:4:** *Q. When was Officer Alexis Ramirez informed that mental illness is a disability that is protected under the American Disabilities Act? A. Well, it's done through our Baker Act training, and it is in our rules and regulations which they are reviewed and have to review during their in-house training.*

55. Hollywood police officers receive training on the department SOP #200 Use of Force which includes training related to use of force and the mentally ill.

56. **Basler deposition 127:20:** *In October of 2014, were the City of Hollywood standard operating procedures, did they meet or exceed the guidelines offered by FDLE? A. Yes.*

57. Based on the material reviewed, the policies and training at the Hollywood Police Department meet or exceed the standards for the State of Florida and those accepted on a national level.

58. It should be noted that the aforementioned policies would have been compliant with CALEA standards and approved by CALEA which was the accrediting organization for the Hollywood Police Department at the time of this incident.

59. The Commission on Accreditation for Law Enforcement Agencies (CALEA). "CALEA Accreditation requires an agency to develop a comprehensive, well thought out, uniform set of written directives. This is one of the most successful methods for reaching administrative and operational goals, while also providing direction to personnel." "the agency must maintain compliance with applicable standards, keep its proof of compliance up to date and live by the letter and spirit of those standards" (CALEA Website).

**Supervision:**

60. The Hollywood Police Department has two policies which deal directly with proper supervision of their police officers. SOP #105 Discipline Policy which establishes guidelines for the disciplinary policy. This policy is consistent with written policies nationwide and with IACP Model Policy, Investigation Employee Misconduct.  The purpose of this policy is to set a structure whereby the police department will hold accountable any police officers who fail to follow proper training and/or policies.

61. **SOP #105 Discipline Policy:**   *POLICY: Unless otherwise provided for in any applicable Collective Bargaining Agreement, it is the policy of the Department to train and council Members in those instances where such Members need guidance in performing their duties. Imposition of discipline becomes necessary when such training and counseling fails to rectify improper action or the Member commits a pronounced violation. Proper counseling and disciplinary guidelines are essential to efficient and orderly achievement of the Department's Mission.*

62. Hollywood Police Department has a policy entitled SOP #104 Professional Guidance which establishes accountability procedures for handling inquiries into a police officer's conduct. This written policy provides for the process of conducting investigations into any reported misconduct by police officers. The policy is well written and is consistent with such policies across the country as well as with the IACP Model Policy; Investigation of Employee Misconduct.

63. **HPD SOP III 6 D.:**  *Reporting incidents that are of a discriminatory or harassing nature to any of the following: d. For ADA complaints contact the Assistant City Manager or Hu-man Resources Manager at 954-921-3218.*

64. Based on the material reviewed, Hollywood Police Department not only has the appropriate written policies but also has the provided the appropriate training and held police officers accountable if they violated that training or policy. This was evident in the investigation conducted by Hollywood Police Department in the in custody death of Mr. Tyson**.**

**Opinion C:  The Hollywood Police Department policies on Use of Force meet or exceeds accepted standards. There is also no evidence in the materials reviewed that the Hollywood Police Department failed to properly train or supervise their police officers in the proper Use of Force.**

65. There are three essential actions agencies must take to ensure that police officers use force appropriately and in accordance with the law, policy and training. First, they must set forth policies and procedures through a written directive. Then they must establish a training program that re-enforces the policies. Finally, the agency must supervise the officers to ensure that they are following the training and polices.

**Policies**:

66. The Hollywood Police Department has a policy entitled SOP #200 Use of Force. The SOP is designed "to guide police officers through their decision making process involving levels of resistance and the appropriate application of force."

67. **SOP #200 Use of Force:**   *Policy: It is the department's responsibility to provide supervision, training and guidance in the use of force to ensure reasonable and prudent decisions are made.*

68.  SOP #200 meets or exceeds the standards set in the IACP Model Policy Use of Force and police department polices nationwide at the time of this incident. The policy addresses all necessary issues such as lethal force, less lethal force, training requirements, constitutional requirements, supervisory duties, state laws, situational factors and, reporting requirements.

69. In addition to SOP #200, the police department also provides a policy entitled SOP #201 Use of Force: Special Impact Weapons & Chemical Agents which stands side by side with SOP #200 and supports the intent of that policy.

70. It should be noted that the aforementioned policies would have been compliant with CALEA standards and approved by CALEA which was the accrediting organization for the Hollywood Police Department at the time of this incident.

71. The Commission on Accreditation for Law Enforcement Agencies (CALEA). "CALEA Accreditation requires an agency to develop a comprehensive, well thought out, uniform set of written directives. This is one of the most successful methods for reaching administrative and operational goals, while also providing direction to personnel." "the agency must maintain compliance with applicable standards, keep its proof of compliance up to date and live by the letter and spirit of those standards" (CALEA Website).

**Training**:

72. HPD SOP #200 established a requirement for all officers to attend training on the policy, lethal, less lethal and fleeing felons. The policy also requires police officers to qualify with the department's primary firearm, special impact weapons and chemical agents.

73.  Lieutenant Basler verified that all department officers received such training in the police academy and continuously receives use of force training throughout their career at in-house training.

74.  Hollywood Police Officers Pantaloukas and Ramirez received Taser Certification training while in the FDLE Basic Recruit Academy. The Hollywood Police Department also provided the officers with annual re-certification Taser training prior to this incident.

75. The Taser training provided in the FDLE Basic Recruit Academy Curriculum has been approved by the Florida Criminal Justice Standards and Training Commission and consistent with Taser training throughout the State of Florida.

76. The Taser training provided by the Hollywood Police Department was consistent with Taser training throughout the country. Lieutenant Basler testified that the police department utilized the training provided by the manufacturer of the Taser; Taser International (Axon).

77. Based on the information known, both Officers Pantaloukas and Ramirez were up to date on their mandatory training and in good standing as a certified police officer in the State of Florida. This means that they completed all the minimum requirements to be a certified police officer.

78. **Lt. Basler Deposition 128:12:** *Q. Back in October of 2014, were there any guidelines that the FDLE offered that the City of Hollywood chose not to adopt? A. No, we cannot do that. We actually can't do that. In order for our officers to keep their certification, they have to go do annual use of force training and that's per FDLE, and that's for officers to keep their certification as law enforcement officers for the State of Florida.*

**Supervision:**

79. A review of the material indicates that the Hollywood Police Department has complied with their policy to report a use of force on a Response to Resistance Form. Those forms are then reviewed by the immediate supervisor and processed up through the chain of command. Any commander in the chain can review the use of force and request further investigation if there appears to be a policy violation or training issue.

80. **Lt. Basler deposition 96:6:** *Internal affairs review all the response to resistance, and they will archive it. A major, lieutenant, supervisor, someone in that chain, they see a policy violation or a training issue, they will either address it through their chain or they will address it through internal affairs who will give it to the chief of police to determine what action he would like it to be reviewed under.*

81. Based on the material reviewed, the Hollywood Police Department not only has the appropriate written policies but also has the provided the appropriate training and held police officers accountable if they violated that training or policy. This was evident in the investigation conducted by Hollywood Police Department in the in custody death of Mr. Tyson.

**Materials Considered:**

Amended Complaint
Pantaloukas deposition
Basler deposition
Second Amended Complaint
Numerous Responses to Resistance Forms
HPD SOP #201
HPD SOP #201
HPD SOP #203
HPD SOP #212
HPD SOP #216
HPD SOP #218
HPD SOP #227
HPD  SOP #104

HPD SOP #105

HPD SOP #120

HPD SOP #211

HPD Rules and Regulations

CEW Certification Test

CIT Training

De-Escalation training

Crime Scene Photographs

Audio recordings 911 calls

Letter from State Attorney

ME Report

Witness interviews

Officer Pantaloukas statement

Officer Ramirez statement

Taser downloads

Taser analysis

Incident reports of:

Rillo

Falcon

Elmhorst

Fernandez

Combs

Monetti-Vignau

Ramirez

Pantaloukas

Ruiz

Kerns

Gibbons

Karl

Wagner

Truntz

Unger

Mammarelli

Langley

Keough

Alvarez

Shuman Expert Report

Taylor Expert Report

Taser Law Enforcement Warnings 3/1/13

IACP Concepts and Issues Paper: Investigation of Employee Misconduct

IACP Model Policy: Investigation of Employee Misconduct

IACP Model Policy: Electronic Control Weapons

IACP Model Policy: Use of Force 2006

Pantaloukas training record

Ramirez training record

Truntz training record

Kearns training record

Falcon training record

Karl training record

Reply to Motion to Amend Complaint

Summary of In Service Training

## Expert Witness Testimony for the Past Four Years:

State of Florida v. Smithey (criminal defense)
18th Judicial Circuit Court, Seminole County
Testified in Deposition

State of Florida v. Smithey (criminal)
18th Judicial Circuit Court, Seminole County
Testified in Trial

Alvin Notice v Town of Plainville (plaintiff)
Connecticut Superior Ct.
Testified in Deposition

Frazier v Kansas City (plaintiff)
Circuit Court of Jackson County, Missouri
Testified in Deposition

Smith v. Sherry Appledorn (plaintiff)
United States District Court, District of Minnesota
Testified in Trial

Cheron Hampton- Bates v City of Gainesville/ Timothy Durst (defense)
United States District Court, Northern District of Florida, Gainesville Division
Testified in Deposition

Kyle Bermingham v. The City of Clermont, Florida (plaintiff)
United States District Court, Middle District of Florida, Ocala Division
Testified in Deposition

Frazier v Kansas City (plaintiff)
Circuit Court of Jackson County, Missouri

Police Vehicular Pursuits
Testified in Trial

Brown v. Orange County Sheriff's Office (plaintiff)
U.S. District Court, Middle District of Florida, Orlando Division
Use of Force
Testified in Deposition

Mitchell Schutt v. City of Ocoee (plaintiff)
United Sates District Court, Middle District of Florida, Orlando Division
Use of Force
Testified in Deposition

State of Florida vs. Juan Caamano (criminal defense)
10th Judicial Circuit, Polk County, Florida
Use of Force
Testified in Trial

Maurice Washington v. Oktibbeha County, Mississippi, Et al. (defense)
United States District Court for the Northern District of Mississippi Aberdeen Division
Use of Force
Testified in Deposition

Alvin Notice v Town of Plainville (plaintiff)
Connecticut Superior Ct.
Criminal Investigation/Domestic Violence
Testified in Trial

LaDrena Thomas v. The City of Jacksonville, JSO (plaintiff)
Fourth Judicial Circuit Court, Duval County, Florida
Use of Force
Testified in Deposition

Estate of Trey Williams v. City of Shelbyville, et.al. (Plaintiff)
United States District Court, Western District of Kentucky at Louisville
Use of Force
Testified in Deposition

Ramirez v Sheriff Grady Judd (plaintiff)
United States District Court of Florida, Tampa Division Case No. 8:12-CV-2819-T-27EAJ
Use of Force/Negligent Supervision
Testified in Deposition

Martignetti v. Serge Celestin and Broward Sheriff's Office (plaintiff)
17th Circuit Court, Broward County, Florida Case No. 11-05179
Use of Force/Negligent Supervision

Testified in Deposition

Hamilton v Beaufort County Sheriff's Office (plaintiff)
County of Beaufort, 14th Judicial Circuit, State of South Carolina Case No. 2011-CP-07-04548
Negligent Retention, Supervision
Testified in Deposition

State of Florida v. Smithey (criminal defense)
18th Judicial Circuit Court, Seminole County Case No. 10-01851-CFA
Criminal Investigation/Use of Force/Firearm
Testified in deposition

Johnson v. City of Tampa (plaintiff)
13th Judicial Circuit, Hillsborough County Case No. 10-014672
Police Driving/Accident
Testified in Deposition

Brown v. Orange County Sheriff's Office (plaintiff)
U.S. District Court, Middle District of Florida, Orlando Division Case No. 6:12-cv-1299-Orl-37GJK
Use of Force/Negligent Supervision
Testified in Deposition
Testified in Trial

Brown v City of Kingman (plaintiff)
United States District Court of Arizona Case No. 3:13 cv- 08191
Use of Force
Testified in Deposition

Cutino v City of Miramar (defense)
United States District Court, Southern District of Florida
Miami Division, CASE NO: 1:12-CV-22201
Use of Force
Testified in Deposition

Keefe Harden v. City of St. Petersburg (plaintiff)
Circuit Court of Pinellas County; Case No. 12-1686-CI-15
State of Florida
Use of Force/K-9
Testified in Trial

Davis v. City of Warner Robins (plaintiff)
Houston County Case No. 2012-V-45637
State of Georgia
Vehicular pursuit
Testified in Deposition

Devine v. Fusaro (plaintiff)
United States District Court, District of Connecticut
Case No: 3:14-CV-1019(JAM)
Use of Force/Less Lethal
Testified in Deposition

Florida v. Nannini (criminal)
Circuit Court of 16th Judicial Circuit
Monroe County, Florida
Case No.: 2014-CF-00142-A-P
Use of force, Investigative stops
Testified in Trial

Booth v. Daytona Beach (defense)
Union Arbitration Teamsters 385
Daytona Beach, Florida
Use of force, investigative detentions
Testified in Hearing

State of Florida v. Coleman (criminal defense)
Case No.: 2014-CF-7184
Circuit Court of the Ninth Circuit
Orlando, Florida
Use of Force/Firearm
Testified in Deposition

Earl v Indianapolis Metropolitan Police Department (plaintiff)
Marion County Superior Court
Cause No. 49D04-0904-PL-018356
Indianapolis, Indiana
Police Vehicular Pursuit
Testified in Deposition

State of Florida v. Coleman (criminal defense)
Case No.: 2014-CF-7184
Circuit Court of the Ninth Circuit
Orlando, Florida
Use of Force/Firearm
Testified in Hearing

Rhodera Earl v. Indianapolis Metropolitan Police Department (plaintiff)
Marion County Superior Court
Cause No. 49D04-0904-PL-018356
Indianapolis, Indiana
Police Vehicular Pursuit
Testified in Trial

Brown v. Orange County Sheriff's Office (plaintiff)
U.S. District Court, Middle District of Florida, Orlando Division
Case No. 6:12-cv-1299-Orl-37GJK
Use of Force/Negligent Supervision/Investigative Detention/Arrest Techniques
Testified in Trial

Betancourt v. Miami Dade County (plaintiff)
United States District Court, Southern District
Case No.: 1:13-cv-22614-DLG
Miami, Florida
Confidential Informants/Use of Force/Officer Involved Shooting
Testified in Deposition

Robert Leone v. Towanda Borough, et al. (plaintiff)
United States District Court for the Middle District of Pennsylvania
Case No: 3:12-cv-00429-ARC
Wilkes-Barre, Pa.
Use of Force/Taser/Arrest Techniques
Testified in Trial

Davis v. City of Warner Robbins (plaintiff)
State Court of Houston County, State of Georgia
Case No: 2012-V-45637
Warner Robins, Georgia
Emergency Vehicle Operation/Vehicular Pursuit/Foot Pursuit
Testified in Trial

State of Florida v. Miller (criminal defense)
18th Judicial Circuit
Case No: 2012-01992-CFA
Sanford, Florida
Criminal Investigation
Testified in Deposition

Holcomb v. Winkler (plaintiff non police)
Circuit Court of Mercer County, West Virginia
Case No.: 12-C-544-WS
Charleston, West Virginia
Failure to train/Failure to supervise
Testified in Trial

Cohen v. McGuire et al. (plaintiff)
US District Court, Middle District of Florida
Case No: 3:15-cv-133-J-34JRK
Miami, Florida 33176

Police officer hiring practices
Testified in deposition

Ferguson v. Ken Mascara (plaintiff)
19th Judicial Circuit Court
Case No. 56 2014 CA001032 (ON)
St. Lucie County, Florida
Use of Force/Canine
Testified in trial

Kristopher Lee Madson v. City of Gainesville, Florida et al. (plaintiff)
United States District Court
Northern District of Florida
Case No: 1:15-cv-00063-MW-GRJ
Gainesville, Florida
Use of Force/Canine
Testified in deposition

Oberist Lee Saunders v. George Duke et al. (plaintiff)
United States District Court
Middle District of Florida
Case No: 6:10-cv-120-orl-35GJK
Orlando, Florida
Use of force/Narcotics Investigation
Testified in Deposition

Clark (FOP) v. Boca Raton (defense)
City of Boca Raton, Florida Arbitration
Employee Termination/Use of Force/OIS/Vehicular Pursuit
Testified in Arbitration Hearing

Nicasia v. Mickens, et al (plaintiff)
Connecticut Superior Court
New London, Ct.
CV-14-60220885S
Officer Involved Shooting
Testified in Deposition

Crowley v. Town of Enfield (plaintiff)
United States District Court
District of Connecticut
Case No. 3:14CV01903 (MPS)
Use of force/Training/Supervision

Jonathan Santiago v. Thomas Lafferty et al. (plaintiff)
United States District Court

---

District of Massachusetts
Case No: 13-cv-12172-IT
Confidential Informants
Testified in deposition

Catherine Daniels v. City of Miami Gardens et al. (plaintiff)
United States District Court
Southern District of Florida
Case No.: 1:15-CV-21068-JLK
Officer Involved Shooting
Testified in deposition

Christopher Demski v. Town of Enfield (plaintiff)
United States District Court
District of Connecticut
Case No.: 3:14cv01568 (JAM)
Use of Force/Taser/K-9
Testified in deposition

Stanford v. Union County Sheriff's Office (defense)
Sixteenth Judicial Circuit
Union County, South Carolina
Case No.: 2013-CP-44-227
Vehicular Pursuits
Testified in deposition

Lowrie v. General Motors et al. (plaintiff non police)
Twenty Second Judicial Circuit
St. Louis, Mo.
Case No.: 1422-CC08909
Traffic control/Management
Testified in deposition

Standard v. Conner  (plaintiff non police)
Fifth Judicial Circuit Court
Citrus County, Florida
Case No.: 2013-CA-000071 A
Criminal investigation
Testified in deposition

Robinson v. Easterwood (plaintiff)
United States District Court
Northern District of Alabama
Case No.: 2:14-cv-01886 MHH
Officer Involved Shooting
Testified in deposition

Moody v. Stop Stick et.al (plaintiff)
Jackson County Circuit Court, Kansas City Mo.
Case No.: 1316-CV03362
Stop Sticks/Vehicular Pursuit
Testified in trial

Jose Diaz v. City of Orlando (plaintiff)
Ninth Judicial Circuit, Orlando, Fl.
Case No.: 2011-CA-014041-0
Use of force
Testified in deposition

Darnell v. Alejandro Rivera et al. (plaintiff)
United States District Court
Middle District of Florida, Orlando Division
Case No.: 6:15-cv-00999-RBD-TBS
Criminal Investigations/False Arrest
Testified in deposition

Perez v. Collier County (plaintiff)
United States District Court
Middle District of Florida
Case No.: 2:15-cv-238-FTM-CM
Use of force/Taser/Flashlight
Testified in deposition

Doel Santiago v. City of New Haven (plaintiff)
Superior Court at New Haven, Ct.
Case No.: NNH-CV-13-6037147-S
Use of Force
Testified in deposition

Parnoff v. Aquarion Company et Al. (plaintiff)
Superior Court, Bridgeport, Ct.
Case No.: CV14-6045191-S
Criminal Investigations/Arrest Procedures
Testified in deposition
Secic v. City of St. Louis (plaintiff)
Missouri Circuit Court
Twenty Second Judicial Circuit (St. Louis City)
Case No: 1522-cc-00228
Vehicular Pursuit
Testified in Trial

Lowrie v. General Motors et al. (plaintiff)

Missouri Circuit Court
Twenty Second Judicial Circuit, St. Louis, Mo.
Case No: 1422-CC08909
Traffic management/control

Michael Ray West v. Bartow County, Georgia et al. (plaintiff)
United States District Court
Northern District of Georgia
Case No: 15-CV-00168
Use of Force (Taser)
Testified in deposition

Myers v. City of Haleyville et al (plaintiff)
Circuit Court of Marion County, Alabama
Case No.: 49-CV-2015-9000152
Emergency vehicle operation
Testified in deposition

James v City of Chicago (plaintiff)
United States District Court
Northern District of Illinois
Eastern Division
Case No.:14 CV 7955
Use of Force
Testified in deposition

David Potter v. City of Dothan (plaintiff)
United States District Court
Northern District of Alabama, Southern Division
Case No.: CV-1:16CV-749-CSC
Use of Force
Testified in deposition

Andrew Aragon v. City of Espanola et Al. (plaintiff)
First Judicial District, Rio Arriba, New Mexico
Case No.: D-117-CV-2016-00147
Use of Force (Taser)
Testified in deposition

Myers v. City of Haleyville et al (plaintiff)
Circuit Court of Marion County, Alabama
Case No.: 49-CV-2015-9000152
Emergency vehicle operation
Testified in trial

---

Julian Ray Betton v. Bill Knowles et al (plaintiff)
Case No. : 4:15-cv-04638-RBH-KDW
United States District Court
District of South Carolina
Florence Division
Officer Involved Shooting/Search Warrant Execution
Testified in deposition

McGowan v. County of Kern (plaintiff)
Case No.: 1:15-CV-01365-DAD-SKO
United States District Court
Eastern District of California
Emergency driving
Testified in deposition

Nelson v. Brevard County Sheriff's Office (plaintiff)
Case No: 05-2013-CA-038400
Eighteenth Judicial Circuit, Brevard County
Narcotics investigation/Search Warrants
Testified in deposition

Chelsey Marie Browder V. Greenville County Sheriff's Office, et al.  (defense)
Case No: 6:16-cv-02493-HMH-JDA
United States District Court
District of South Carolina
Officer Involved Shooting/Failure to supervise/train
Testified in deposition

Byron Jordan v. Iverson Mall (plaintiff)
Case No.: 8:14-cv-00037-RWT
United States District Court
District of Maryland
Use of force/Taser
Testified in Trial

Childress v. North Charleston Police Department (plaintiff)
Case No.: 2017-CP10-1119
State of South Carolina
County of Charleston
Temporary detention/use of force
Testified in deposition

**Publications:**

Dig Deeper To Address Officer Involved Shootings: Orlando Sentinel, 5/26/13
Police Leaders Must Walk the Walk, Pursuit Driving: Orlando Sentinel, 2/19/12

Save Community Policing: Orlando Sentinel, 5/25/11
State Cracks Down On Unlicensed Activity, Orlando Sentinel, 3/18/09
The Threat Abatement Group, Police and Security News, 11/95

**Compensation**:

My fees for this case are $225.00 per hour to review and analyze relevant material and $325.00 per hour to testify in depositions or trial.

Submitted by:

**Charles W. Drago**

**Charles (Chuck) Drago**
**Police Practices Consulting & Litigation Support**

*Drago Professional Consultants LLC*
*P.O. Box 623511*
*Oviedo, Florida 32762-3511 407-473-8033*
*www.dragoconsultants.com*

Chuck Drago is a highly decorated, career law enforcement officer who advanced through the ranks of the police department with an exemplary record. Recognized for integrity and leadership, he was appointed as assistant police chief, police chief, Deputy Chief of Staff and senior law enforcement advisor to the Governor of Florida.

As a senior leader of major law enforcement agencies and a member of the department's review boards; he has investigated hundreds of police misconduct allegations in all areas including officer involved shootings, use of force/Taser/pepper spray/firearms, k-9, police pursuits, and traffic stops. He has broad-based experience in high liability areas including the management and development of polices and procedures in those areas. He developed a county-wide policy for the use of Tasers as well as a management accountability system for Taser Use.

He has developed a wide range of experience in police vehicular pursuits as a police officer, supervisor and senior manager. As such, he has developed police pursuit policies and management pursuit review procedures. As a member of a county wide policy committee, he co-authored a pursuit model policy for the entire county. He has firsthand experience with police pursuits as a police officer, a supervisor managing police pursuits and as an administrator responsible for evaluating police pursuits. In addition, he has received extensive training in vehicular pursuits, stop sticks and emergency driving.

As a police supervisor, he managed canine police units which involved every type of dog utilized by local police agencies including apprehension, tracking, bomb and narcotics. In doing so, he was responsible for ensuring that the canine officers followed department policies and procedures for the training and use of the trained canines. In addition, as Assistant Chief and as Chief of Police, he reviewed all canine bites for the police department to ensure that they complied with the law as well as department use of force policies. He participated in canine trainings and participated in and approved of the selection and purchasing of canines for the police department.

During his career, he has attained a significant amount of experience in police officer involved shootings as a police officer in the field as well as a line supervisor and detective supervisor who investigated police officer involved shootings. As a police executive, he has also developed use of force policies and evaluated trends and individual cases.

In addition, he has consulted on numerous officer involved shooting cases and provided guidance on police tactics, procedures and methods of investigation before, during and

after officer involved shootings. As a consultant, he has been called upon to provide direction as to the effects on an officer after he has been involved in a shooting. His opinions have been sought by the media, government and law firms in high profile officer involved shootings all over the country.  Government agencies have utilized his expertise in matters such as police policies; use of force, biased based policing, employee misconduct, vehicular pursuits and training.

As an investigator, he served many years in drug and vice units and personally handled numerous confidential informants. In addition, I served as the supervisor of a drug unit and supervised detectives in their use of countless informants. In both of these functions, he vetted informants, signed up informants, managed informants, terminated informants, and investigated numerous criminal cases with the assistance of informants

An experienced frontline law enforcement officer who was directly or indirectly involved in thousands of arrests, his experience includes service in various capacities with direct hands on involvement and /or supervision in areas such as patrol, narcotics, vice, SWAT, k-9, street crimes, criminal investigations, training and homicide.

As a Florida Certified Police Instructor, he has trained thousands of police officers from all over the country in use of force, tactics and force techniques in undercover operations, search warrant techniques, stalking, narcotics investigation, patrol procedures, workplace violence, community policing and criminal investigation.

As the sole narcotics instructor for the Broward County Police Academy, he taught narcotics investigations and managing confidential informants to recruits as well as to seasoned police officers.

He has been a guest lecturer at colleges and universities on strategies for reducing officer involved shootings, biased based policing, the role of a police chief, community policing, use of force, ethics and current trends in policing.

Over 30 years experience of frontline law enforcement has provided expertise in the following:

| | |
|---|---|
| Police Practices and Training | Police Organization and Management |
| Use of Force | Taser/Less Lethal Weapons |
| Vehicle Pursuits | Officer Involved Shootings |
| Narcotics Investigations | Criminal Investigations |

## PROFESSIONAL EXPERIENCE

### Drago Professional Consultants, LLC: 2011-Present
Following a successful career as law enforcement professional, now a police practices consultant for attorneys, government agencies and the media.  He provides police practices consulting and expert witness testimony for both plaintiff and defense attorneys. He has served as an expert witness in State and Federal Courts in matters involving use of

force, k-9, use of Taser, vehicular pursuit, domestic violence, officer involved shootings, criminal investigations, narcotics investigations, racially biased policing, confidential informants, investigative detentions, training, supervision, internal affairs, security, police hiring procedures and police policies.

**Certified Reserve Deputy Sheriff with Broward County Sheriff's Office: October 2013-October 2015**

**Certified Reserve Police Officer with Florida Department of Law Enforcement, Capitol Police: January 2011-October 2012**

**State of Florida: January 2007 - January 2011**
Deputy Chief of Staff to Governor Charlie Crist: November 2009 - January 2011
Member of Governor Crist's senior executive management team with responsibility for over 100,000 employees and a $70 billion budget. Senior advisor to the Governor on law enforcement and business regulation with direct oversight responsibilities for all of the primary statewide law enforcement agencies.

**Florida Department of Business and Professional Regulation: Jan 2007 - Nov 2009**
Secretary/CEO: February 2008 - November 2009
Deputy Secretary: January 2007 - February 2008
The Secretary is a constitutional officer appointed by the Governor and confirmed by the Florida Senate. This statewide agency is the primary business regulatory agency charged with licensing and regulating approximately one million Floridians. The agency consists of 2000 employees including 200 law enforcement agents and a budget of 150 million dollars.

**Oviedo Police Department: March 2004 - January 2007**
*Chief of Police*
Oviedo is a fast-growing mid-size city located within the Orlando Metropolitan Area. During this period, crime was reduced to its lowest levels in at least 10 years in spite of a rise in crime in the metro area. Changes were initiated in polices and procedures that resulted in dramatic reductions in vehicle pursuits and taser deployments. As the Chief of Police, he held sole responsibility for the review/investigation of all use of force, police pursuits and other allegations of misconduct. Chuck was a founding member of a county wide policy committee which developed model policies for taser procedures and police pursuits. Chuck's familiarity with policies and procedures helped guide the agency through the rigorous reaccredidation process with the Commission on Law Enforcement Accreditation.

**Fort Lauderdale Police Department: 1975-2004**
Resort city of nearly 200,000 full time residents which is located in the Miami-Ft. Lauderdale Metropolitan area which has a population of nearly 6 million. Chuck advanced through the ranks and served as a police officer, field training officer, detective, sergeant, detective sergeant, captain, major, and assistant chief with 18 of those years as a

commanding officer. His career includes significant experience in crime prevention and security analysis for government and businesses as well as the investigation of police officer involved shootings. Chief Drago also participated in, planned and/or supervised dozens of SWAT situations and over 900 search warrant executions.

### *Assistant Chief of Police: 2001-2004*
Oversight for the efficient delivery of primary police services throughout the City on 24-hour, 7-day basis. Directly assisted and relieved the Chief of Police in planning, directing, and coordinating the administration, operation and service functions of the department. Responsible for findings and final recommendations of discipline on all allegations of misconduct. Security responsibilities for major events in the city including spring break, air and sea show, Superbowl activities and others. Instituted the COMP Stat process and instituted hundreds of crime prevention techniques. Developed an original proactive program for reducing citizen complaints, created new pepper spray policy and new review process for k-9 apprehensions. In addition, he served on the hiring committee and participated in the hiring of all Ft. Lauderdale police officers.

### *Police Major: 1998-2001*
Oversight for the 24-hour/7-day week delivery of police services in a Patrol District comprising approximately 70,000 residents. Also served as the Commander of the department's Community Support Division, which coordinated all community policing activity. Command responsibility for patrol, k-9, crime prevention, community policing, traffic, mounted, school resource officers and marine patrol. Personally directed the oversight team for the Florida Attorney General's Convenience Store Security Act.

### *Police Captain: 1993-1998*
1995-1998: Commander of a Patrol Shift and the Field Training Officers Program.
1993-1995: Direct oversight and responsibility for the Criminal Investigations Division, which contained 10 investigative units.

### *Police Sergeant: 1987-1993*
Supervised a patrol shift, countywide drug enforcement unit, the homicide unit, technical Investigations and street narcotics unit.

### **Detective/undercover : Vice/Metropolitan Organized Crime Unit: 1982-1987.**
Agencies lead Detective in organized Crime investigation of large Philadelphia Crime family resulting in conviction of the head of the family.

### *Police Officer: 1975-1987*
Served the City of Fort Lauderdale as a certified Police Officer and tactical/SWAT officer. Member of highly trained street crimes felony unit.

Field Training Officer: Selected and trained to train new police officers after completion of basic academy.

### **SELECT ACCOMPLISHMENTS**

1989: Co-founded the countywide Operation CRADLE Anti-Drug Street Crime Program
1990: Developed and managed two successful crime reduction studies
1995: Created the Threat Abatement Group (Stalking Prevention and Investigation)
1996: Developed the FLPD Field Training Officers Program
1997: Co-authored the City of Fort Lauderdale Workplace Violence Policy
2001: Co-authored new pepper spray policy
2005: Co-founded Countywide Model Policy Taser Task Force
2006: Co-founded Countywide Model Policy Police Pursuit Task Force
2008: Appointed to Florida Legislative Narcotics Paraphernalia Statewide Task Force
Managed three re-accreditation of three law enforcement agencies

**MAJOR AWARDS**
Fort Lauderdale Police Department Officer of the Year: 1989
State of Florida Fraternal Order of Police Officer of the Year Nominee: 1989
40 Departmental and Public Commendations

**EDUCATION**
**Bachelor of Arts Degree, Administration of Justice: 1979**
St. Thomas University, Miami, Florida
**Associates Degree, Criminal Justice: 1975**
State University of New York, Farmingdale, New York
**Command Officers Development Course (400 hours) Graduated 1995**
Southern Police Institute, University of Louisville, Kentucky
**Florida Police Officer Certification: Graduated 1975**
*Broward County Institute of Criminal Justice*

**FORMER CERTIFIED POLICE INSTRUCTOR/TRAINER– FDLE/Florida Commission on Standards and Training**
**Trained thousands of Police Officers and civilians in the following areas:**
Keynote Speaker; Human Security Conference (Officer Involved Shootings) presented
by: California University of Pennsylvania and NAACP.
Speaker/Panelist; Dr. King Forum; Police Shootings/Orlando, Florida
Recurring Guest Instructor for Criminal Justice Degree Program in Police Practices and
Procedures at Valencia College on Managing Use of Force, Police Discretion, Ethics,
hiring police officers and The Role of a Police Chief
Guest Instructor at Seminole State College for State and Local Government
Sole Narcotics Instructor for Broward County Police Academy and Corrections Academy
Stalking Investigations
Domestic Violence
Workplace Violence
Narcotic Investigations and Drug Identification
Search Warrants
High Risk Entries
Patrol Response to Street Narcotics
Use of Force
Street Narcotics Enforcement Instructor for the Key West Police Department

Field Training Officer
Commander of the Field Training Officer Program
Avoiding Police Vehicular Pursuits

**PROFESSIONAL AFFILIATIONS**
International Association of Chiefs of Police, Member
National Alliance on Mental Illness (NAMI)
National Tactical Officers Association
Florida Police Chiefs Association (Past Member)
Excel Recruiting Inc. Advisory Board
Fraternal Order of Police, Member, Past Board Member
Ft. Lauderdale Retirees Association
Broward County Police Chiefs Association (Past Member)
Seminole County Police Chiefs Association (Past Member)
Women in Distress (Past Board Member)

**INTERNATIONALLY RECOGNIZED POLICE PRACTICES EXPERT/RECENT MEDIA INTERVIEWS**
07/20/17: WFTV Interview regarding procedures during homicide investigation
02/10/17: WFTV interview regarding probable cause training needed for narcotics arrests
09/28/16: WFTV interview re: training needed to reduce officer involved shootings
09/28/16: AP interview regarding an officer involved shooting in California
08/17/16: Sun Sentinel interview regarding police procedures for vehicular pursuits
08/11/16: Business Insider interview requesting opinions on DOJ report on Baltimore
08/10/16: AP interview regarding officer involved shooting in Los Angeles
07/21/16: AP interview regarding officer involved shooting in North Miami
07/07/16: Business Insider interview regarding Minnesota officer involved shooting
07/06/16: WWL live radio interview regarding officer involved shooting in Baton Rouge
06/15/16: WFTV interview regarding investigative practices in Orlando mass shooting
05/13/16: WESH TV on camera interview regarding vehicular pursuit
04/27/16: WFTV on camera interview regarding active shooter procedures at college
03/01:16: WNCN/Raleigh N.C. on air interview regarding use of force investigations
12/04/15: AP interview on considerations for police in active shooting situation
12/02/15: Business Insider interview regarding the evolution of the Taser
11/17/15: NBC/WPTV on air interview regarding police supervision
11/12/15: International Business Times interview regarding Taser death in Virginia
11/12/15: Sun Sentinel interview regarding an officer involved shooting in Florida
10/29/15: NBC/WPTV Palm Beach on air interview regarding plainclothes policies
10/21/15: Yahoo News interview pertaining to a shooting by a plainclothes officer
08/21/15: Associated Press interview regarding suspects shot in the back
06/22/15: WFTV on air interview regarding handcuffing prisoners
04/08/15: Washington Post interview regarding use of deadly force in South Carolina
04/08/15: AP interview regarding police officer shooting in South Carolina
03/30/15: WFTV on air interview regarding procedures for investigating excessive force
02/24/15: WFTV on air interview regarding Orlando officer's use of force

12/04/14: Guest on MSNBC Ed Show regarding N.Y. Police Officer /choke hold

**PROFESSIONAL COURSES/SEMINARS ATTENDED**

Police Use of Force in Today's World, Miami-Dade Police Department: 6/25-6/26/2017: First Amendment Rights vs. Officer Safety;  Science Behind Positional Asphyxia Death; Excited Delirium and Arrest Related Death; Prone Positional Deaths, Designer Drugs, Policies and Procedures; Wheelchair Users; Basics of CEWs and Investigating Arrest Related Deaths; Safer Restraint Considerations of Agitated Subjects; CEWs and Cardiac Arrest; Body Worn Camera Issues, Following TASER Science, Medical Examiner Significant Errors.

One Breath: The Importance of Recognizing Agonal & Other Breathing Problems IPICD 12/28/16

Constitutional Considerations, FDLE 7/10/16

Firearms Training/qualification, Oviedo Fl. Police Department 5/4/16

Legal and Practical Issues of Handling Informants 9/8/15

National Alliance on Mental Illness (NAMI) Mental Illness Training 3/15-5/15

FDLE Physiological Response Dynamics Training: 2/24/15

Use and Control of Informants, FDLE: 02/06/15

Project Safe Neighborhoods Characteristics of Armed Persons, IACP/DOJ: 10/25/14

Use of Force/Less Lethal Weapons/Taser, Broward County Sheriff's Office:11/5/13

Firearms training/qualification, Broward County Sheriff's Office: 11/5/13

Domestic Violence, Florida Department of Law Enforcement: 8/14/13

Juvenile Sexual Offenders, FDLE: 8/14/13

Discriminatory Profiling and Professional Traffic Stops, FDLE: 8/14/13

Police Liability/Use of Force, Lorman Education Services: 7/17/13

Firearms Qualification, Oviedo Police Department: 6/13

Management, Oversight, and Monitoring Use of Force (AELE): 4/2 & 4/4/13

Electronic Control Weapons Tactics and Training (AELE): 4/3/13

Post-Incident Electronic Control Weapon Forensic Analysis

Office of Attorney General/Florida Crime Prevention Training Institute: Crime Prevention Commercial Applications: 12/12/11-12/16/11

SEAK National Expert Witness Conference: 4/15, 16/11

FDLE Elder Abuse: 1/29/11

FDLE Ethics Training: 6/2/09

FDLE Ethics Training Module 2, 3, 4: 6/3/09

FDLE Domestic Violence: 5/20/09

FDLE Juvenile Sexual Offenders: 5/26/09

FDLE Discriminatory Profiling and Professional Traffic Stops: 5/26/09

Scenario Based Use of Force: 6/10/09

Firearms Qualification: 6/10/09

FPCA Law Enforcement Bill of Rights: 1/8/06

Public Safety Technology: 1/8/06

Legislative Process: 1/8/06

Change Management: 3/8/06

Oviedo Disaster Preparedness: 7/06

Oviedo Use of Force: 7/06

FPCA Understanding Islamist Militant Terrorism: 6/29/06
FSA In-Custody Sudden Death: 6/1/06
Oviedo Executive Training: 2005
Oviedo Firearms Training and Qualifications: 8/05
Oviedo Use of Force/Taser Training: 8/05
Executive Look at Coaching and Managing Discipline and Discharge: 9/14/05
Oviedo Executive Training, Policies, Taser, Police Pursuits: 2005
Oviedo EOC Training: 6/05
FPCA Preparing for Media Relations, Public Safety Technology: 2/9/05
Executive summary of "The 7 Habits for Highly Effective Law Enforcement": 3/16/05
Search Warrant Legal Updates: 4/04
ICMA Scenario Planning: 3/23/04
Oviedo Use of Force/policy/Taser Training: 3/04
Oviedo Blood borne Pathogens: 5/04
Oviedo Diversity Training: 6/04
Oviedo Firearms Training and Qualifications: 3/04
Oviedo Firearms Training and Qualifications: 11/04
FPCA Risk Management Leadership, Fatal Police Shootings, In Harm's Way: 6/26/05
Assistant Emergency Management Director Training: 6/10/05
Oviedo Supervisor Diversity Training: 6/04
FPCA "What Do They Say When They See You Coming": 6/27/04
SCC Personal Protection Equipment Fit Training: 10/20/04
Professional traffic stops, domestic violence, juvenile sex offenses: 12/03
FDLE FCIC Certification: 4/29/02
DOJ WMD Incident Management/Unified Command: 12/02
FDLE Incident Command Center: 11/01
FLPD Professional Traffic Stops: 10/01
National Emergency Response and Rescue Training Domestic Preparedness Program: 12/14/01
Florida Regional Community Policing Institute, Introduction to Community Policing: 8/2000
FLPD Human Diversity: 11/99
St. Petersburg College, The Managerial Buy-In: Strategic Analysis of Police Strategies: 3/99
FLPD Domestic Violence: 7/98
FLPD Juvenile Sexual Offender Investigations: 7/98
FLPD Emergency Vehicle Operations: 4/98
Mental Health Association Domestic Violence: 10/97
FLPD Gender Bias in the Workplace: 9/97
Mental Health Assoc. of Broward, Domestic Violence, Breaking the Cycle: 10/96
IPTM Administration and Management of the Field Training Officer Program: 3/96
University Of Louisville, Southern Police Institute: 1995
Governor Chiles' Task force on Domestic Violence, "The Epidemic of a Crime, Acting to End Domestic Violence": 10/95
Women in Distress, Domestic Violence and Substance Abuse Training: 9/95
Association of Threat Management Professionals, Threat Management Conference: 8/95

Charles Drago CV                    8                    October 24, 2017

Broward Community College, Human Diversity Concepts: 2/95
Miami-Dade Community College, Investigating Unusual Deaths: 12/94
State Attorney, 17th circuit, Domestic Violence
Women in Distress, Enforcement of Injunctions and Stalking Investigations: 6/94
Specialized Training Services, The Psychopathic Personality: 2/94
Specialized Training Services, Assessment of Violence Potential: 2/94
BSO, The Law and Electronic Surveillance: 2/93
Broward Community College, Developing and Maintaining a Sound Organization: 12/93
Women in Distress, The National Domestic Violence Awareness Workshop: 10/93
National Intelligence Academy, Advanced Surveillance Operations: 3/93
M3 Media, Technology for the 90s: 3/93
SAGE Less than Lethal Training: 1993
Train the Trainer Program: 3/92
FDLE Professional Law Enforcement Trainer's Course: 6/92
The Rights of Police Officers: 11/92
ATF Undercover Investigative Techniques: 2/91
National Emergency Response & Rescue Training Center, Domestic Preparedness: 12/91
F.B.I. Hostage Rescue Team: Hostage and Entry Team training: 1991
FLPD Skills Refresher: 11/91
The Metropolitan Police Institute, Spontaneous Knife Defense: 11/91
DEA Cannabis Detection and Eradication: 4/91
FDLE Cannabis Indoor Grow Investigations: 4/91
Broward Community College "Chasing the Dragon": 4/91
Career Track "Leadership of Attila the Hun": 11/90
Broward Community College, Effective Presentation for Instructors: 8/90
Keyes' Supervising under Pressure: 8/90
FLPD Room Entry Techniques/Noise /flash diversionary device: 5/90
Broward Community College Instructor Techniques: 1/90
FLPD Handgun Retention: 12/89
Broward Community College Designer Drugs: 1/89
Broward Sheriff's Office Vice Narcotics Intelligence Commander: 10/89
FDLE, Vice, Intelligence, Narcotics Commander: 10/89
FDLE Auto Pistol: 10/89
BSO, Crack Enforcement Training: 9/89
GML Seminars Auto Pistol 2: 8/89
Broward Community College, Assessment Center Training: 6/89
Broward Community College, Auto Pistol: 4/89
Broward Community College Computer Applications in Criminal Justice: 11/88
Broward Community College Crack Cocaine: 10/88
FLPD Tough Communications for Tough Situations: 11/88
Broward Community College Models for Management: 5/88
FLPD Control and Constraint: 2/88
Broward Child Abuse Committee Multidisciplinary Training Program: 11/87
The Police Supervisory Seminar: 8/87
FLPD Interpersonal Communications I: 7/87
International Conference on Canadian Racketeering: 08/85

FBI Gambling Technology: 3/84
IRS Financial Investigative Techniques 9/83
Broward Community College Organized Crime for Law Enforcement Officers: 6/83
Broward Community College Officer Stress Awareness: 11/81
FLPD SWAT Training: 1981
Homicide Investigation: 9/81
National Intelligence Academy Technical Surveillance I: 10/79
Police Driving Seminar: 05/79
DEA Narcotics and Dangerous Drugs Law Enforcement: 01/79
FLPD Automatic Tactical Rifle Training: 1979
Broward County Police Academy, Police Officer Certification: 1975

**PUBLISHED AUTHOR**
Dig Deeper To Address Officer Involved Shootings: Orlando Sentinel, 5/26/13
Police Leaders Must Walk The Walk, Pursuit Driving: Orlando Sentinel, 2/19/12
Save Community Policing: Orlando Sentinel, 5/25/11
State cracks down on unlicensed activity, Orlando Sentinel, 3/18/09
The Threat Abatement Group, Police and Security News, 11/95

**SUBJECT OF ARTICLES AND BOOKS**
Crime Beat by Michael Connelly, Nick Scarfo Case
Chief Communicator, Community Policing, Seminole Chronicle, 4/04
Cops Where You Shop, Community Policing, Seminole Chronicle, 2005
New Oviedo Police Chief, Orlando Sentinel, 3/14/04
Little Nicky's Big Gamble, Sun Sentinel Sunshine Magazine, 8/19/90
Arrest of Nick Scarfo, Philadelphia mob boss
New Police Unit to stop domestic violence early, Sun Sentinel, "Tag Team" for stalking
Lauderdale cops to follow stalkers in effort to block domestic violence, Miami Herald,
7/15/95, Tag Team for stalking
DBPR is cutting its own red tape, Tallahassee Democrat, 12/22/08, "Accelerate Florida"
COPS Center opens in Oviedo Marketplace, Oviedo Voice
The Mind of a Stalker, Miami Herald, 7/4/93
Police aim to cut drug sales near schools, Sun Sentinel, Project CRADLE
Stalking, Terrorism Comes Home, Boca Raton Magazine, 3/9/94

# DRAGO PROFESSIONAL CONSULTANTS LLC
### *POLICE PRACTICES CONSULTING AND LITIGATION SUPPORT*
**(407) 473-8033**
**chuck@dragoconsultants.com**
### Professional Services Fee Agreement

Detailed below is our current fee schedule. We have invested careful thought and consideration in preparing this based on our operational experience. Our foremost priority is to continue to provide timely, high quality professional services.

1. A non-refundable retainer fee of $2,500.00 is required prior to the commencement of professional services on any case. Should actual time spent in this matter exceed the amount of the retainer at the normal hourly rate, the client agrees to pay all charges in excess of said retainer at the normal hourly rate. Billing for services performed or expense incurred will be charged against the retainer until such time as it is exhausted. Fees are billed to the client in fifteen minute increments with a minimum charge of fifteen minutes.

2. Consulting time, including but not limited to, case reviews, report reviews, deposition reviews, analysis of criminal investigations, research, interviews, consultation time, meetings, site inspections, deposition preparation, deposition support, trial preparation, interpretation of police documents, interpretation of investigative files, report preparation, preparation for negotiation or any miscellaneous tasks as assigned by the client attorney or opposing attorney (client approved) shall be billed at **$225.00 per hour**. Billing will be in fifteen minute increments plus expenses. Any time related to the case which is beyond the scope of an initial free consultation will be considered billable time. Reasonable estimates of time to be spent working on any aspect of the case may be provided upon request.

3. Fees for deposition testimony, trial testimony and any other legal testimony held in the State of Florida are **$325.00 per hour with a four hour minimum fee of $1,300** plus travel time and travel expenses.

4. Fees for deposition testimony, trial testimony and any other legal testimony outside the State of Florida are **$2,500.00 per day** (or part of a day), plus travel expenses. (Travel time is included in fee)

5. Fees for depositions shall be paid prior to the start of the deposition. Balances due if any, shall be paid within ten days of the deposition. If the opposing attorney is designated to pay deposition costs, it is the responsibility of the retaining attorney to obtain the anticipated fee prior to the deposition. If retaining counsel fails to obtain the fee prior to the deposition, retaining counsel will be responsible for the bill.

6. Travel Time will be billed for all site inspections or meetings outside of Orange County and Seminole County, Florida.

7. Travel and actual expenses reasonably and necessarily incurred (meals, lodging, ground transportation, rental car, etc.) will be billed to the client at cost and copies of expenses will be provided when available. Drago Professional Consultants may request a travel retainer of $1,000.00 specific to this travel prior to the travel date. Actual out of pocket expenses will be charged against the travel retainer until such time as it is exhausted. Any balance remaining will be applied to professional services outstanding balances.

8. All Travel Time is billed at $100.00 per hour.

9. Balances for services performed will be billed monthly. Payment of each bill is expected upon receipt. Past due invoices shall be charged interest at the rate of 1.5% per month (annual rate of 18%). Prior to any testimony or written reports, all outstanding balances must be paid in full. Drago Professional Services will be entitled to collect all expenses, including attorney fees, collection agency fees and filing fees to collect unpaid invoices 90 days past due.

10. Where a deposition or mediation, arbitration, or court appearance is cancelled with less than 72 hours notice, 50% of the time scheduled or anticipated shall be billable, plus any time spent preparing.

11. All payments should be made to Drago Professional Consultants and mailed to the above address. Payment in a timely manner is the sole responsibility of the retaining attorney irrespective of case disposition. Due to cost of business increases, hourly rates may increase periodically. A sixty day notice will be given before any increase goes into effect.

12. After a case is disposed of fees are not available for retrospective negotiation and can not be linked in any way to the outcome of the case. Any contingency fees are unacceptable and unethical.

13. Drago Professional Consultants reserves the right to suspend all services and refuse delivery of further services or reports until the outstanding balances over 30 days past due are paid in full.

14. If the client violates the terms of this contract, the client is responsible for all legal fees and court costs associated with resolution of the dispute. The terms of this fee agreement are meant to be clear and understandable. However, should any disagreements between Drago Professional Consultants and the client occur, this agreement is understood to be interpreted using Florida law. Jurisdiction and Venue is in Seminole County, Florida. All disputes that arise between the client

and Drago Professional Consultants or any third parties as a result of this agreement will be settled through Florida law.

15. I acknowledge that I have read the above contract and terms of payment to Drago Professional Consultants for all services related to expert consultation. I agree that all of the above fees and terms are acceptable. I acknowledge that as the hiring attorney, I am the client. I understand that my firm is responsible for the payments of all fees as described above. By signing this agreement and enclosing the retainer fee of $2,500.00, I have engaged the services of Drago Professional Consultants for the case noted below.

This agreement may be terminated by either party by written notice and such termination shall relieve each party of any assumed or implied obligations other than payment of any balance due.

_____          _____
Drago Professional Consultants                    Date

_____          _____
Attorney Signature                                        Date

_____
Law Firm

_____          _____
Case name                                              case number