# EXHIBIT 39

# Independent Assessment of Hollywood, Florida Police Department Internal Affairs



Charles A. Gruber Consulting, Inc.
6N302 Ferson Woods Drive
St. Charles, IL 60175
cag@CAGconsulting.com

December 9, 2013

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01390**

*Executive Summary Report*

Charles A. Gruber Consulting Inc. was contracted by the City of Hollywood for the purpose of conducting an external, independent audit of the Internal Affairs (IA) Unit of the Hollywood Police Department (HPD). Audits by incoming managers are normal and responsible practices aligned with best practices of modern policing. Audits are conducted to determine if policies are followed, internal controls are adequate, detect possible manipulations of records, and confirm that laws are followed. An independent audit can further provide suggestions to improve practices and procedures to obtain increased efficiency and effectiveness.

HPD utilizes IAPro as their electronic Internal Affairs records management system, which includes Internal Affair Investigations, Administrative Reviews, Use of Force Reports, Unsatisfactory Behavior Reports, Discharge of Firearms, and Employee Vehicular Accidents. The external audit was predicated by the discovery that many cases were not tracked or closed consistent with HPD Internal Affairs practices. We reported this finding to Chief Fernandez, specifically that eighty one (81) names from sixty nine (69) cases were purged from IAPro files, for which there is an investigation by the Broward State Attorney's Office (BSAO). The purging incidents surfaced after newly appointed Chief of Police Frank G. Fernandez requested these internal audits of areas identified within the department. Chief Fernandez had several concerns he asked us to review:

1. Identifying the purged member names from the IAPro system.
2. Determining if IAPro files reflected the hard copy reports.
3. Identifying persons who might have information regarding purged records if the names could not be found by other means.
4. Restoring purged files in IAPro.
5. Identifying anyone who may have received corrupt data reports, notifying them of the error, and providing a new report when the system is whole.
6. Cross-checking IA files with personnel records to ensure disciplinary actions were filed appropriately.
7. Determining if current policy is consistent with Florida State Statutes, Florida Records Law and best policing practices.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01391**

Audit Process

The on-site audit team consisted of two primary auditors, George Hedges and Bobby Navarro, who conducted interviews, reviewed files, made observations, and used unobtrusive measures and research to assess the Internal Affairs operations of HPD. Oversight of the audit was conducted by Bob Stewart and Chuck Gruber. These goals were accomplished through site visits during the auditing process. Interviews were conducted with members of the IA Unit and citizens. Observations were conducted throughout the entire process of the audit and unobtrusive measures were used in gathering data, forms, documents and computer-generated information. The audit team reviewed more than one hundred fifty (150) cases during the process. Audit team members conducted research off site. Our assessment team has reviewed all relevant HPD Internal Affairs related policies and procedures. We have also conducted at-length interviews with selected HPD Command staff as well as current members and past members of the Internal Affairs Division. We have made multiple visits to HPD in 2013 for this report.  HPD management was kept informed throughout the process and site visits were coordinated and planned to minimize distractions. Personnel assigned to Internal Affairs were helpful and accommodated the auditors.

Professional Compliance

An open, fair, impartial and transparent process for receiving and investigating citizen complaints serves several important purposes. An appropriate citizen complaint process ensures officer accountability, supervision, command oversight, and deters potential future misconduct. Further, it assists in maintaining good community relations by increasing public confidence in, and respect for, the HPD.  Improving what we found in the current processes and procedures for handling citizen complaints is essential for insuring credibility of HPD and for citizens to trust their police.

The Hollywood Police Internal Affairs process does not conform to National Policing Standards in terms of Professional Compliance. The initial complaint intake, assignment of cases, oversight, investigation, case resolution and classification, and utilization of technology are deficient and will result in mistrust between the City of Hollywood and its citizens and falls well short of what citizens expect. Citizens want a fair, reasonable, transparent accountability by the police department of their complaints. It is essential and paramount that HPD have a solid professional compliance process in

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01392**

order to effectively manage their agency, provide constitutional policing, and convey trust between the citizens and HPD. Our findings reveal HPD failing to meet even the most essential elements of the generally accepted police practices in internal affairs operations.

Our review was conducted over the Internal Affairs Investigations and Administrative Reviews for the time period 2003-2012. The information provided by Internal Affairs listed data capture for the years between 2003 to 2007 and 2008 to 2012. Listed below is a chart graphing the data.



|  | 2003 - 2007 | 2008 - 2012 |
|---|---|---|
| Internal Investigations (IA) | 138 | 27 |
| Administrative Reviews (AR) | 95 | 25 |
| *Total* | 233 | 52 |

Our concern with this data is that there is a wide discrepancy between the 5 year blocks. The first five years, 2003-2007, total 233 reports including Internal Investigations and Administrative Reviews. The next five years, 2008-2012, total 52 reports for both categories. Most alarming is the fact that during the latter time period, 152 investigated citizen complaints were not logged into IAPro and are not considered for our five year data comparison. The senior police executives of the department should have recognized this discrepancy and probed as to the comparison disparity in numbers of cases. The resulting failure of management oversight contributed significantly to a breakdown in organizational confidence in the IA Unit by HPD personnel.

The 152 citizen complaints that were received but not entered into IAPro are a poignant example of the current practice of HPD Internal Affairs. Although we were told that the citizen complaints were investigated by sergeants, there was a distinct lack of formal reporting of those investigations that met any minimal police investigative

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01393**

standard. There was little or no management review of the cases. Since the complaints were not entered into IAPro—the internal record keeping and tracking system for citizen complaints where logging in complaints is required by HPD policy and is a required national standard—all were lost opportunities for management accountability including early intervention of effected personnel, counseling, and possible discipline. This situation causes distress for an effective operation of HPD being able to "police themselves" and provide transparency to the public. (It should be noted, too, that we did not find any public reporting system of the internal affairs operation when we asked for such documents.)

Our reviews of 2012 and 2013 IA incidents revealed a lack of management accountability throughout the internal affairs process. Many of the reviews indicated a lack of investigative follow up, probing of the alleged complaint, proper identification of the alleged misconduct and appropriate/fair discipline when officer misconduct was or should have been identified. Lastly, a critical element is the lack of any management accountability process. Simply stated, HPD's leadership failed to provide adequate or appropriate oversight in IA complaint process including intake, investigation, and failure to report publically about the activities and cases within the Internal Affairs process.

Compliance Policy

HPD's current Professional Compliance Policy is Department Standard Operating Procedure (SOP) #104 and was approved May 13, 2013. Even though this policy was recently updated and re-issued we still found it wanting. There are several deficiencies in the policy: The policy is too broad and covers too many topics involving internal affairs, Garrity Warnings, the administrative process, and many more processes making it difficult to follow and understand. Many supervisors we questioned couldn't tell us what they are required to do when taking a citizen complaint, for example. Supervisors told us different standards for how much time they had to complete a review, as well as what the appropriate standard of evidence was to draw conclusions from. The end-user, the police officer through the police supervisor, will find the policy too complicated and will most likely result in the officer(s) not "buying in" or ignoring the department's goals within the policy. HPD should re-write the policy and draft new polices out of the current policy. We suggest the following as examples.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01394**

- Warrantless entry into department issued or assigned property,
- Administrative Leave,
- FOIA Laws,
- Disciplinary Action Reports,
- Early Warning Systems & Reports,
- Florida Criminal Justice Standards Requirements and Reports,
- Informant Procedures,
- Vice & Narcotics Procedures, and
- Off Duty Conduct and Procedures.

Policies should be written for all other high risk activities that officers involve themselves in. HPD should develop these comprehensive polices and ensure that critical terms are defined consistent with all other policies. HPD should annually review all critical policies to ensure they are clear, appropriate and current with national policing standards. An annual review of policies and procedures should be established to ensure standards are aligned with constitutional policing and national policing standards such as the Commission on Accreditation for Law Enforcement Agencies (CALEA), the International Association of Chiefs of Police (IACP), and the Police Executive Research Forum (PERF) are a few examples.

Based on our review of the current examples of HPD's policies we would recommend a complete review, update and rewrite on HPD's manual system. It may require a complete replacement of the manual system including training of all personnel on relevant aspects of the system consistent with their positions. We are providing as an addendum #1 a Model Internal Affairs Policy. However, based on our review of these few policies a complete overhaul may be in order.

Assignment of Complaint Investigations

HPD Internal Affairs should conduct all serious administrative investigations, including but not limited to officer-involved shootings, in-custody deaths, all alleged citizen constitutional violations, corruption, allegations of racial profiling or discriminatory policing or racial prejudice, dishonesty, drug use, sexual misconduct, cases handled for other jurisdictions, and cases referred directly by the Chief of Police or HPD Command staff. Likewise, Internal Affairs should investigate all allegations of police discrimination against members of the public based upon race, ethnicity, gender,

*Charles A. Gruber Consulting, Inc.*                                                    6

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01395**

disability, or sexual orientation. Internal Affairs should be responsible for the investigation of all allegations of misconduct of a first level supervisor or higher rank with the exception of any instance where there is an apparent conflict of interest. Those latter allegations should be investigated externally by an independent authority selected by the Chief, referred to the county prosecutor and/or referred to a public integrity task force. Unless there is a specialized unit to handle internal complaints by employees of discrimination, sexual harassment, and other unlawful employment practices, Internal Affairs may conduct such investigations with the collaboration of City of Hollywood Personnel Department.

Minor complaints against members of HPD should be referred to supervisors for investigation, and remediation within specific guidelines and quality controls measures including tracking of cases, timeliness, compliance to investigative, disciplinary protocols and a discipline matrix. Such policies currently do not exist within the HPD and need to be written and implemented.

Provided in the Addendum #2 is a Model Mediation Police Policy. HPD could also consider implementation of a Complaint Resolution Process for the handling of minor complaints. Such tools will assist the supervisors and IA in completing minor complaints.

Early Warning System (EWS)

Early warning systems (EWS) are data-driven programs whose purpose is to identify officers whose behavior is either problematic or outside expected norms and to subject those officers to some kind of intervention, often in the form of counseling or training. Because of their potential for providing timely data on officer performance and giving police managers a framework for correcting unacceptable performance, early warning systems are consistent with the new demands for performance evaluation raised by community policing, and foster effective strategic management of a police departments' human resources.

HPD maintains EWS thru IAPro, but gathers limited data, fails to disseminate to management threshold events, and otherwise does nothing to effectively manage officer complaints and overall management accountability. A concern we identified of the current policy is that the thresholds set under the current policy are inconsistent with identifying outliers. The policy states officers assigned to particular areas of HPD

*Charles A. Gruber Consulting, Inc.*                                      7

**TYSON- COH Resp. to 2nd RFP
GRUBER 01396**

assignment and receiving a certain number of complaints will be identified in the Early Warning System. An effective EWS process will have *all* officers in the system and a mere number or assignment should not dictate when personnel would get identified to go into EWS. HPD's current practice does not conform to generally accepted police practices for EWS. The current HPD process does not assist with actively managing its personnel under this system. On the contrary, their current operation unwittingly promotes a disservice to all personnel. A robust EWS process will ensure properly managing police personnel with fairness to all.

Early Warning System is the responsibility of Internal Affairs and is covered under the Professional Compliance Policy. Identification System Reports are part of the HPD data system and current policy states these reports will be made available to the public upon request. We would recommend in order to bring about greater transparency and trust, HPD should consider making these reports available on their website and posted monthly or quarterly. Providing internal work process to the public will build trust with the community and demonstrate an open and transparent organization. We have provided an example of an effective EWS policy in the addendum.

Complaint Intake

The complaint intake process should be straight forward. HPD's current complaint intake process is deficient in accountability and openness to the public. Complaints are taken several ways (e.g. in person, in writing, over the phone, etc) and recently, Internal Affairs produced complaint forms in several languages that are located in the lobby of HPD Headquarters and on their website. Although this process is a positive step forward for HPD, more work is needed to establish a well-rounded and vigorous professional Internal Affairs process. An on-line complaint form process is available, but it is still unclear on how the agency processes anonymous and 3rd party complaints. Although the agency has developed several complaint forms in different languages, the complaint process should be established City-wide, meaning complaints forms should be made available in all government building lobbies – City Hall, fire departments, etc. Complaint forms should be established in community centers and civil rights group locations such as the American Civil Liberties Union (ACLU) Office and the National Association for the Advancement of Colored People (NAACP) locations.

**TYSON- COH Resp. to 2nd RFP
GRUBER 01397**

Currently, a citizen who complains about an alleged offense against a member of the HPD is met in the lobby of Headquarters. The initial information is taken by the on duty supervisor and referred to the Internal Affairs Division for assignment. IA decides if the complaint will be formal and they will handle it or send it back to the Division for investigation by the command of a particular area. There is no delineation or authority for what will be investigated as a serious IA case or as a minor administrative case. We found numerous examples of inequity based on seriousness of the case, and rank of the individual, and/or status (or non-status) of the department member.

HPD should revise its initial complaint process and receive all complaints from when the person(s) arrive at HPD. A complainant should not be told that IA will call them back and gather information about an alleged complaint. HPD Command should receive the initial complaint directly from the complainant and decide the severity and merits of the complaint. If the receiving Commander decides the complaint is severe in nature – possibly end in termination and or result in a suspension of more than 5 days if the allegations were true – it should be forwarded to the Professional Standards for review, consultation and investigation. On the other hand, if the complaint involves tactical, service, and language complaints, the Commander should advise Professional Standards and then proceed to investigate the alleged complaint within the limits and protocols established by policy. None of the above is in current HPD policy.

HPD should ensure that Commanders are aware of alleged misconduct under their command and control. Lower-level complaints can and should be handled by Commanders. Commanders will learn much more about their personnel when they are engaged in handling and investigating alleged complaints against their personnel.

HPD does not possess a standard template for complaint assignment. In our assessment of IA complaints, we learned that an email process is used to assign and track IA complaints. We view this process as a deliberate attempt to bypass the formal reporting system and obscure the true number of citizen complaints registered against members of HPD. The current HPD email process serves as the only IA complaint trail and this is contrary to generally accepted police practices. HPD maintains IAPro and this system should be used for proper tracking, assignment and final disposition of complaints. The failure to follow this ordinary but important process raised doubts

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01398**

about the consistency and reliability of case tracking and final disposition of the cases assigned by the email process.

HPD's citizen complaint form as written is intimidating in its current verbiage. HPD should eliminate certain language on the form that warns citizens that they could be prosecuted if they file a false complaint. This stern warning can be perceived as threatening to citizens and deter those wishing to file a complaint. It chills the openness needed to serve a process of acceptance of citizen complaints and creates doubt that the HPD is truly interested in improving its service to the community. It should be eliminated. HPD retains the right to pursue prosecution of false complaints regardless of whether or not the warning is provided on a complaint form.

Another troubling practice of HPD is the policy pertaining to Citizen Initiated Complaints. The policy states that failure or refusal of a complainant to do any of the following may preclude the proper investigation and routing of the Complaint Intake Report: Sign a Complaint Intake Report; respond in person to an interview; and, provide a name or identification. This policy is troubling for several reasons. First, the policy does not address what occurs if this does in fact happen. Will the agency still pursue the alleged complaint against the officer? Some complainants are reluctant to continue with a complaint due to the sensitivity of the complaint, prior relationship with the HPD, or concerns of what may occur if the officer is disciplined. Current HPD policy as written does not address what occurs with an alleged complaint at this stage of the investigation. A person who wants to remain confidential and expose police corruption; under this policy it would not be taken because the complainant failed to provide their name or identification. Secondly, this policy as written is rigid. The complaint process is arduous for the complainant and uncompromising. Thus, the HPD again, as above, may be intentionally creating a closed and difficult process for citizens to complain against a member of the agency. HPD should consider deleting this process from their current policy. We recommend that a new procedure be written which addresses the concerns we raise. We will provide to HPD examples of policies (see Addendum).

Complaint Investigation

Another critical Professional Compliance function involves the formal investigation of the complaint. HPD lacks a formal, structured, and consistent investigative process. Essential in this process are directives that explain to the

*Charles A. Gruber Consulting, Inc.*                                        10

investigator the investigative objectives necessary by policy. As an example, a preliminary inquiry should encompass an effort to gather key statements or evidence. The goal of an inquiry or preliminary investigation is to determine if the complaint should be further investigated and, of so, by whom. Because HPD does not direct HPD investigators with such precision it fails to provide thorough investigations, which is contrary to generally accepted police practice. We discovered in our case reviews many internal investigations were conducted over the phone and few demonstrated evidence of meeting with the complainants, collecting evidence, writing investigative notes of meetings, summaries of discussions, statements, or any other documentation normally and expected to be found in the file. Secondly, many of the complaints alleged by the complainant were not addressed in the investigative file or concluded in the final outcome of the case. Since some of the alleged misconduct was not addressed from the complainant's initial complaint, incomplete cases were found throughout the review process. In some reports, the investigation completely ignored the misconduct asserted by the complainant. If there were reasons for the deliberate failure include all the allegations in the investigation it should have been noted in the file. We found none. The investigations did not properly probe into the allegations of police misconduct and the **reviews did not memorialize the issues.**

The City of Hollywood should consider removing the Professional Standards Division from the police department and place it into a neutral location independent from HPD. This action would allow citizens to come to a neutral place without fear of seeing any police officers they wish to complain about. Until such a time that HPD has proven competency with investigating, tracking and resolving internal complaints, the Chief of Police and City leadership should consider hiring outside professional internal affairs personnel to assist HPD with all complaint investigations. This step is not uncommon when such wide spread systemic failures have been determined to exist.

As an example in one case, a single detective had three alleged police misconduct complaints over a six-month time frame. The complaints are troubling for several reasons: First, the investigations are lacking details of the compliant, investigation, and the investigators' rational for concluding the case was that the files were simply not complete.  There is very little information as to what was asked and answered during the interview with the complainant, and if there was an interview conducted with the detective, it is not included in the file.  There is no mention if the

*Charles A. Gruber Consulting, Inc.*                                                    11

interviews were tape-recorded, who was present, and if any notes were taken. A full report was not completed. The complainants on all three incidents were called via the phone from IA. All complaints are from different people. Again, there is no indication if the interviews were tape-recorded, notes taken and who was present for the interviews. What is troubling is that what is alleged in their complaint information intake and included on the IA log were not answered in the outcomes of the investigative findings. Lastly, nothing was ever referred to the Early Warning System therefore is a lost opportunity to track the alleged complaint information for future reference. Were there prior similar complaints in the past? Due to the high-risk assignment of this detective, at the very least a supervisor assessment and/or counseling session should have occurred to discuss the number of complaints in a six-month time frame. These type of reviews and assessments are normally made by supervisors in well-functioning agencies.

The above example is a good reason to provide skilled internal affairs investigators and a formidable Internal Affairs tracking system.. These three incidents of alleged misconduct occurred within a six-month time frame and involved a detective assigned to a narcotic detail. Not only should all alleged police misconduct be thoroughly investigated, a higher emphasis should be made to investigate those police assignments, which involve high-risk assignments such as drug investigations.

Our review of complaint investigations also uncovered an issue surrounding the use of Garrity warnings. A protocol for their use has been identified by our team as being used inconsistent with police practices. Garrity warnings provide an opportunity for employees to provide information without being criminally charged. The process should be coordinated with HPD Legal Counsel and the District Attorney. HPD should develop a specific policy on Garrity Warnings to its personnel explicitly providing for who and when Garrity can/shall be given.

Lastly, complaints need to be completed in a timely manner to ensure the original complainant is satisfied with the timeliness of the investigation. During our community interviews we heard concerns from citizens about the length of time it takes to get some answer to their complaints. Some citizens said they never heard any response from HPD at all. Officers who have a complaint against them also need to have the complaint investigated and resolved in a timely manner. The organization must assure itself of corrective action either organizationally or through behavior

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01401**

modification of all complaints. This serves the city, the officer and the agency best. Currently, HPD's policy states internal investigations should be completed within 180 days. It is clear to us that there was no oversight to monitor when or if this timeline was ever followed. Our review determined that there were no internal controls. This process is too long and is a disservice both to the complainant and officer(s). Both complainant and officer do not want complaints hanging over their heads for six months. A more reasonable time frame is 30 days for investigations to be completed from time the complaint is registered. This time schedule is consistent with generally accepted police procedures. Extensions can be authorized by policy with management written approval and detailed in policy. (A sample policy is contained in the addendum to this report.)

Complaint Adjudication Dispositions

HPD internal investigation reviews identified cases that were not properly adjudicated. Some reviews had a disposition of "Unfounded" if the complainant could not be located for further review. The proper classification should have been "Not Sustained". Not-sustained would mean the allegation could not be proven and the officer had a different account. If the complainant is not interviewed, then this classification is incorrect. It is essential that HPD classify complaints in established police standard classifications. Currently, HPD policy provides for seven classifications of internal affairs dispositions. This is not compliant with generally accepted police practices. HPD should adopt generally accepted policing practice complaint adjudication dispositions and their complaint adjudication should contain the following four adjudication dispositions: *Sustained, Not Sustained, Exonerated, or Unfounded*. A "Sustained" finding means the allegation is true by a preponderance of the evidence and that the conduct at issue is a violation of agency rules. A "Not Sustained" adjudication means the allegations cannot be proven true or untrue by a preponderance of the evidence. An "Exonerated" adjudication means the conduct at issue occurred, but is not a violation of agency rules. An "Unfounded" adjudication means the allegations are not true.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01402**

Discipline Matrix

Many of our HPD personnel interviews revealed a lack of confidence in the current HPD Internal Affairs process. Again and again during our interviews, HPD personnel stated that there is no training offered and that sergeants were "flying by the seat of their pants" in attempting to do the correct thing. One sergeant told us he could not remember an unsatisfactory report ever being provided to management. While we doubt the accuracy of this sergeant's statement (we believe he was simply venting his dissatisfaction), it reflects and communicates the frustration felt by HPD first-line supervisors. Due to these personnel interviews, HPD should strongly consider using a discipline matrix for adjudication purposes.

The discipline matrix is intended to provide officers with a general idea of the upper and lower limits of punishment for acts of misconduct. It also provides guidance to supervisors and managers, and helps reduce/remove organizational politics. In so doing, it takes some of the guesswork out discipline, relieving officer apprehensions about potential penalties and reducing stress during the investigatory and deliberative stages of the disciplinary process. It is also designed to balance member and employee accountability with fair and equitable discipline. A well written policy and an accompanying discipline matrix would represent the department's values and current industry standards. The matrix is designed to set the highest penalties and the most discipline on those actions reflecting deliberate misconduct of department values. Strict adherence to a disciplinary matrix can limit the discretion of deciding officials and thereby level the playing field among supervisors who may have widely divergent ideas about discipline. A disciplinary matrix can also enhance public information and HPD accountability and transparency in reporting on the department's disciplinary penalties when made public. Current mistrust within HPD likely provided the current erosion in the IA process. A penalty matrix may assist in rebuilding that trust. A discipline matrix could assist with consistency, objectivity, and predictable outcomes for police misconduct. A discipline matrix involves ranges of possible discipline, allowing for the decision-maker to consider the totality of circumstances, including aggravating and mitigating factors, in deciding appropriate discipline.

**TYSON- COH Resp. to 2nd RFP
GRUBER 01403**

Compliance Audits

An important element in management accountability is known as a compliance audit. A compliance audit, also known as an integrity test, is a live test to determine whether policies and organizational process are being followed. Compliance audits can assist HPD detect misconduct before misconduct is complained of by the public. Compliance audits can assist with pinpointing weaknesses in policy, practice, and personnel before anyone is ever accused of misconduct.

During our review we learned that the Internal Affairs unit has conducted only one compliance audit and that audit failed because of a security breach. The need to conduct compliance audits is a necessary protocol for a well-functioning IA system. The lack of compliance audits sends the message that the organization is not inspecting the agencies internal and external processes which will result in system wide failures. Examples are seen throughout the reports we viewed.

HPD should develop a process and policy, and implement compliance audits. Audits could also be expanded to include the intake, investigation, adjudication and overall accountability of HPD Professional Compliance Policy. HPD should consider auditing every step of the IA process to ensure policy is being performed by personnel and that the agency is doing what it says it should be doing.

Internal Affairs Assignment & Training

We learned that personnel assigned had either little or no training in managing an Internal Affairs Unit nor previous experience in managing internal affairs. All knowledge was gained from investigative experience in criminal cases or on the job training. Officers and supervisors must receive prior training in administrative investigations processes and protocols prior to receiving and investigating officers misconduct cases.

Specific requirements should be established for the selection of individuals to work within Internal Affairs. Prior investigative experience or a strong investigative background should either serve as a requirement or a significant qualification for Internal Affairs service. HPD should conduct a secondary background check on potential candidates. Selected candidates should sign a confidentiality agreement that underscores their commitment to avoid divulging Internal Affairs cases and confidential details to anyone, and for any reason, outside the IA.   After being selected, the

**TYSON- COH Resp. to 2nd RFP
GRUBER 01404**

department should provide as much ongoing training and professional development in investigation techniques and Internal Affairs investigation as possible, including training in fact finding and deposition techniques by lawyers or judges. Specific training, too, should be offered in techniques for interviewing police officers in administrative cases including officer involved shooting cases.

HPD should strive for command officers to work in Internal Affairs, and develop an explicit policy that places service in Internal Affairs as a required component of leadership training. HPD should consider or provide particular preferences or point values to a career or service in the Internal Affairs division when a supervisor is being considered for promotion.

1. HPD should revise Professional Standard Compliance Policy to ensure "complaint only" issues.  Separate other pertinent areas into new policies.

2. HPD should establish policy on acceptance of anonymous complaints.

3. HPD should implement new protocol on how to accept complaints.  Incoming complaints should be accepted 24/7 and policy should be established for all supervisors and commanders to accept complaints.

4. HPD should utilize Blue Team technology for all in-coming complaints. Supervisors should be trained and implement complaint information into Blue Team.

5. HPD should modify their complaint case dispositions to reflect actual occurrence.

6. City of Hollywood should consider moving the Professional Compliance Division out of HPD and place into a stand-alone and neutral location.

7. HPD should establish an off-duty conduct policy and avoid those officers from placing themselves "on-duty" when off of work.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01405**

Summary of Findings

Although the IA function was present in the organization and working, it it failed to meet accepted police practices. There was a system failure starting in approximately 2008 as it appears there were violations of law, policy, and good policing standards. Some of the deficiencies appeared to be minor mistakes while others appeared to be deliberate acts of wrongdoing. They include a failure of following established polices and/or procedures, lack of proper management, derisory internal controls, inadequate and possibly illegal reporting to required authorities, perceived or actual inappropriate influence in the handling of cases, and non-sufficient security for files, cases and networks.   There is a dire need of intervention, restructuring, training, and culture change. Below are the findings for each specific area audited.

- Intake –
  - HPD must build a professional complaint intake process that is clear, simple and easily accessible.  Assuring that complaints are taken in person, by letter, complaint form, telephone or e-mail. Complaint brochures, which are available at the police station lobby and on-line, are in English, Spanish, French and Creole or other languages spoken in the neighborhoods of the community.
- Verification –
  - Insure that a fact-finding investigation is conducted to determine if the complaint is an allegation of misconduct or a misunderstanding of law, department directive and/or procedure.  There were incidents of abuse in this area as incidents of misconduct did not get past the "Fact-Finding" investigation.  (This should have been caught by an internal audit.)
- Classification –
  - Cases must be properly classified.
  - There were some deficiencies in the classification of complaints, as some misconduct was classified as fact-finding that should have resulted in an IA and criminal investigation.

*Charles A. Gruber Consulting, Inc.*                                        17

**TYSON- COH Resp. to 2nd RFP
GRUBER 01406**

- Tracking –
  - IA appropriately documents the intake of all complaints by entering it systemically into the IAPro system numerically by year so there is an accountability and tracking of all complaints.
  - The discrepancies were the 152 instances listed above which were not in the system because they were either improperly classified or misrepresented and cases that were located during the audit that were cases prior to the use of IAPro.
- Investigation –
  - IA should conduct internal investigations for allegations that may result in formal discipline up to and including termination cases while Administrative Reviews of less serious allegations are handled at the division level.
  - To be fair there were cases reviewed by our team of IA investigations that were conducted properly and appeared to be thorough.
  - As stated previously however, some cases of misconduct should have been identified and should have led to an IA investigation but since they did not, we determined that there was not a thorough investigation.

We have the following recommendations and observations that deal with the audit findings of IAPro. Our investigators have detailed these findings specific to their on sight observations, interviews, case review and finally outside research.

- Documentation –
  - All of the purged names alleged to have been removed from the IA Pro system have been identified; sixty five (65) through documentation in IAPro, fifteen (15) by review of hard files, and one (1) by interviews of involved officers.
  - The Broward States Attorney's Office is committed to sharing the results of the forensic audit of the hard drive with HPD. Based on the best interest of all parties involved and the pursuit of justice, it was decided not to duplicate the work from the same set of information.
  - File documentation was unprofessional as there was no standardization or organization of the file. Files contained grammatical and syntax errors and/or personal arguments with and between management (i.e., they only had 10 minutes to meet with a manager).

*Charles A. Gruber Consulting, Inc.*                                                                        18

**TYSON- COH Resp. to 2nd RFP
GRUBER 01407**

- Files do not have a specific formatting.
- IA Investigators document their investigation via what they call a "Timeline" on a word document in the "V" drive.  If three investigators are assisting on the case, all three will simply add what happens into the "Timeline". Therefore, it is unknown who wrote what or when; or, if prior entries were altered. This must be corrected.

- Disposition –
  - The assigned Division Major is the final authority for disposition on an Administrative Review, where as the Chief of Police is the final authority for disposition on all IA investigations, which this is consistent with policing practices. Both must outline what their decisions are in writing and attached to the file. Documentation of that was often missing from the files.
  - Besides the four (4) basic findings of Sustained, Not Sustained, Exonerated and Unfounded, HPD also utilizes Exonerated by Policy Failure, Sustained Violation Not Reported, and Withdrawn. These must be eliminated and not used any more.
  - Deficiencies were found in this area as investigations were closed due to EAP or retirement, which are not appropriate dispositions. Cases closed by such dispositions is inappropriate and in conflict with acceptable policing standards. Findings are required in all citizen complaint investigations.

- Penalty –
  - HPD uses a member's chain of command review in recommending the appropriate corrective action or discipline. The Chief of Police as the final authority on all sustained misconduct. We recommend that a discipline matrix be added to maintain consistency and fairness in the penalty phase of the disciplinary process.
  - We found in a number of cases, that there was a great disparity with the corrective or disciplinary action taken or lack of any disciplinary action taken.

- Follow-up –
  - Not all criminal conduct that was alleged against members of HPD was brought to the attention or reviewed by BSAO for possible criminal charges.
  - The Criminal Justice Standards and Training Commission (CJSTC) was not notified of all misconduct by the HPD leadership consistent with the law,

*Charles A. Gruber Consulting, Inc.*                                    19

which would have caused a review by that authority to decide the officer's right to hold a Florida law enforcement certification.

- The Affidavits of Separation (CJSTC form 61) were not properly executed consistent with that same authority.

- File Maintenance –

  - The audit revealed misfiled records, incomplete or incorrect records in IAPro, and missing hard files.

  - IA staff did not know what files existed and where they were located.

  - Reportedly, (we were not able to confirm) in the past, IA files were given to some individuals when they resigned from the department.

  - IA staff members were not thoroughly familiar with IAPro.

- Security –

  - Personnel that had been transferred out of the IA unit still had access to the office and IA files.

  - Offices and files were reportedly left unsecure in the past.

  - Firearms and other equipment from suspended officers are maintained in the IA records closet, which a civilian and other non-IA personnel had access to.

  - Anyone in the waiting area can hear what is being discussed during investigations and interviews due to the poor housing conditions and cramped quarters of the Internal Affairs Office Complex

- Safeguards –

  - There were no internal controls and audits.

- Organization –

  - Individual duties and responsibilities for IA staff are not outlined.

  - There appears to be an inefficient use of supervisors as the IA unit is made up of 1 Lieutenant, 2 Sergeants and 1 Administrative Assistant, which are overseen by a Major.

- Outside Influences –

  - It appears that some decisions/actions were based on politics, union perception, or personal relationships.

*Charles A. Gruber Consulting, Inc.*                    20

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01409**

- Reputation –
    - Based on information we learned, there appears to be a need to build trust and respect between the Broward States Attorney's Office and Hollywood Police Department.

Summary of Remedial Measures Recommendations

In order for the Hollywood Police Department to move forward the Chief of Police must have strong long term support at the City Management level and from its elected officials who represent the citizens. The following recommendations are made based on the deficiencies noted above:

- The Complaint Intake process should be simple and easy for internal and external complaints.

- A fact-finding investigation shall only be conducted to determine if the complaint is an allegation of misconduct or a misunderstanding of law, department directive and/or procedure, as discussed in Professional Compliance HPD SOP #104, Section IIIA1.

- If the complaint is an allegation of misconduct, it should be tracked and assigned for a thorough investigation (IA investigation, Administrative Review, and/or criminal investigation) in accordance with FSS.

- HPD should ensure all complaints of misconduct are properly classified as an IA investigation, Administrative Review and/or criminal investigation.

- HPD should complaints are entered into IA Pro and IA staff monitor the due diligence.

- HPD should add all IA files located during the audit into the system.

- HPD should have IA investigations handled by IA and Administrative Reviews handled at the division level.

- HPD should ensure all investigations are thorough and complete in accordance with FSS and department policy.

- HPD should restore purged names into IA Pro

*Charles A. Gruber Consulting, Inc.*                                        21

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01410**

- HPD should ensure all IA Pro files are accurate and duplicate the hard file.

- A public records request list of all those who requested public records from the IA unit was requested and put together. The IA Unit is in possession of those records and it was recommended by the audit team that they cross reference that list with purged names and those identified in the request as having received incorrect information should be contacted immediately via certified letter, informed of the fact, and be provided a free copy of the corrected information.

- HPD should establish a file organization format for all IA investigative files for consistency and quality, i.e.,

  Section 1 – complaint intake form;

  Section 2 – complainant information and notifications;

  Section 3 – suspect officer information and notifications;

  Section 4 – witness information and notifications, and;

  Section 5 – Investigative Reports (in chronological order), etc.

- A format for the investigative summary should be established to include all relevant information so they are consistent and give a clear synopsis of the investigation.

- HPD should establish an open "Timeline", and it is recommended that an Investigative Report and a format be followed (a sample was provided to HPD IA Investigators). The Investigative Report, chronologically numbered, not only documents the investigation but forces investigators to be up to date on documentation of the case and prevents changes in the investigative documentation process. Since it is reviewed and signed by the IA Commander, it ensures command staff is aware of the progress of a case.

- HPD should ensure all documentation be scanned in to the IAPro system as it is completed.

- HPD should continue utilizing the Division Major as the final authority for Administrative Reviews and the Chief of Police as the final authority for IA investigations.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01411**

- HPD should ensure the classifications of disposition are adhered to as listed in Professional Compliance HPD SOP #104, Section VII F. Case Disposition.

- HPD should continue including the member's chain of command in recommending the appropriate corrective action or discipline and having the Chief of Police as the final authority on all sustained misconduct.

- HPD should ensure consistency occurs in discipline cases.

- HPD should ensure BSAO be briefed on all misconduct that may be criminal in nature and that a written response, if possible, be received for the file in a timely manner.

- HPD should ensure CJSTC form 78, Internal Investigation Report, be completed on all IA investigations. Those meeting the criteria listed in Professional Compliance, HPD SOP #104, Section III K. Reporting to Criminal Justice Standards and Training Commission shall be sent to FDLE with the appropriate paperwork so they may review the officer's right to hold a Florida law enforcement certificate.

- HPD should ensure CJSTC form 61, Affidavit of Separation, shall be executed in accordance with the guidelines.

- HPD should ensure IA Pro files should be reviewed and corrections made as needed; hard files should be reviewed and inventoried to account for all files on hand; hard file should be compared to IA Pro files to ensure the information is the same;       files, in numerical order by year, should be centrally located in lockable filing cabinets in one room.

- HPD should ensure IA staff be thoroughly trained in the use of IA Pro and administrative rights should only be granted to IA's commanding officer.

- HPD should IA personnel transferring out of IA should be immediately removed from access to the office and files. A check list, to include key card access and a confidentiality form, should be created and completed when an IA member is transferred.

- HPD should implement office safety and security systems:

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01412**

- Offices and files secured at all times; a policy should be in placed that, at the end of the day.

- Hard files are returned to the file room; firearms should only be stored in approved firearm storage areas.
- Office configuration should allow for separate waiting areas; one for officers, and one for the public.
- Officers responding to the Internal Affairs Unit on official business should be required to place their firearms and Taser in a gun locker at IA.
- Interview rooms should be an adequate distance from the waiting area or soundproofed to ensure privacy.
- Each IA investigator should have their own office to reduce the spread of information even among investigators.
- IA members should be issued "Ghost key cards" for investigative purposes that would allow them entrance anywhere in the police department without displaying "IA was here".
- A secondary locking mechanism, such as a Medeco locking device, should be installed on all doors.
- An internal alarm system with different sections/access should be installed.
- The IA offices should be re-keyed.
- Investigators must be reminded that they work in a sensitive unit and all documentation should always be placed face down on the investigator's desk.
- A protocol should be established where the cleaning crew or maintenance personnel prearrange visits so that the Administrative Assistant, or other IA staff member, can have constant visual contact at all times.
- The file room should have a motion-detected video recording system.

- HPD should ensure IA preserve the quality and due diligence of all investigations to include those referred to the division level as outlined in Professional Compliance HPD SOP #104, Section III A, Oversee all Member Complaints.

- HPD should establish internal controls and audits that direct a specific position in the IA unit to be completed in a specific time frame with tasks that are related to adding internal controls.

- HPD should train all sworn members on Professional Compliance HPD SOP# 104 and ensure policy compliance.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01413**

- HPD should require a Job Task Analysis and Job Descriptions for each position in the Internal Affairs Unit.

- The department should consider an IA team concept with two teams, each consisting of a Sergeant and an Officer, to allow proper response to major scenes. The teams could work separately or together, when the need arises. The current Lieutenant position could be transferred to a field position.

- The department should consider a high ranking position to be in charge of the IA function to ensure final authority at all scenes.

- HPD should ensure the IA Office is professional and portrays a clean environment.

The IA function must operate free of fear and/or other concerns as their focus must be concentrated on finding the truth. Outside influences due to the current culture must be eliminated. The reputation of the City of Hollywood Police Department is greatly determined on its ability to police itself and provide constitutional policing to all—residents and police personnel. These recommendations should serve as a catalyst to help restore confidence in the Hollywood Police Department as a fair, effective and accountable law enforcement agency.

We maintain that our review of the Internal Affairs of the Hollywood Police Department has revealed some serious deficiencies. Acknowledging this, we also applaud this agency for its candor and sincere effort to identify shortcomings. It is our sincere wish that HPD reflect upon this assessment and begin the arduous process of revamping and restructuring its processes and practices to restore functionality and transparency to its internal affairs system. To aid in this endeavor we have attached materials in the addendum that offer philosophical as well as practical guidance that adhere to national policing standards and accepted police practices.

Respectfully submitted,


Charles A. Gruber

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01414**

Addendums

1.   Internal Affairs Model Policy                                    Page 27

2.   Model Mediation Police Policy                                 Page 53

3.   Sample Mediation Advertisement flyer                     Page 57

4.   Sample Internal Affairs Intake Manual                     Page 59

5.   Internal Affairs Office Security                               Page 85

6.   Legal Torts Sample Policy                                       Page 86

7.   Sample Skelly Policy                                              Page 89

8.   Internal Affairs Call-Out Procedures                       Page 93

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01415**

MODEL INTERNAL AFFAIRS POLICY                          Addendum 1

### COMPLAINTS AGAINST DEPARTMENTAL PERSONNEL OR PROCEDURES

The purpose of this order is to inform all employees and the public of procedures for accepting, processing and investigating complaints concerning allegations of member employee misconduct. This policy defines provisions applicable only to investigation and disposition of allegations of administrative misconduct.

I.   **POLICY**

Establishment of procedures for investigating complaints and allegations of employee misconduct is crucial to demonstrate and protect this agency's integrity. This agency shall accept and investigate fairly and impartially all complaints of alleged employee misconduct to determine the validity of allegations and to impose disciplinary actions that are justified in a timely and consistent manner.

II.  **DEFINITIONS**

A.   Administrative Dispositions

An IAD Commander shall approve Administrative Dispositions, except for tolled cases, ensure documentation in the Chronological Activity Log (CAL), and ensure that the data is properly entered in the IAD Complaint Database.

1.   Administrative Closure

Administrative Closure shall be used to:

a.   Indicate a service complaint, not involving a Manual of Rules (MOR) violation, was resolved without an Informal Complaint Resolution; or

b.   Conclude an internal investigation or preliminary inquiry when it has been determined that the investigation or inquiry cannot proceed to a normal investigative conclusion or when any of the following circumstances obtains:

1)   Complainant wishes to withdraw the complaint and an IAD Commander has determined there is no reason to continue the investigation;

2)   Complaint lacks specificity and complainant refuses or is unable to provide further

*Charles A. Gruber Consulting, Inc.*                          27

**TYSON- COH Resp. to 2nd RFP
GRUBER 01416**

clarification necessary to investigate the complaint;

3)   Subject not employed by OPD at the time of the incident;

4)   The subject is no longer employed by OPD and an IAD Commander has determined that there is no reason to continue the investigation;

5)   Complainant fails to articulate an act or omission which, if substantiated, would constitute an *MOR* violation; or

6)   Complaint is limited to Vehicle Code citation and/or a tow, where there is no allegation of misconduct, in which case the complainant shall be referred to the appropriate competent authority (e.g., Traffic Court, Tow Hearing).

7)   Complaint involves an employee or member alleging that a fellow employee or member has committed a Class II offense, there is no pattern of similar misconduct, and an IAD Commander has determined that the matter does not warrant further investigation; or

8)   Allegation is clearly and immediately without merit (e.g., frivolous physically impossible, etc.)

2.   Filed

a.   An investigation that cannot be presently completed. A filed investigation is not a final disposition, but an indication that a case is pending further developments that will allow completion of the investigation.

b.   The IAD Commander shall review all filed cases monthly to determine whether the conditions that prevented investigation and final disposition have changed and may direct the closure or continuation of the investigation.

B.   Administrative Review

The chain-of-review and approval for completed investigations shall commence with the investigator's first-level commander/manager,

*Charles A. Gruber Consulting, Inc.*                                               28

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01417**

continuing to the division commander and then to the IAD Commander, or designee, who shall review all division-level investigative files.

C.   Approved Internal Investigation

An internal investigation that has been processed, completed (investigated with a recommended finding), reviewed by the chain of command, and has been reviewed and signed by the COP or the IAD Commander when designated by the COP. Approved internal investigations shall be considered "Closed."

D.   Case Files

A general term that includes the following two classifications of files:

1.   Control File

The original investigative file that remains with the IAD Administrative Section and contains original documents and information used and compiled by the IAD.

2.   Investigative File

A duplicate copy of the Control File made by the IAD Administrative Section and delivered to the IAD Investigative Section, or to the appropriate bureau for a division-level investigation or administrative review, or for other official business such as a board of review or court proceeding.

E.   Classifications of Complaints

Complaints against Departmental personnel shall be categorized as Class I or Class II offenses.

1.   Class I offenses are the most serious allegations of misconduct and, if sustained, shall result in disciplinary action up to and including dismissal and may serve as the basis for criminal prosecution.

The Class I offenses include but <u>are not limited to</u>:

a.   Use of excessive, unnecessary and/or unlawful force;

b.   Fabrication or destruction of evidence, including the planting of inculpatory evidence or the omission or destruction of exculpatory evidence;

c.   Untruthfulness, including perjury;

**TYSON- COH Resp. to 2nd RFP
GRUBER 01418**

d.      Knowingly and intentionally filing a false police report or other work related documentation as specified in Rules of Conduct.  This includes but is not limited to video, photographs, diagrams, roster, etc., as well as the intentional omission of pertinent information or facts;

e.      Insubordination;

f.      Commission of a felony or serious misdemeanor;

g.      Bias or harassment, actions of a retaliatory nature, or failure to take reasonable steps to prevent retaliation;

h.      Solicitation or acceptance of gifts or gratuities.

i.      Use of position for personal gain;

j.      Knowingly or should have reasonably known that he/she made a false arrest or illegal detention;

k.      Failure to report others  who commit any Class I offense or a Class II offense that indicates a pattern of misconduct or threatens the rights of private persons and/or the well-being and reputation of Department personnel and/or the Department;

l.      Failure of a supervisor/manager to detect a pattern of misconduct;

m.      Failure of a supervisor/manager to properly supervise, and/or take corrective action for misconduct that he/she knew or reasonably should have known about;

n.      Failure to properly identify self, including refusing to provide name, deliberate concealment of a badge or name plate;

o.      Knowingly and intentionally obstructing the Internal Affairs investigation process in any manner; and

p.      Driving under the influence

2.      Class II offenses shall include all minor misconduct offenses. F.

Complaint Categories

1.      Misconduct Complaint

*Charles A. Gruber Consulting, Inc.*                                    30

**TYSON- COH Resp. to 2nd RFP**

**GRUBER 01419**

A complaint from any source alleging a specific act or omission by a member or employee which, if substantiated, would constitute a violation of a *Manual of Rules* section.

2.     Service Complaint

A complaint from any source regarding an inadequate policy, procedure, practice, service level, or legal standard or statute required of the Department that would not result in discipline. Service complaints shall be assigned an IAD case number and documented in the IAD database. A service complaint is not an allegation of misconduct

G.     Completed Internal Investigation

An IAD investigation which has been concluded with a recommended finding, has been reviewed by the IAD Commander, and is ready for a discipline recommendation, if needed; **or**

A division-level investigation which has been concluded with a recommended finding, has completed the administrative review process, and is ready for a discipline recommendation, if needed.

H.     Directly Involved Personnel

Any member or employee who participated in the commission of, or witnessed another member or employee commit, a specific act or omission giving rise to the allegations under investigation.

I.     Discipline Recommendation

The discipline recommendation shall be prepared by subject's chain of command and forwarded to the COP for review and approval.

J.     First-level Commander/Manager

The immediate command superior of a member or employee identified at the rank of lieutenant or above, or a civilian manager or director.

If the subject is a:

1.     Police officer or employee, the first-level commander would be a lieutenant or civilian manager/civilian director;

2.     Sergeant, the first-level commander would be a lieutenant;

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01420**

3.      Lieutenant, the first-level commander would be a captain; or Captain, the first-level commander would be a deputy chief, deputy director or Assistant Chief.

K.      Informal Complaint Resolution

A method of addressing Class II misconduct complaints, against Departmental personnel, that do not indicate a pattern of misconduct. The process is INFORMAL COMPLAINT RESOLUTION PROCESS and involves a supervisor, commander, manager or investigator resolving a complaint by addressing and resolving the issues with the complainant and the member or employee.

L.      Internal Investigation

Any administrative investigation conducted by the IAD or at the division- level.

Supervisory counseling, instruction or admonishment conducted in the normal course of duty does not constitute an internal investigation.  A preliminary inquiry does not constitute an internal investigation.

M.      Person Authorized to Initiate an Investigation

A supervisor, commander, manager, a member of the IAD, or other person (to include contracted parties and annuitants) designated by the Chief of Police.

N.      Serious Misdemeanor

Any misdemeanor crime, upon conviction, that could preclude active law enforcement personnel, or a member or employee from continuing to successfully perform their responsibilities.

Examples include, but are not limited to, those crimes that involve violence, intimidation, sexual offenses, theft, dishonesty, possession of drugs, violations of State Laws, "Unlawful Possession of a Firearm," and those crimes where bias is a motivating factor.

O.      Internal Investigation Start/End Date

1.      The 3304 start date for internal investigations begins on:

a.      The incident date; or

b.      If the incident occurred more than 30 days prior to the complaint, the IAD Commander may approve the start date as the day the Department (a person authorized to

*Charles A. Gruber Consulting, Inc.*                                    32

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01421**

initiate an investigation) became aware of any act, omission, or other allegation of misconduct.

2.  The end date occurs 364 calendar days after the 3304 start date.

3.  Enumerates the provisions, limitations, and exceptions for commencing, suspending, and terminating the 3304 time period.

    **NOTE**: Although IAD uses the incident date as the start date, this is only an internal administrative start date for purposes of tracking the investigation and shall not be used for purposes of grieving discipline.  Government Codes

P.  Tolled Cases

1.  An administrative investigation which has been held in abeyance in accordance with the following provisions of:

    a.  The allegation of misconduct is also the subject of a criminal investigation or criminal prosecution;

    b.  The subject member or employee has agreed in writing to extend the investigation beyond the one-year deadline of the date the complaint was filed;

    c.  The investigation involves multiple jurisdictions and requires a reasonable extension for coordination of the involved agencies;

    d.  The investigation involves more than one subject member or employee and requires a reasonable extension;

    e.  The investigation involves more than one subject member or employee who is incapacitated or otherwise unavailable;

    f.  The investigation involves a matter in civil litigation where the subject member or employee is named as a defendant;

    g.  The investigation involves a matter in criminal litigation proceedings where the complainant is a criminal defendant; or

    h.  The allegation involves an allegation of worker's

*Charles A. Gruber Consulting, Inc.*                                    33

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01422**

compensation fraud on the part of the member or employee.

2.  Tolled cases shall be submitted to the Office of the City Attorney for review and approved by the Chief of Police or designee.

3.  The investigation shall continue, even when a case is tolled, unless otherwise directed by the Chief of Police or designee.

## III.  RECEIVING AND PROCESSING COMPLAINTS

A.  Receiving Complaints

1.  Misconduct Complaints

The Department shall investigate all misconduct complaints from any source (including anonymous) against a member or employee in accordance with the provisions of:

a.  INTERNAL INVESTIGATION PROCEDURE MANUAL;

b.  IAD Policy and Procedure, IAD INVESTIGATIONS;

c.  CRIMINAL INVESTIGATIONS INVOLVING ACTIVE LAW ENFORCEMENT, OR A MEMBER OR EMPLOYEE OF THE DEPARTMENT.

2.  In the event personnel receive an anonymous complaint, the person receiving the complaint shall ask for additional information that may assist in the investigation.

Anonymous complaints shall be investigated to the extent reasonably possible and the results shall be documented in the IAD database.

3.  Service Complaints

The Department shall receive, evaluate, and respond to service complaints regarding a policy, procedure, practice, service level, or legal standard or statute required of the Department.

4.  The Department shall investigate allegations of *Manual of Rules* violations arising from lawsuits and legal claims and complaints made to the Citizens' Police Review Board (CPRB) involving misconduct and/or tort claims involving Class I and Class II offenses, treating them in the same manner as other misconduct complaints. However, a legal

*Charles A. Gruber Consulting, Inc.* 34

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01423**

claim, in and of itself, does not constitute an allegation of misconduct.

5. IAD or Communications Division personnel shall staff a recordable toll-free complaint phone line, 24-hours a day, and receive and process complaints in accordance with the provisions of this order. The complainant shall be advised that the call is being recorded when a complaint is taken by IAD. IAD and Communications Division procedures and responsibility for receiving complaints during IAD business and non-business hours are enumerated in IAD Policy and Procedure, IAD GENERAL OPERATING PROCEDURES and Communications Division Policy and Procedure, COMPLAINTS AGAINST PERSONNEL.

6. If a member or employee receives a complaint, he/she shall:

a. Not discourage or deter complainants from exercising their right to complain to the Department or the CPRB;

b. Request a supervisor to respond to the scene to take the complaint;

If the complainant refuses or is unable to wait for a supervisor, the member or employee shall:

1) Make a reasonable attempt to obtain the complainant's name and contact information, the nature of the complaint, and the identity of the personnel involved;

2) Provide the complainant with an OPD Informational Business Card (IBC) and Complaint Form with his/her name, serial number and CAD Incident Number;

3) Enter a CAD notation to the call; and

4) Use the Radio Disposition Code of "IBC" (Informational Business Card)

c. Take care to maintain the confidentiality of Internal Affairs and investigative records, and maintain all related material in a secure location; and

d. Notify and provide his/her supervisor with all information obtained from the complainant as soon as practical.

*Charles A. Gruber Consulting, Inc.*                    35

TYSON- COH Resp. to 2nd RFP
GRUBER 01424

  e.  In the absence of an immediate supervisor, the employee or department member shall contact another supervisor or command officer within their Division, or Internal Affairs Intake, as soon as is reasonable given the circumstances of the complaint/allegation. (If IAD Intake is advised, the employee or member shall ensure their chain of command is notified as soon as practical.)

7. If a member or employee is unsure whether a citizen wishes to make a complaint, he/she shall:

  a.  Not discourage or deter citizens from exercising their right to complain to the Department or the CPRB;

  b.  Ask clarifying questions, including but not limited to:

    1)  Would you like to speak to a supervisor?

    2)  Do you want to make a complaint?

  c.  Provide the citizen with an OPD Informational Business Card and/or Complaint Form with his/her name, serial number and CAD Incident Number;

  d.  Enter a CAD notation to the call; and

  e.  Use the Radio Disposition Code of "IBC" (Informational Business Card)

8. Supervisors, commanders, and managers may offer the Informal Complaint Resolution (ICR) process to a complainant as a means to resolve misconduct complaints of Class II misconduct that do not indicate a pattern of misconduct, in accordance with the provisions of, INFORMAL COMPLAINT RESOLUTION PROCESS.

9. Supervisors, commanders, and managers who discover Class II misconduct during the normal course of supervision, that does not indicate a pattern of misconduct, may address the Class II misconduct through non-disciplinary corrective action by a supervisor/manager.

*Charles A. Gruber Consulting, Inc.*    36

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01425**

Any member or employee who has a reasonable suspicion that any law enforcement personnel, or a member or employee of the Department is involved in criminal misconduct, rising to the level of a felony or serious misdemeanor, shall comply with the provisions of Departmental General Orders.

10.   Immediate Notifications

   a.   The listed events shall require notification to the IAD Commander and the COP, or designee as soon as practical, but in no case more than 24 hours after discovery of the allegation:

      1)   The arrest of any OPD employee or member;

      2)   Any Class 1 MOR allegation against a civilian manager or sworn commander;

      3)   A complaint of a serious nature as to require some form of immediate action (e.g. emergency suspension, administrative leave, temporary reassignment, etc);

      4)   Misconduct likely to generate unusual public interest.

   b.   Other Department and City personnel shall be notified in accordance with the provisions of, NOTIFICATIONS TO CHIEF OF POLICE, DEPUTY CHIEFS, CITY MANAGER, CITY ATTORNEY AND FAMILIES.

11.   Complaints received by the Communications Division shall be processed in accordance with the provisions of Communications Division Policy and Procedure, COMPLAINTS AGAINST PERSONNEL.

12.   Upon notification of a complaint, the Communications Division shall have the member/employee's Supervisor contact the complainant.  If the member's assigned supervisor is not on duty and no other supervisor from the member's unit is on-duty, a Patrol Supervisor will be assigned to contact the complainant.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01426**

13.     Upon receipt of a complaint, a Supervisor shall:

a.      Conduct a Preliminary Inquiry (PI) as outlined in Section IV.

Prepare a Complaint Memorandum detailing the steps taken and additional information obtained during the PI and ensure all complaint-related documentation is forwarded to the IAD via his/her First-level Commander/Manager. (The first level commander/manager shall ensure, as is reasonable, that witnesses are identified, and that all available evidence is collected and documented.)

b.      Ensure evidence is processed in accordance with the provisions of DEPOSITING PROPERTY AND EVIDENCE and IAD is advised of any evidence that has been collected; and

c.      After contacting or attempting to contact the complainant, advise the Communications Division Supervisor of the time of contact (or the attempt to contact) with the complainant, the complainant's last/first name, and the disposition of the complaint. Dispositions shall include the following:

1)      Initiated Preliminary Inquiry;

2)      Unable to Contact (UTC); or

3)      Other (the Communication Division Supervisor shall detail the action taken in the IAD Daily Incident Log).

14.     Upon notification by the Patrol Supervisor, the Watch Commander shall determine, based on the severity of the allegation:

a.      Whether the complaint requires the immediate notification of the IAD or CID; or

b.      Whether to order the supervisor or a commander to resume the preliminary inquiry.

15.     Ensure all documentation (including complaints resolved by ICR) is delivered to the IAD.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01427**

16.    The supervisor, commander, or manager of a unit outside of Patrol who is notified of a complaint shall ensure his/her immediate superior (if necessary) is notified on the day the complaint was received.

17.    Complainants shall be provided with a copy of their statement and a copy of the completed Complaint Form upon request.

B.    Processing Complaints

1.    IAD shall:

   a.    Enter information in the IAD Complaint Database;

   b.    If necessary, contact the complainant to determine the nature, scope, severity of the complaint, and to identify potential witnesses and/or evidence as quickly as possible;

   c.    If the complainant was given a CAD Incident Number (temporary tracking number), verify the number and provide the complainant with either an IAD Intake or Case Number, whichever is appropriate.

2.    The IAD Commander shall:

   a.    Ensure complaints made directly to IAD or received from other organizational units [e.g., Patrol Division, Communications Division, CID investigator, or directly from the Management-level Liaison (MLL) or the MLL Monthly Report] are processed and assigned to a Bureau or Division for investigation or to an IAD investigator;

   b.    Review and determine if the recommended administrative disposition is appropriate, if necessary;

   c.    Ensure the following processing tasks are completed:

      1)    All contacts are assigned an IAD Intake Number or an IAD Case Number, whichever is appropriate;

      2)    Create a Control File;

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01428**

3)   Ensure the Complaint Investigation Report (CIR) is permanently maintained in the case file;

4)   Determine the complaint classification (Class I or II) based on the alleged offense or make an assessment and advise if the allegation meets the criteria for the ICR process;

5)   Tentatively identify involved personnel;

6)   Determine whether the investigation is to be handled by an IAD or division-level investigator;

7)   Calculate the due date in accordance with the provisions of this order;

8)   Ensure all necessary information, including due dates and extensions, are documented in State and entered into the appropriate IAD database;

9)   The investigative file is hand-delivered to the appropriate Bureau Deputy Chief/Director for assignment; and

10)  Ensure a CIR is prepared and a copy is forwarded to the subject member or employee, his/her immediate supervisor, and first-level commander.

## IV.   PRELIMINARY INQUIRY

A Preliminary Inquiry (PI) shall be completed on all complaints upon receipt by a supervisor or IAD intake personnel. The purpose of the PI is for the assigned investigator to do a preliminary investigation within 14 calendar days of receiving the complaint and come to one of four recommendations as to how the complaint should be handled.

A.   Investigative Steps

Minimum steps to be taken in a PI include but are not limited to:

1.   Obtain a briefing by directly involved members and employees;

2.   Interview the complainant to determine the nature of the complaint;

3.   Take a recorded statement from the complainant;

*Charles A. Gruber Consulting, Inc.*                    40

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01429**

4.     Visit the scene of the incident, if feasible, to look for evidence and canvass for potential witnesses;

5.     Interview witnesses, if any, and take recorded statements, if appropriate;

6.     Explain relevant policy, procedure and governing laws to the complainant, if applicable;

7.     Review PDRD recordings;

8.     Confer with first-level commander/manager regarding recommendations and best course of action;

9.     Administrative Responsibilities:

    a.     Contact the Communications Division and request a CAD Incident Number, if one has not already been provided, which shall serve as a temporary tracking number. The Communications Division shall record the request on the IAD Daily Incident Log in accordance with Communications Division Policy and Procedure, COMPLAINTS AGAINST PERSONNEL;

    b.     Inform the complainant of his/her right to make a complaint with the Department and/or the CPRB;

    c.     Provide the complainant with a Complaint Packet which includes the complaint and release forms, and assist in the completion of the forms if necessary;

    d.     Provide the complainant with the CAD Incident Number (temporary tracking number); and

    e.     Take care to maintain the confidentiality of Internal Affairs and investigative records, and maintain all related material in a secure location.

B.     Recommendation

Make one of below Recommendations on further course of action:

*Charles A. Gruber Consulting, Inc.*     41

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01430**

1.      **Further Investigate:**

A misconduct complaint requiring further investigation beyond
steps already completed in the Preliminary Inquiry.

2.      **Handle at Supervisor Level:**

a.      Alleged Class II offense, which does not indicate a
pattern of misconduct as specified in discovered during
the course of the Preliminary Inquiry;

b.      The complainant is agreeable to ICR process in
accordance with the provisions of INFORMAL
COMPLAINT RESOLUTION PROCESS.

3.      **Administrative Closure:**

a.      Complainant wishes to withdraw the complaint and an
IAD Commander has determined there is no reason to
continue the investigation;

b.      Complaint lacks specificity and complainant refuses
or is unable to provide further clarification necessary
to investigate the complaint;

c.      Subject not employed by OPD at the time of the incident;

d.      The subject is no longer employed by OPD and an
IAD Commander has determined that there is no
reason to continue the investigation;

e.      Complainant fails to articulate an act or omission
which, if substantiated, would constitute an *MOR*
violation; or

f.      Complaint is limited to a California Vehicle Code
citation and/or a tow, where there is no other allegation
of misconduct, in which case the complainant shall be
referred to the appropriate competent authority (e.g.,
Traffic Court, Tow Hearing).

g.      Complaint involves an employee or member alleging
that a fellow employee or member has committed a
Class II offense, there is no pattern of similar
misconduct, and an IAD Commander has determined
that the matter does not warrant further investigation;

**TYSON- COH Resp. to 2nd RFP
GRUBER 01431**

       h.      Complaint's allegation is clearly without merit (e.g., frivolous

       i.      Service Complaints.

4.      Summary Finding:

A Summary Finding is an abbreviated internal investigation in which a finding can be reached without conducting a full formal internal investigation because the correct finding can be determined with no or minimal follow-up and based on the existing documentation, evidence, statements, and crime information data (e.g., Offense Report, Use of Force Report, video or digital recordings, complainant's statement, radio purge, LRMS records.).

       a.      The investigator shall consult and receive authorization from his/her first-level commander/manager BEFORE submitting a Summary Finding Memorandum.

       b.      The investigator shall complete and forward a Recusal form immediately upon authorization of a Summary Finding Memorandum.

C.    **Complaint Memorandum:**

At the conclusion of the PI, the supervisor or IAD intake officer shall complete a Complaint Memorandum which minimally includes:

1.      Summary of Complaint.

2.      Investigative steps taken.

3.      Case File Recommendation as covered in Section IV.B (if recommendation is a Summary Finding, the Complaint Memorandum shall be considered the Report of Investigation upon approval of the summary finding.  Additionally, if the recommendation is for a summary finding, credibility assessments are not required to be included.)

**TYSON- COH Resp. to 2nd RFP
GRUBER 01432**

D.   **PI Administrative Review:**

1.   The investigator's first level commander/manager shall review the Complaint Memorandum Form and other pertinent documents for accuracy, completeness, quality, and the appropriateness of the recommendation and/or resolution and either:

    a.   Concur with the investigator's recommendation and/or resolution:

        1)   Endorse the Complaint Memorandum; and

        2)   Ensure the completed and endorsed Complaint Memorandum is delivered directly to the IAD for review; **or**

    b.   Disagree with the investigator's recommendation and/or resolution:

        1)   Prepare and attach a memorandum to the Complaint Memorandum detailing the reasons for the disagreement and deliver to the IAD;

        2)   The memorandum may include recommendations such as:

            a)   Initiating a formal investigation;

            b)   Developing a proposed training outline for the subject member/employee;

            c)   Taking alternative non-disciplinary corrective action with the member/employee;

            d)   Taking immediate corrective action to address a service complaint.

        3)   Alternative recommendations for non-disciplinary corrective action shall be based on historical [last five (5) years] data on the subject member/employee to include:

            a)   Nature of same or similar complaints;

            b)   Total number of complaints;

*Charles A. Gruber Consulting, Inc.*                          44

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01433**

     c)    Frequency of complaints; and

     d)    Pattern of misconduct.

4)    Alternative recommendations regarding service complaints shall be based on:

     a)    Common practices;

     b)    Best practices; and/or

     c)    Past or current practices which serve the best interests of the Department.

2.    The first-level commander/manager shall ensure the completed and reviewed Complaint Memorandum (including any dissenting memoranda) is hand-delivered to the IAD within 7 calendar days.

3.    The IAD Commander or designee shall make the final decision regarding any dispute, discrepancy, or the appropriateness of the recommendation and/or resolution.

## V.    DUE DATES AND TIMELINES

A.    Due Dates

1.    Bureau Deputy Chiefs/Director shall be responsible for tracking the progress of internal investigations and ensuring compliance with internal due dates within his/her bureau and the overall due date assigned by the IAD.

2.    The IAD Commander shall ensure the overall Investigative and Administrative Review due dates are calculated and monitored properly. Due dates (including due date extensions) shall be entered in the CAL of case files, and the appropriate IAD database.

B.    Timeline Calculations

1.    IAD Investigations

IAD investigations shall be completed, reviewed, and approved within 180 days unless approved by the IAD commander.

*Charles A. Gruber Consulting, Inc.*    45

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01434**

a.    Investigations shall be completed within due dates established by IAD.

b.    In cases with a sustained finding, the discipline recommendation process shall be completed within 30 calendar days of the sustained finding.

2.    Division-level Investigations and Administrative Review

Division-level investigations shall be completed, reviewed through the appropriate IAD chain-of-review, and ready for approval within 180 days of the IAD Intake Date (except when an extension has been requested and approved) in accordance with the following timelines:

a.    Investigations shall be completed within due dates established by IAD.

b.    In cases with a sustained finding, the discipline recommendation process shall be completed within 30 calendar days of the sustained finding.

## VI.   INVESTIGATION OF COMPLAINTS

A.    Class I offenses shall be investigated by IAD and Class II offenses shall be investigated or resolved at the division-level unless otherwise directed by the COP, Assistant Chief of Police, Acting Chief of Police, or Deputy Chief of the Bureau of Risk Management.  (A Preliminary Inquiry does not constitute an internal investigation.)

B.    All internal investigations shall be assigned to investigators at least one rank higher than the subject officer or employee, unless otherwise directed by the COP or designee.  If the investigation is not assigned to a higher ranking investigator, in all cases, the investigation shall be overseen by an individual at least one rank higher than the subject officer or employee. In all cases, an individual at least one rank higher than the subject officer or employee shall conduct the interview of the subject officer or employee.

C.    Internal investigations shall be handled separately and not delayed, halted, or modified because the underlying matter is in civil litigation, unless such delay is specifically authorized in writing by the COP or designee. This applies even if the IA case is tolling pursuant to State Government.

**TYSON- COH Resp. to 2nd RFP
GRUBER 01435**

1.     If the COP determines that concurrent civil litigation is likely to yield additional information relevant to an internal investigation, he/she may hold the findings of the internal investigation in abeyance. Such delay shall last no longer than necessary to obtain the relevant information.

2.     The COP or designee shall ensure the investigation continues on all areas of an internal investigation.

D.     Administrative Investigative files shall be hand-delivered from one organizational unit to another.

E.     The appropriate Bureau Deputy Chief/Director shall ensure that bureau investigators are assigned for all division-level investigations.

F.     Bureau Deputy Chiefs/Director shall be responsible for developing and implementing bureau procedures for the following:

1.     Documenting the receipt of investigative files from IAD in a database or log, and

2.     Assigning and tracking the status (to include due dates and extensions) of division-level investigations and administrative review; and

3.     Ensuring reviewed and approved **original** investigations, including all documents (reports, developed photos, statements) are hand- delivered to or picked up by IAD within 24 hours after approval, excluding weekends and/or holidays. IAD shall be notified for pick- up.

G.     Personnel shall be prohibited from conducting the internal investigation if he/she was directly involved in the incident or if conditions exist between any of the involved parties which might lead to a perception of bias, including, but not limited to:

1.     Family relationship;

2.     Outside business relationship;

3.     Romantic relationship;

4.     Personal friendship; or

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01436**

5.  Close work relationship (to be determined on a case-by-case basis.)

An assigned investigator shall disclose any relationship which could be perceived to compromise the investigative process to the first-line commander, through his/her supervisor, prior to the start of an internal investigation.

The commander shall make a decision as to whether the perception is justified and reassign the investigation, if necessary, and document the decision, in writing, on the memorandum. The memorandum shall be retained in the case file.

H.  In order to preserve the integrity of the investigation, the supervisor, commander, or manager shall take immediate action when required (i.e., emergency suspension, or temporary reassignment). The IAD Commander and the Bureau Deputy Chief/Director shall be notified of the action and the affected personnel, regardless of the hour of the day. The Deputy Chief/Director/ Captain of CID shall ensure the Office of the Chief is notified without delay.  (If time affords and the situation allows, consideration should be given to discussing the circumstances with executive personnel and city subject-matter-experts prior to implementing the action.)

I.  Commanders or managers shall promptly designate staff to complete an internal investigation and/or the administrative review process by the assigned due dates.

J.  The IAD Commander shall evaluate and identify when an unusual proliferation of cases and/or workload prevents IAD from adhering to the timeliness standards outlined in this order. The IAD Commander shall submit a written proposal to the COP with recommendations to address the issues.

Additionally, the IAD Commander shall confer with the COP to discuss and, if practical, implement a solution(s) to the problem such as:

1.  Evaluating the need to extend due dates;

2.  Redistribution of workload;

3.  Additional resources; and

4.  Staffing increases, such as:

a.  Temporary/permanent transfers; and

*Charles A. Gruber, Inc.*                                     48

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01437**

        b.     Assignment of investigations to command staff.

K.     The IAD Commander shall closely monitor and advise the COP of the effectiveness of the implemented solutions.

L.     The IAD Commander or the Bureau Deputy Chief/Director shall add resources or reassign the investigation when the absence of an assigned investigator, due to illness, injury, family medical leave, or other unanticipated leave of absence, may affect the investigator's ability to complete the investigation by the assigned due date.

M.     (IAD Intake and/or Investigative personnel shall ensure their chain of command is notified if for any reason an absence from work will result in negatively impacting the appropriate and timely investigation of assigned cases.)

N.     Commanders and managers shall closely monitor compliance of assigned due dates, requests for extensions, and take corrective action, when necessary, to address patterns of abuse.

## VII.   REVIEW OF INVESTIGATIONS

Internal investigations shall be hand-delivered from one organizational unit to another, and between each level of review.  Interval investigations or copies of same, at the Division level, shall not be retained at the Division level.  All records/documents shall be returned and retained in accordance with law by the IAD only.

A.     IAD Investigations

     1.     IAD Commander Review

          The IAD Commander shall:

          a.     Review the IAD investigation for completeness and quality and approve or disapprove investigations by IAD personnel;

          b.     Return incomplete or unsatisfactory investigations to the IAD investigator for revision and/or further investigation, as necessary;

          c.     Ensure the contents of the Investigative File have been merged with the Control File; and

          d.     Approve and forward approved IAD investigations to the COP or designee for review and/or approval.

B.     Division-level Investigations

**TYSON- COH Resp. to 2nd RFP
GRUBER 01438**

1.  Upon completion of a division-level investigation, the investigator shall document in the Chronicle Activity Log (CAL) that he/she has:

    Hand-delivered the investigative file to his/her immediate superior (first-level commander/manager) for administrative review.

2.  Administrative Review

    a.  The chain-of-review shall commence with the investigator's first-level commander/manager, followed by the division commander and then to the IAD Commander or designee who shall review all division-level investigative files.

    b.  A first-level commander/manager shall not participate in the administrative review process if the first-level commander/manager is involved (i.e., as a subject, witness, or ordered the activity) in the incident under investigation and shall recuse themselves from the process.

    c.  If the subject's assigned supervisor at the time of the alleged incident was also the assigned investigator, AND there is a Sustained finding; the first-level commander/manager shall complete the Member/Employee Accountability review of the incident including any additional investigation necessary to make that determination.

        Incomplete or unsatisfactory investigations shall be corrected and/or returned for further investigation, as necessary.

    d.  The IAD Commander or designee shall review and endorse division-level investigations for completeness and quality **AFTER** the administrative review.

    e.  The IAD shall confer with the appropriate investigator regarding incomplete or unsatisfactory investigations. The investigative file shall be returned to the investigator for correction. The Bureau Deputy

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01439**

Chief/Director shall ensure revision and/or further investigation complies with the timelines provided in this order.

## VIII.   DUE DATE EXTENSIONS AND REQUESTS

A.   Due Date Extensions

1.   Failure to meet due dates as a result of poor time management or other poor performance problems shall be addressed through appropriate corrective actions.

2.   If an IAD investigation cannot be completed **BY** the assigned due date, the investigator shall seek **PRIOR** written approval for a due date extension from the IAD Commander or designee in accordance with the provisions of Part IX, B of this order. The investigator shall specify the length of time needed in the request.

3.   If a division-level investigation cannot be completed **BY** the assigned due date, the investigator shall seek **PRIOR** written approval for up to a 30 calendar day due date extension from an IAD Commander in accordance with the provisions of Part VII, B of this order. The investigator shall specify the length of time needed in the request.

4.   Extensions for division-level investigations beyond 30 calendar days shall require the prior written approval of the COP or designee.

5.   Only the COP may approve an extension beyond one year from the 3304 start date based on the provisions enumerated in G.C. 3304. B.

B.   Request Procedures for Due Date Extensions

1.   Investigators shall prepare and submit via email or memorandum to an IAD Commander (for division-level investigations) or designee (for IAD investigations) for all requests for a due date extension **BY** the assigned due date. The request shall detail the reason(s) and justification for the extension.

2.   Investigators shall advise their superior as soon as possible of ancillary duties that may prevent timely completion of an investigation.

C.   Approved Requests

1.   Extension requests shall be reviewed by the appropriate authority.

*Charles A. Gruber, Inc.*                                                        51

**TYSON- COH Resp. to 2nd RFP
GRUBER 01440**

    2.    A copy of the request approval shall be placed in the investigative file.

## IX.   GENERAL POLICY

A.    IAD Intake shall be located in a dedicated facility removed from the Police Administration Building and establish business hours that facilitate in- person complaint intake with the approval of the COP.

B.    The complaint pamphlet, *Your Guide to Filing a Complaint Against the Police* shall be translated in accordance with City policy.

C.    Members and employees shall keep a supply of the complaint pamphlet, *Your Guide to Filing a Complaint Against the Police*) and Informational Business cards in their Departmental vehicles at all times while on duty and provide the complaint pamphlet to any person requesting to file a complaint or upon request.

D.    IAD shall create, maintain, and ensure that guidelines for filing misconduct complaints are prominently displayed at designated City or municipal facilities and ensure such facilities have an adequate supply of complaint pamphlets.

By order of

Chief of Police                Date Signed:

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01441**

**Addendum 2**

I.  COMMUNITY MEDIATION PROGRAM
    A.  <u>Purpose</u>

        To resolve disputes and concerns between complainants and Pasadena Police Department employees through the mediation process.

        1.  <u>Definition</u> –
        Mediation is a voluntary process designed to resolve disputes through negotiation and constructive communication with the assistance of a trained neutral party mediator. It is an informal, non-disciplinary and non-adversarial process, agreed to by both the complainant(s) and member(s) of the Pasadena Police Department

        2.  Objectives

         •  To increase the satisfaction of community and Department members in the resolution of the public's complaints;

         •  To foster understanding and open communication between parties in a neutral setting;

         •  To promote effective police/community partnerships, and

         •  To develop problem-solving opportunities.

    B.  <u>Procedures</u>

        1.  The Administrative Services lieutenant will evaluate complaints to determine if they are eligible for mediation. Complaints eligible for mediation will be given a mediation case number (i.e., 00-000M). The Administrative Services lieutenant will evaluate the complaint based upon the case and Department member eligibility, and will confer with the employee's division commander.

          a.Complaints with the following allegations should be considered for mediation:
            i.   Procedure
            ii.  Service
            iii. Courtesy

*Charles A. Gruber, Inc.*        53

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01442**

    iv.   Tactics

   b. Complaints with the following allegations are generally inappropriate for mediation:
    i.   Force
    ii.   Arrests
    iii.   Slurs
    iv.   Criminal Conduct.

2. Employee eligibility – All personnel of the Pasadena Police Department are eligible for mediation. In determining eligibility, the Administrative Services Section will consider employees' previous mediations and the nature of the present allegation. Generally, employees may participate in up to three mediations in a calendar year.

C. <u>Mediation Process</u>

1. Once a complaint is determined to be eligible for mediation, the Administrative Services lieutenant will contact the department employee, and the Dispute Resolution Service (DRS) will contact the complainant, to determine if both are willing to participate. If so, the lieutenant will forward the intake form to DRS.

2. The Administrative Services lieutenant, or his designee, will contact the Department employee to facilitate the mediation. DRS will contact the complainant to facilitate the mediation. DRS will ensure that professionally trained and experienced mediators will be used.

3. The scheduling of the mediation will take into account the mediators, complainants and employees' work schedule. Every effort will be made to schedule the mediation during a time convenient for the complainant. If the time does not fall within the employee's normal working hours, employees will be given overtime compensation in accordance with their Memorandum of Understanding. Every effort will be made to schedule and complete the mediation within 30 calendar days from the time a case is deemed suitable.

4. To ensure neutrality, the mediation will take place at a location other than a police department facility.

<em>Charles A. Gruber, Inc.</em>

      54

**TYSON- COH Resp. to 2nd RFP
GRUBER 01443**

5. Department members will attend mediation in full uniform, appropriate business attire, or a police department polo shirt and slacks.

6. Once a Department member accepts a date and time for mediation, that member must appear on the scheduled date and time unless he or she received notification of a schedule change from the Administrative Services lieutenant or his or her designee.

7. Employees who cannot attend mediation due to an illness or other emergency must notify the Administrative Services Section lieutenant or sergeant as soon as it is evident that they will not be able to appear. If the illness or emergency precludes the employee from making this notification, the employee's supervisor must do so.

8. The complainant and the officer will sign the Confidentiality Agreement and Consent to Mediate document before the mediation commences.

9. Upon concluding a mediation session, the mediator will deliver a Statement of Outcome to the Professional Standards Unit, categorizing the resolution as one of the following:

    a. Agreement
    b. Non-agreement
    c. Partial agreement.

10. Mediations are confidential and tape-recording is prohibited.

11. There shall be no appeal of the mediation agreement.

D. <u>Resolution</u>

1. If the citizen complaint is successfully mediated, the complainant will agree to authorize the Professional Standards Unit to "officially" withdraw the complaint. The case will then be logged and tracked by the assigned mediation "M" number. Both parties will receive a letter outlining their successful mediation and declaring the issue(s) fully resolved.

2. The mediation file shall contain the following forms: Complaint Control Form, Confidentiality Agreement, Consent to Mediate

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01444**

Form, and the Statement of Outcome. Mediation files are confidential and governed by California Evidence Code Sections 1115 – 1128. Mediation files will be maintained in the Chief's Office for one year, commencing from the date of the mediation, before being removed and destroyed. Mediation resolutions contained in the Personnel Performance Database will be deleted from the database after one year from the date of the mediation.

3. Pursuant to P.C. 832.7, the original complaints will be maintained in the Professional Standards Unit for five years. The disposition for the original complaint will state that it was resolved through the mediation process.

4. The confidentiality of mediations shall not preclude the Professional Standards Unit from capturing general statistical information necessary to evaluate the effectiveness of the mediation process.

5. If a case is successfully mediated, the original complaint will not be used against the officer for any disciplinary purposes, transfers, or promotions.

6. If a mediation is either unsuccessful, or during the course of the mediation either party requests a formal investigation, the case will be returned to the Professional Standards Unit for investigation. If an investigation occurs after mediation is attempted, no party will be permitted to refer to any statements made during the mediation process.

7. After the mediation program has been in effect for twelve months, the Administrative Services lieutenant will evaluate the effectiveness of the program in a written report to the Chief of Police. The report will be based on data collected from complainants, mediators, and police officers that participated in the mediation process.

By Order of

_____
Chief of Police

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01445**

# Pasadena Police Community Mediation Program

*MEDIATION is a confidential and voluntary process in which an impartial third party facilitates communication and negotiation between persons in dispute to assist them in reaching a voluntary agreement.*

## Goals of the Program

- Provide a forum for the community and the police to discuss pertinent issues.

- Provide an opportunity for the community and the police to work collaboratively rather than treat each other as adversaries.

- Promote greater understanding between the police department and the community which it serves.



## FAQs

*1. Who is involved?*
Western Justice Center, mediators who are members of the Southern California Mediation Association, employees of the Pasadena Police Department, and community members.

*2. What kind of issues are mediated?*
Complaints dealing with procedure, service, courtesy, and tactics can be considered.

*3. Who will serve as the mediator?*
Mediators are neutral third parties who have received extensive training to help resolve disputes.

*4. When and where will mediations be held?*
Mediations will be held in a neutral location at a time that is convenient for all parties.

## How do you use the program?

Step 1: When you go to the police department to make a complaint, indicate to the officer taking the complaint that you want to use mediation. If your complaint is one that is appropriate for mediation, s/he will give you the necessary forms to fill out OR you can contact Western Justice Center directly to schedule a mediation without making a complaint. To contact Western Justice Center, call 626-584-7494 or send an email to info@westernjustice.org.

Step 2: You will be contacted by Western Justice Center, the organization that will arrange the date, place and time of the mediation.

Step 3: You attend the mediation, and, if the issues which caused you to file the complaint are resolved, then you withdraw the complaint.

Step 4: If your issues are not resolved, your complaint is reviewed through the Internal Investigations.



**Western Justice Center**
*Resolving conflict. Peacefully.*

*! Translation services are available during mediations. Immigration status is not relevant to mediations and there is no inquiry about immigration status. All identifying information is kept strictly confidential. The PPD employee is only informed of the complaint and facts related to the specific incident that is being mediated. During mediation, the PPD employee is not given any personal information about the reporting party. If you have any questions, please contact the Western Justice Center.*

*Charles A. Gruber, Inc.*                57

**TYSON- COH Resp. to 2nd RFP
GRUBER 01446**



The Pasadena Police
Employee Mediation
Program

MEDIATION is a confidential and voluntary process in which an impartial third party facilitates communication and negotiation between persons in dispute to assist them in reaching a voluntary resolution.

## Goals of the Employee Mediation Program

- Provide a forum for employees of the police department in dispute with each other to discuss pertinent issues.

- Provide an opportunity for these employees to work collaboratively on the issues rather than treat each other as adversaries.

- Promote greater understanding and improve relationships between employees so they can focus on serving the Pasadena community.

## FAQs

*1. Who is involved?*
Western Justice Center, mediators who are members of the Southern California Mediation Association (SCMA), and employees of the Pasadena Police Department.

*2. Who will serve as the mediator?*
Mediators are neutral third parties who have received extensive training to help resolve disputes.

*3. When and where will mediations be held?*
Mediations will be held in a neutral location at a time that is convenient for all parties.



### Scheduling a mediation:

- If you are in a dispute with other employees, you may request a mediation directly through Western Justice Center with no supervisor involvement.

- A supervisor may offer mediation as an alternative way to resolve a dispute either before, during or after an employee makes a complaint against another employee.

Employee disputes on issues such as sexual harassment or hostile work environment are not eligible for mediation.

Western Justice Center will keep the specific details of the mediation confidential.

*For more information about the process or to schedule a mediation, contact Western Justice Center at 626-584-7494 or send an email to info@westernjustice.org. You may also contact the Pasadena Police Department, Administrative Services Lieutenant at 626-744-6724.*

**WJC**
**Western Justice Center**
*Resolving conflict. Peacefully.*

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01447**

INTERNAL  AFFAIRS  DIVISION

SAMPLE  POLICY  AND  PROCEDURE

INTAKE  PROCESS  MANUAL

TABLE OF CONTENTS

I.      GENERAL RESPONSIBILITES
            Intake Process
            Due Diligence
            Create a Control File
            Control File Identification
            Create an IAD Case Folder

II.     INTAKE BY PHONE (INCLUDING COMPLAINT LINE)

III.    INTAKE BY LEGAL CLAIM .

IV.     INTAKE FROM CPRB....

V.      INTAKE IN-PERSON

VI.     INTAKE OF COMPLAINTS BY WRITTEN CORRESPONDENCE

VII.    INTAKE RESULTING FROM AN IAD CALL-OUT .

VIII.   INTAKE PER THE IAD DAILY INCIDENT LOG

IX.     CONFIDENTIAL AND ANONYMOUS COMPLAINTS

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01448**

I.     INTAKE PROCESS GENERAL  RESPONSIBILITES

    A.     The Intake process minimally includes the following:

        1.     Receive complaints from any source;

        2.     Verify and document complaint information;

        3.     Establish, research, and verify the complaint .

            a.     The date of incident shall be used as the "3304 Start Date."

            b.     An lAD Commander shall approve any other "3304 Start Date" due to:

                1)     An unknown incident date; or

                2)     When more than 30 calendar days has lapsed between the incident date and the date a person authorized to initiate a complaint investigation became aware of the complaint.

        4.     Notification to Intake Supervisor and IAD Investigative Section Commander of high profile, criminal or other complaint information likely to generate unusual public interest.

        The following shall be completed in the IAD Database, as appropriate:

            a.     "Criminal Case" check box – To be checked when a subject member/employee is a named suspect in a crime report.

            b.     "Criminal Referral" check box- To be checked whenever a referral is made to any investigative body.

                NOTE: Referrals FROM any investigative body does not require checking this box.

        5.     Contact complainants, as soon as possible, to determine the nature, scope, and severity of the complaint. Due diligence is required. An advisement shall be made whenever a phone line is being recorded.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01449**

6.      Due diligence is required when it is necessary to contact the complainant for a statement.

Use the following criteria to document due diligence in the Chronological Activity Log (CAL);

     a.      Phone calls – If no answer, more than one (1) attempt shall be made;

     b.      Certified U.S. Mail with a Return Receipt; and

     c.      Site visit- Leave a business card or contact letter.

**NOTE:** Some or all steps to contact the complainant may be skipped when the Intake Officer can articulate the step cannot be performed or the attempt would be fruitless.

7.      Identify *MOR* violation(s) and classify as a Class I or II in the lAD Complaint Database. The assigned MOR violation will be based on the totality of the information received during the intake process and not just based on the initial allegation(s) from the complainant.

8.      Link the allegation to an incident;

9.      Identify subject personnel and witnesses, if possible;

10.      Create a Control File to contain:

     a.      Complaint Form and/or other documentation received regarding complaint;

     b.      Complaint Investigation Report (CIR);

     c.      A Recusal Memorandum (Complete prior to the start of an internal investigation in accordance with TB V-T.1);

     d.      Investigative Notes Declaration (lAD Form-11);

     e.      Intake Checklist;

     f.      Printed Chronological Activity Log (CAL); and g.    Any

other pertinent documents.

11.      Control File Identification

The Control File shall be identified utilizing the following format:

*Charles A. Gruber, Inc.*          61

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01450**

     a.     Named complainant other than OPD

          lAD Case Number, (Complainant's Last Name, First Initial) and 3304 Start Date.

          Example: 07-1234 (Doe, J.) 01 Jan 07.

     b.     When OPD is the complainant:

          IAD Case Number, (Primary subject personnel's Last Name, First Initial) and 3304 Start Date. Example: 07-

          1234 (OPD-Doe, J.) 01 Jan 07.

B.     Create an IAD Case Folder (sub-directory) within the lAD Case Year on the IAD server.

          The identification protocol is:

          IAD Case Number-  (Complainant's Last Name, First Initial.).

          *Example:* 07-1234 (Doe, J.)

C.     Ensure electronic information (to include digital recordings and photos) is saved to the IAD server under the appropriate IAD Case Folder.

          The identification protocol is:

          Last Name, First Initial. yymmdd.xx (xx = The sequential number of the recording for that specific person.)

          Example: Smith, A. 051115.02 (Designates the second recording made for Smith on 15 Nov 05.)

D.     Ensure electronic information (to include digital recordings and photos) are copied onto a compact disk and included in the Control File at the conclusion of the intake process.

E.     Ensure information has been entered in the Task screen, if applicable.

          NOTE: When there is an allegation of misconduct involving a failure to support the lAD process, click on the NSA Task tab (in the lAD Complaint Database) and select "Task 16" from the drop-down list.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01451**

F.   When written notification is received regarding an *MOR* violation change
or adding or removing subject personnel, the Intake Officer shall:

    1.   Update the lAD Complaint Database within two (2) business days;
        and

    2.   Forward an Officer Complaint Notification Report via email to the affected personnel.

G.   Make a CAL entry for all investigative steps.

## II.   INTAKE BY PHONE (INCLUDING COMPLAINT LINE)

A.   Advise the caller that the Complaint Line is recorded.

B.   Upon receipt of a complaint, the Intake Officer shall search the lAD Complaint Database

    1.   If an entry is found in the database:

        a.   Open investigation (includes investigations assigned to Intake)

            1)   Advise and forward the information to the assigned investigator;
            2)   Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File;
            3)   Update the lAD Complaint Database, if necessary; and;
            4)   Make a CAL entry.

        b.   Closed investigation/No new pertinent information or allegation

            **1)**   Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;
            2)   Make a CAL entry.

        c.   Closed investigation/New information or allegation

            1)   Take a recorded statement, if necessary;
            2)   Advise the Intake Supervisor of the new information/allegation;

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01452**

3)      Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File;

4)      Update the IAD Complaint Database, if necessary; and;

5)      Make a CAL entry.

2.      If the entry is not in the database:

      a.      Enter the appropriate information into the lAD Complaint Database on the day received;

          1)      During contact with the complainant:

               a)      Advise the complainant that the phone line is recorded prior to taking a recorded statement.

               b)      Advise of right to file with CPRB;

               c)      Provide the IAD Case or Intake Number; and

               d)      Ascertain if the complainant has contacted any other Department personnel regarding the complaint (in order to verify the 3304 start date).

               e)      Advise and send the complainant a Complaint Packet (TF-3208).

          2)      Create a Control File

      b.      Attempt to locate appropriate documents to:

          1)      Link the complaint to an incident;

          2)      Identify witnesses; and

          3)      Identify personnel.

      c.      Evaluate and determine the nature of the information collected as to whether there is:

          1)      An allegation of an *MOR* violation;

          2)      Criminal violation;

          3)      Service Complaint;

          4)      No *MOR* violation; or

          5)      No jurisdiction.

C.      Send a Complaint Notification Report, as notification, via email to the subject officer, immediate supervisor, and first-level commander if there is an allegation of an *MOR* violation. Place a copy of the sent notification email in the Control File.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01453**

Supervisor or commander approval is required prior to sending a Complaint Notification Report for high profile, criminal, other complaint information likely to generate unusual public interest, or if doing so will compromise the investigation.

D.     Print and include the complaint history (CIR Index Log) of subject officer(s) in the Control File.

E.     Ensure any intake due date extension request is submitted for approval and included in the Control File.

F.     Make one of the following disposition recommendations in the CAL and assign one of the following identifying IAD numbers[1]:

     1.     Assign an IAD Case Number for the following:

         a.     Service Complaint – Informally resolved by ICR;

         b.     Service Complaint – Administrative Closure due to unsuccessful ICR and/or no benefit to the Department to continue any further;

         c.     Service Complaint – Forward to Chief of Police or designated bureau commander for review and follow-up;

         d.     Summary Finding – An abbreviated internal investigation in which a finding can be reached without conducting a formal internal investigation because a finding can be determined with no or minimal follow-up and based on the existing documentation, evidence, statements, and crime information data (e.g., Offense Report, Use of Force Report, video or digital recordings, complainant statement, radio purge, LRMS records).

         e.     For all IAD and Division-level investigations;

         f.     Informally Resolved – Misconduct complaint can be resolved through an ICR by Intake per M-3.1;

---

[1] Calls not entered into the IAD Complaint Database (e.g., calls for phone numbers, directions, or non-IAD related business) do not require an IAD Case or Intake Number.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01454**

    2.      Assign an IAD Intake Number for the following:

        a.      No *MOR* violation – When an allegation does not rise to the level of misconduct;

        b.      No jurisdiction - Subject of complaint was not employed by OPD at the time of the incident; or

        c.      Any other case, as directed by an IAD supervisor/commander.

G.      Enter the Intake Completion Date into the IAD Complaint Database. H.

Forward the Control File to the Intake Supervisor for review.

### III.    INTAKE BY LEGAL CLAIM

A.      Upon receipt, the Intake Supervisor or designee shall:

    1.      Review the legal claim;
    2.      Assign the legal claim to an Intake Officer; and
    3.      Ensure a copy of the legal claim is archived onto the IAD server.

B.      Intake Officer shall search the IAD Complaint Database:

    1.      If an entry, referring to the incident, is found in the database:

        a.      Open investigation (includes investigations assigned to Intake)

            I)      Advise and forward the information to the assigned investigator;
            2)      Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;
            3)      Update the IAD Complaint Database, if necessary; and;
            4)      Make a CAL entry.

        b.      Closed investigation/No new pertinent information or allegation

            1)      Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;
            2)      Make a CAL entry.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01455**

       1)     Take a recorded statement, if necessary;

       2)     Advise the Intake Supervisor of the new information/allegation;

       3}     Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;

       4)     Update the lAD Complaint Database, if necessary; and;

       5)     Make a CAL entry.

2.     If the entry is not in the database:

    a.     Enter the appropriate information into the lAD Complaint Database on the day received and ensure: the Legal Claim/Lawsuit box is checked and the information in the Legal Claim/Lawsuit pop-up screen is completed; and

         NOTE: If a complaint already exists in the lAD Complaint Database, update the entry with the appropriate information. DO NOT CREATE A DUPLICATE ENTRY.

    b.     Contact the complainant if the legal claim/lawsuit alleges misconduct which rises to the level of an *MOR* violation.

       1)     Upon contact with the complainant:

           a)     Advise the complainant that the phone line is recorded prior to taking a recorded statement.

           b)     Advise of right to file with CPRB;

           c)     Provide the lAD Case or Intake Number;

           d)     Ascertain if the complainant has contacted any other Department personnel regarding the complaint (in order to verify the 3304 start date).

           e)     Advise and send the complainant a Complaint Packet

       2)     Create a Control File

    c.     Attempt to locate appropriate documents to:

       1)     Link the complaint to an incident;

       2)     Identify witnesses; and

       3)     Identify personnel.

    d.     Evaluate and determine the nature of the information collected as to whether there is:

**TYSON- COH Resp. to 2nd RFP**

**GRUBER 01456**

1)     Violation;
2)     Service Complaint;
3)     No *MOR* violation; or
4)     No jurisdiction.

C.    Send a Complaint Notification Report, as notification, via email to the subject officer, immediate supervisor, and first-level commander if there is an allegation of an *MOR* violation. Place a copy of the sent notification email in the Control File.

       Supervisor or commander approval is required prior to sending a Complaint Notification Report for high profile, criminal, other complaint information likely to generate unusual public interest, or if doing so will compromise the investigation.

D.    Print and include the complaint history (CIR Index Log) of subject officer(s) in the Control File.

E.    Ensure any intake due date extension request is submitted for approval and included in the Control File.

F.    Make one of the following disposition recommendations in the CAL and assign one of the following identifying lAD numbers:

    I.    Assign an lAD Case Number for the following:

        a.    Service Complaint – Informally resolved by ICR;

            1)    Service Complaint – Administrative Closure due to unsuccessful ICR or no benefit to the Department to continue any further;

            2)    Service Complaint – Administrative Closure due to unsuccessful ICR or no benefit to the Department to continue any further;

            3)    Service Complaint – Forward to Chief of Police or designated Bureau Deputy Chief/Director for review and follow-up;

            4)    Summary Finding- An abbreviated internal investigation in which a finding can be reached without conducting a formal internal investigation because a finding can be determined with no or minimal follow-up and based on the existing documentation, evidence, statements, and crime information data (e.g., Offense Report, Use of Force Report, video or digital recordings, complainant

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01457**

litigation regarding the alleged misconduct;

    b.    Informally Resolved – Misconduct complaint can be resolved through an ICR by Intake per M-3.1;

2.    Assign an lAD Intake Number for the following:

    a.    No *MOR* violation- When an allegation does not rise to the level of misconduct;

    b.    No jurisdiction - Subject of b.Complaint was not employed by OPD at the time of the incident; or

    c.    Any other case, as directed by an lAD supervisor/commander.

G.    Enter the Intake Completion Date into the lAD Complaint Database.

H.    Forward the Control File to the Intake Supervisor for review.

V.    INTAKE FROM CPRB

A    Upon receipt of a complaint from the CPRB, the Intake Officer shall:

Search the lAD Complaint Database.

1.    If an entry, referring to the incident, is found in the database:

    a.    Open investigation (includes investigations assigned to Intake)

        1)    Advise and forward the information to the assigned investigator;
        2)    Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;
        3)    Update the lAD Complaint Database, if necessary; and;
        4)    Make a CAL entry.

    b.    Closed investigation/No new pertinent information or allegation

        1)    Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;
        2)    Make a CAL entry.

**TYSON- COH Resp. to 2nd RFP
GRUBER 01458**

        1)     Take a recorded statement, if necessary;

        2)     Advise the Intake Supervisor of the new information/allegation;

        3)     Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;

        4)     Update the IAD Complaint Database, if necessar and;

        4)     Make a CAL entry.

2.     If the entry is not in the database:

    a.     Enter the appropriate information into the IAD Complaint Database on the day received ensuring that;

        Ensure the CPRB box is checked and the information in the CPRB screen is completed.

    b.     Contact the complainant;

        1)     Upon contact with the complainant:

            a)     Advise the complainant that the phone line is recorded prior to taking a recorded statement.

            b)     Provide the IAD Case or Intake Number; and c) Ascertain if the complainant has contacted any other Department personnel regarding the complaint (in order to verify the 3304 start date).

            d)     Advise and send the complainant a Complaint Packet.

        2)     Create a Control File

    c.     Attempt to locate appropriate documents to:

        1)     Link the complaint to an incident;

        2)     Identify witnesses; and

        3)     Identify personnel.

    d.     Evaluate and determine the nature of the information collected as to whether there is:

        1)     An allegation of a *MOR* violation;

        2)     Criminal violation;

        3)     Service Complaint;

        4)     No *MOR* violation; or

        5)     No jurisdiction.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01459**

he assigned lAD Case or Intake Number and the date on which the complaint was received.

4.     Obtain all CPRB statements, if available, and any other pertinent documents.

**NOTE:** If a complaint already exists in the lAD Complaint Database, update the entry with the appropriate information. **DO NOT CREATE A DUPLICATE ENTRY.**

B.     Send a Complaint Notification Report as notification, via email to the subject officer, immediate supervisor, and first-level commander if there is an allegation of an *MOR* violation. Place a copy of the sent notification email in the Control File.

Supervisor or commander approval is required prior to sending a Complaint Notification Report for high profile, criminal, other complaint information likely to generate unusual public interest, or if doing so will compromise the investigation.

C.     Print and include the complaint history (CIR Index Log) of subject officer(s) in the Control File.

D.     Ensure any intake due date extension request is submitted for approval and included in the Control File.

E.     Make one of the following disposition recommendations in the CAL and assign one of the following identifying lAD numbers:

1.     Assign an lAD Case Number for the following:

    a.     Service Complaint – Informally resolved by ICR;

    b.     Service Complaint – Administrative Closure due to unsuccessful ICR or no benefit to the Department to continue any further;

    c.     Service Complaint – Forward to Chief of Police or designated bureau commander for review and follow-up;

    d.     Summary Finding – An abbreviated internal investigation in which a finding can be reached without conducting a formal internal investigation because a finding can be determined with no or minimal follow-up and based on the existing documentation, evidence, statements, and

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01460**

crime information data (e.g., Offense Report, Use of Force Report, video or digital recordings, complainant statement, radio purge, LRMS records)

e.  lAD or Division-level investigation regarding the alleged misconduct;

f.  Informally Resolved – Misconduct complaint can be resolved through an ICR by Intake per M-3.1);

2.  Assign an lAD Intake Number for the following:

a.  No *MOR* violation- When an allegation does not rise to the level of misconduct;

b.  No jurisdiction - Subject of complaint was not employed by OPD at the time of the incident; or

c.  Any other case, as directed by an lAD supervisor/commander.

F.  Enter the Intake Completion Date into the lAD Complaint Database.

G.  Forward the Control File to the Intake Supervisor for review.

## V.   INTAKE IN-PERSON

A.  Conduct an initial consultation to ascertain the circumstances of the complaint.

B.  Provide the complainant with the Complaint pamphlet and assist with the completion of the Complaint Form, if necessary.

C.  After the initial consultation, search the lAD Complaint Database;

1.  If an entry, referring to the incident, is found in the database:

a.  Open investigation (includes investigations assigned to Intake).

1)  Attempt to contact the assigned investigator;
2)  Conduct a recorded interview, if necessary;
3)  Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01461**

4)     Advise and forward the information to the assigned investigator;

5)     Update the lAD Complaint Database, if necessary; and;

6)     Make a CAL entry.

b.     Closed investigation/No new information pertinent to the case or no new allegation.

1)     Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and

2)     Make a CAL entry.

c.     Closed investigation/New information pertinent to the case or a new allegation.

1)     Take a recorded statement, if necessary;

2)     Advise the Intake Supervisor of the new information/allegation;

3)     Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;

4)     Update the lAD Complaint Database, if necessary; and

5)     Make a CAL entry.

2.     If the entry is not in the database (New complaint):

a.     The initial consultation with the complainant:

1)     Advise of right to file with CPRB;

2)     Provide the complainant with a Complaint Packet (TF-3208);

3)     Take a recorded statement, if possible;

4)     Provide the lAD Case or Intake Number; and

5)     Ascertain if the complainant has contacted any other Department personnel regarding the complaint (in order to verify the 3304 start date).

b.     Create a Control File

c.     Enter the appropriate information into the lAD Complaint Database on the day received;

d.     Attempt to locate appropriate documents to:

1)     Link the complaint to an incident;

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01462**

2)      Identify witnesses; and

3)      Identify personnel.

    e.     Evaluate and determine the nature of the information collected as to whether there is:

         1)      An allegation of a *MOR* violation;

         2)      Criminal violation;

         3)      Service Complaint';

         4)      No *MOR* violation; or

         5)      No jurisdiction.

D.     Send a Complaint Notification Report, as notification, via email to the subject officer, immediate supervisor, and first-level commander if there is an allegation of an *MOR* violation. Place a copy of the sent notification email in the Control File.

       Supervisor or commander approval is required prior to sending a Complaint Notification Report for high profile, criminal, other complaint information likely to generate unusual public interest, or if doing so will compromise the investigation.

E.     Print and include the complaint history (CIR Index Log) of subject officer(s) in the Control File.

F.     Ensure any intake due date extension request is submitted for approval and included in the Control File.

G.     Make one of the following disposition recommendations in the CAL and assign one of the following identifying lAD numbers:

    1.     Assign an lAD Case Number for the following:

       a.     Service Complaint – Informally resolved by ICR;

       b.     Service Complaint – Administrative Closure due to unsuccessful ICR or no benefit to the Department to continue any further;

       c.     Service Complaint – Forward to Chief of Police or designated bureau commander for review and follow-up;

       d.     Summary Finding –  An abbreviated internal investigation in which a finding can be reached without conducting a formal internal investigation because a finding can be determined with no or minimal follow-up and based on the existing documentation, evidence, statements, and crime

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01463**

information data (e.g., Offense Report, Use of Force Report, video or digital recordings, complainant statement, radio purge, LRMS records)

e.  lAD or Division-level investigation regarding the alleged misconduct;

f.  Informally Resolved – Misconduct complaint can be resolved through an ICR by Intake per M-3.1);

2.  Assign an lAD Intake Number for the following:

a.  No *MOR* violation – When an allegation does not rise to the level of misconduct;

b.  No jurisdiction - Subject of complaint was not employed by OPD at the time of the incident; or

c.  Any other case, as directed by an lAD supervisor/commander.

H.  Enter the Intake Completion Date into the lAD Complaint Database.

I.  Forward the Control File to the Intake Supervisor for review.


VI.  INTAKE OF COMPLAINTS BY WRITTEN CORRESPONDENCE

This section includes private person correspondence, risk management issues received through Use of Force Reports, internal memoranda, and the Management Level Liaison Monthly Report.

Upon receipt, the Intake Officer shall search the lAD Complaint Database:

A.  If an entry, referring to the incident, is found in the database:

1.  Open investigation (includes investigations assigned to Intake)

a.  Advise and forward the information to the assigned investigator;

b.  Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File;

c.  Update the lAD Complaint Database, if necessary; and

d.  Make a CAL entry.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01464**

2. Closed investigation/No new pertinent information or allegation a.

Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;
b. Make a CAL entry.

3. Closed investigation/New information or allegation

a. Take a recorded statement, if necessary;
b. Advise the Intake Supervisor of the new information/allegation;
c. Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;
d. Update the IAD Complaint Database, if necessary; and
e. Make a CAL entry.

B. If the entry is not in the database:

1. Enter the appropriate information into the IAD Complaint Database on the day received;

2. Contact the complainant;

a. Upon contact with the complainant:

1) Advise the complainant that the phone line is recorded prior to taking a recorded statement.
2) Advise of right to file with CPRB;
3) Provide the IAD Case or Intake Number;
4) Ascertain if the complainant has contacted any other Department personnel regarding the complaint (in order to verify the 3304 start date); and
5) Advise and send the complainant a Complaint Packet (TF-3208).

3. Create a Control File

4. Attempt to locate appropriate documents to:

a. Link the complaint to an incident;
b. Identify witnesses; and c. Identify personnel.

5. Evaluate and determine the nature of the information collected as to whether there is:

a. An allegation of an *MOR* violation;

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01465**

b.    Criminal violation;

c.    Service Complaint;

d.    No *MOR* violation; or e.    No jurisdiction.

C.    Ensure the RMM or MLL box in the lAD Complaint Database is checked, if appropriate, and the information is entered.

D.    Send a Complaint Notification Report, as notification, via email to the subject officer, immediate supervisor, and first-level commander if there is an allegation of an *MOR* violation. Place a copy of the sent notification email in the Control File.

Supervisor or commander approval is required prior to sending a Complaint Notification Report for high profile, criminal, other complaint information likely to generate unusual public interest, or if doing so will compromise the investigation.

E.    Print and include the complaint history (CIR Index Log) of subject officer(s) in the Control File.

F.    Ensure any intake due date extension request is submitted for approval and included in the Control File.

G.    Make one of the following disposition recommendations in the CAL and assign one of the following identifying lAD numbers:

1.    Assign an lAD Case Number for the following:

a.    Service Complaint – Informally resolved by ICR;

b.    Service Complaint – Administrative Closure due to unsuccessful ICR or no benefit to the Department to continue any further;

c.    Service Complaint – Forward to Chief of Police or designated bureau commander for review and follow-up;

d.    Summary Finding – An abbreviated internal investigation in which a finding can be reached without conducting a formal internal investigation because a finding can be determined with no or minimal follow-up and based on the existing documentation, evidence, statements, and crime information data (e.g., Offense Report, Use of Force Report, video or digital recordings, complainant statement, radio purge, LRMS records)

   e. lAD or Division-level investigation regarding the alleged misconduct;

   f. Informally Resolved – Misconduct complaint can be resolved through an ICR by Intake per M-3.1);

  2. Assign an lAD Intake Number for the following:

   a. No *MOR* violation – When an allegation does not rise to the level of misconduct;

   b. No jurisdiction - Subject of complaint was not employed by OPD at the time of the incident; or

   c. Any other case, as directed by an lAD supervisor/commander.

 H. Enter the Intake Completion Date into the lAD Complaint Database.

  Forward the Control File to the Intake Supervisor for review.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01467**

VII.    INTAKE RESULTING FROM AN lAD CALL-OUT

When the lAD is called-out to investigate misconduct, criminal conduct, a Level 1 Force or In-Custody Death (ICD) Incident, or a Vehicle Pursuit Related Death (VPRD), the assigned investigator shall confer and provide the Intake Officer with the pertinent information to be entered into the lAD Complaint Database.

The Intake Officer shall:

A.    Enter the appropriate information into the lAD Database:

B.    Provide the lAD investigator with the lAD Case Number;

C.    Create a Control File

D.    Confer with the assigned investigator to determine the nature of the information collected as to whether there is:

    1.    An allegation of an *MOR* violation;
    2.    Criminal violation; or
    3.    No *MOR* violation.

E.    Advise the assigned lAD investigator:

    1.    To email a Complaint Notification Report to the subject officer, immediate supervisor, and first-level commander if there is an allegation of an *MOR* violation;

    2.    To seek prior approval from an lAD commander for approval prior to sending a Complaint Notification Report for high profile, criminal, other complaint information likely to generate unusual public interest, or if doing so will compromise the investigation; and

    3.    To place a copy of the Officer Complaint Notification Report in the Control File.

F.    Enter the Intake Completion Date into the lAD Complaint Database.

G.    Forward the Control File to the Intake Supervisor for review.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01468**

VIII.  <u>INTAKE PER THE IAD DAILY INCIDENT LOG</u>

The IAD Daily Incident Log (hereafter referred to as Log) is prepared and forwarded by the Communications Division on a daily basis. The Log contains complaint or use of force incidents received by the Communications Division.

A.  The IAD Intake Supervisor or designee shall:

1.  Check the secure IAD e-mail inbox (opdiad@oaklandnet.com) each workday for the IAD Daily Incident Log.

2.  Notify the Communications Division Supervisor if a Log is not received or required information is missing.

3.  Review the Log and forward:

a.  Complaints to Intake Unit; or
b.  Use of force incidents to the IAD Administrative Unit.

4.  Ensure complaint documentation (e.g., ICR Form, Complaint Form, statement, and memorandum) is received from units outside of the IAD corresponds with incidents reported on the IAD Daily Incident Log;

Advise the IAD Administrative Commander of any complaint documentation not received within two (2) business days and notify the appropriate division commander;

B.  Upon receipt, the Intake Officer shall search the IAD Complaint Database:

1.  If an entry, referring to the incident, is found in the database:

a.  Open investigation (includes investigations assigned to Intake)

1)  Advise and forward the information to the assigned investigator;
2)  Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;
3)  Update the IAD Complaint Database, if necessary;
4)  Make a CAL entry.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01469**

     b.     Closed investigation/No new pertinent information or allegation:

          1)     Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;

          2)     Make a CAL entry.

     c.     Closed investigation/New information or allegation

          1)     Take a recorded statement, if necessary;

          2)     Advise the Intake Supervisor of the new information/allegation;

          3)     Ensure any document(s)/recordings pertinent to the investigation are placed in the Control File; and;

          4)     Update the lAD Complaint Database, if necessary; and;

          5)     Make a CAL entry.

2.     If the entry is not in the database:

     a.     Enter the appropriate information into the lAD Complaint Database on the day received;

          1)     During contact with the complainant:

              a)     Advise the complainant that the phone line is recorded prior to taking a recorded statement;

              b)     Advise of right to file with CPRB;

              c)     Provide the lAD Case or Intake Number;

              d)     Ascertain if the complainant has contacted any other Department personnel regarding the complaint (in order to verify the 3304 start date); and

              e)     Advise and send the complainant a Complaint Packet.

          2)     Create a Control File

     b.     Attempt to locate appropriate documents to:

          1)     Link the complaint to an incident;

          2)     Identify witnesses; and

          3)     Identify personnel.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01470**

       c.      Evaluate and determine the nature of the information collected as to whether there is:

          1)     An allegation of an *MOR* violation;
          2)     Criminal violation;
          3)     Service Complaint;
          4)     No *MOR* violation; or
          5)     No jurisdiction.

C.    Send an Officer Complaint Notification Report, as notification, via email to the subject officer, immediate supervisor, and first-level commander if there is an allegation of an *MOR* violation. Place a copy of the sent notification email in the Control File.

      Supervisor or commander approval is required prior to sending a Complaint Notification Report for high profile, criminal, other complaint information likely to generate unusual public interest, or if doing so will compromise
the investigation.

D.    Print and include the complaint history (CIR Index Log) of subject officer(s) in the Control File.

E.    Ensure any intake due date extension request is submitted for approval and included in the Control File.

F.    Make one of the following disposition recommendations in the CAL and assign one of the following identifying lAD numbers:

    1.    Assign an lAD Case Number for the following:

        a.      Service Complaint – Informally resolved by ICR;

        b.      Service Complaint – Administrative Closure due to unsuccessful ICR or no benefit to the Department to continue any further;

        c.      Service Complaint – Forward to Chief of Police or designated bureau commander for review and follow-up;

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01471**

d.     Summary Finding -An abbreviated internal investigation in which a finding can be reached without conducting a formal internal investigation because a finding can be determined with no or minimal follow-up and based on the existing documentation, evidence, statements, and crime information data (e.g., Offense Report, Use of Force Report, video or digital recordings, complainant statement, radio purge, LRMS records).

e.     lAD or Division-level investigation regarding the alleged misconduct;

f.     Informally Resolved – Misconduct complaint can be resolved through an ICR by Intake per M-3.1);

2.     Assign an lAD Intake Number for the following:

a.     No *MOR* violation – When an allegation does not rise to the level of misconduct;

b.     No jurisdiction - Subject of complaint was not employed by OPD at the time of the incident; or

c.     Any other case, as directed by an lAD supervisor/commander.

G.     Enter the Intake Completion Date into the lAD Complaint Database. H.

Forward the Control File to the Intake Supervisor for review.

**TYSON- COH Resp. to 2nd RFP
GRUBER 01472**

### IX.    CONFIDENTIAL AND ANONYMOUS COMPLAINTS

A.    Confidential Complaints

Intake personnel receiving a __confidential__ misconduct complaint from any source shall:

1.    Not inquire as to the nature of the complaint;

2.    Instruct the complainant to contact the lAD Commander directly; and

3.    Make an lAD Complaint Database entry designating the Last Name field as "CONFIDENTIAL" and indicate using the appropriate drop-down Jist as "CONFIDENTIAL."

     **NOTE:** Disclosure of the complainant's name shall remain confidential unless and until such disclosure is required by law.

B.    Anonymous Complaints

1.    Intake personnel receiving an **anonymous** misconduct complaint from any source shall receive & process the complaint and investigate to the extent reasonably possible (e.g., by seeking corroboration of information, identity of officers, witnesses, etc.). An anonymous complaint refers to an individual who does not divulge or release any personal information about themselves (e.g. name, phone number, address) while filing the complaint.

2.    Make an lAD Complaint Database entry designating the Last Name field as "UNKNOWN" and indicate using the appropriate drop- down list as "ANONYMOUS."

Approved By



Internal Affairs Division

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01473**

Sample Internal Affairs Office Security Policy                    Addendum 5

Internal Affairs Policy and Procedure Manual

I.      IA Office Security
        a.   Internal Affairs files contain confidential material and require the
             following general office security measures:

             1.      Business Hours

                     a.      During normal business hours, the Internal Affairs Office
                             shall be staffed at all times by at least one member.

                     b.      Any person visiting the IA offices shall sign in at the
                             front desk stating name, date, time, and contact number,
                             agency affiliation, if appropriate, and reason for visit. An
                             IA commander may exempt a person from this
                             requirement.

                     c.      All visitors shall wait in the reception area until escorted
                             or directed by office staff.

             2.      Closing Routine

                     a.      The assigned Intake Officer or designee shall remain in
                             the IA office until the close of normal business hours.

                     b.      Prior to leaving the office, the Intake Officer or the last
                             person leaving the office, shall ensure the alarm is set and
                             all exterior office doors are secured.

             3.      General File Security

                     The Internal Affairs Division is the custodian of record for all
                     complaint investigations. The integrity, credibility, and security
                     of these files are the responsibility of all members/employees
                     assigned to the IA Division.

                     a.      The physical security of the file cabinets containing
                             control files and related materials shall be maintained at
                             all times.

                     b.      Only authorized Internal Affairs personnel shall enter,
                             search, inspect, or remove any case file or other material
                             from these file cabinets, unless by the IA commander.

**TYSON- COH Resp. to 2nd RFP
GRUBER 01474**

Legal / Tort Claims Sample Policy                                      Addendum 6

Internal Affairs Policy and Procedure Manual

The purpose of this directive is to set forth IA policy and procedures for handling legal/tort claims received from the Office of the City Attorney (OCA).

I.      RECEIPT AND PROCESSING OF LEGAL/TORT CLAIMS

      A.      The Administrative Unit Lieutenant and supervisors receive legal/tort claims via email from the Office of the City Attorney (OCA).

      B.      Upon receipt, the Administrative Section Lieutenant or designee shall process the legal/tort claim in the following manner:

            1.      Print all documents received from the OCA, to include:

                  a.      Legal/tort claims;
                  b.      Lawsuits;
                  c.      Summons;
                  d.      Subpoenas; and
                  e.      Weekly Report.

            2.      The Administrative Section Lieutenant or designee shall reconcile the Weekly Report to ensure the documents enumerated in Part I, B, 1, a-d above have been received. The OCA shall be contacted if the Weekly Report does not reconcile.

      C.      Upon receipt of a legal/tort claim, the Intake Officer shall:

            1.      Check the IA Complaint Database for a previous entry to ensure a duplicate entry is not made.

                  a.      No previous entry – Create a new entry and Control File, and input the appropriate information into the IA database, check the "Legal Claim" check box and complete the fields in the submenu;

**TYSON- COH Resp. to 2nd RFP
GRUBER 01475**

        b.      Previous entry -Check the "Legal Claim" check box and complete the fields in the submenu.

        Place the legal/tort claim document in the Control File and forward a copy to the Investigative File, as appropriate.

2.      Assign an IA Case Number if the lawsuit/legal claim rises to the level of a *MOR* violation;

3.      Assign an IA Intake Number if the lawsuit or legal/tort claim does not rise to the level of a *MOR* violation;

4.      Conduct and forward a preliminary investigation into the lawsuit/legal claim to the Intake Supervisor.

D.      Upon receipt, the Intake Supervisor shall:

1.      Review the preliminary investigation for completeness and quality.

2.      Approved preliminary investigations shall be forwarded to the Administrative Lieutenant for review; or

3.      Incomplete or inadequate investigations shall be returned to the investigator for revision or correction.

4.      Forward approved preliminary investigations to the Administrative Lieutenant.

E.      Upon receipt, the Administrative Lieutenant shall:

1.      Review the preliminary investigation for completeness and quality.

2.      Return incomplete or inadequate investigations to the Intake Officer for revision or correction; or

3.      Approve an investigation completed by an Intake Officer;

4.      Forward the preliminary investigation to IA or the appropriate bureau for a division-level investigation.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01476**

II.      **LEGAL/TORT CLAIMS RECONCILIATION**

A.      A designated administrative supervisor shall conduct a quarterly review of legal/tort claims cases in order to ensure compliance with this process.
The review shall include:

1.      Ensuring all the legal/tort claims enumerated in each Weekly Report from the OCA for the proceeding quarter are reconciled and entered into the IA database;

2.      Identifying discrepancies between the Weekly Report and the IA database and ensuring they are corrected.

3.      Ensuring internal investigations are handled separately and not delayed, halted, or modified because the underlying matter is in civil litigation, unless such delay is specifically authorized in writing by the Chief of Police.

B.      The Administration and Investigation Section Commanders shall notify the Administration Section Supervisor of any case that is delayed, halted, or modified because the underlying matter is in civil litigation.

**TYSON- COH Resp. to 2nd RFP
GRUBER 01477**

**Skelly Process Sample Policy**                                    Addendum 7

Internal Affairs Policy and Procedure Manual

The purpose of this directive is to set forth Division policy and procedures during the Skelly process.

The subject member or employee is entitled to pre-disciplinary due process and administrative appeal rights through a Skelly Hearing.

A Skelly Hearing is chaired by a Deputy Chief or Captain not in the direct operational chain-of-command of the subject member or employee.

**I.   SKELLY NOTIFICATION**

Upon provisional approval of discipline by the Chief of Police, higher than a written reprimand, the Administrative Services Supervisor shall ensure:

A.    A Skelly Notification Letter is prepared; and

B.    The Skelly Notification Letter shall be personally served or mailed, via US Certified Mail.

1.    File the return receipt in the Investigative File.

2.    If a return receipt is not received within 10 calendar days, attempt to verify service.

3.    If proof of service cannot be verified, arrangements for personal service shall be made.

C.    All administrative steps shall be documented in the CAL, as necessary.

**TYSON- COH Resp. to 2nd RFP
GRUBER 01478**

## II.      SKELLY FILE PREPARATION

A.      The Administrative Services Supervisor shall ensure:

1.      A Skelly Hearing Binder is delivered to the Office of City Attorney (OCA) for review. The OCA will identify attorney-client information which needs to be removed prior to making the file available to the subject member or employee. A receipt for the file shall be obtained from the OCA at the time of delivery.

2.      The attorney-client information identified by the OCA is redacted from the Skelly Hearing Binder prior to preparing a Skelly File for the subject member, employee, or the subject's representative. Copies of any recorded interviews, transcripts and investigator's notes shall be provided in the Skelly File for the subject member, employee, or the subject's representative.

3.      Upon review by the OCA, a complete copy of the Investigative File (Skelly Hearing Binder) to the Skelly Officer as soon as possible.

4.      A Skelly File Inventory is prepared, verified, and signed by the subject personnel or representative receiving the Skelly File, at the time of delivery. The signed original shall be placed in the Investigative File.

Only one (1) copy of the Skelly File shall be provided to the subject member, employee, or the subject's representative. Additional copies may be provided with the prior approval of an IAD Commander.

B.      All administrative steps shall be documented in the CAL, as necessary.

**TYSON- COH Resp. to 2nd RFP
GRUBER 01479**

### III.    ADMINISTRATIVE SERVICES SUPERVISOR RESPONSIBILITIES

Upon return of the Skelly Hearing Binder and Skelly Report from the Skelly Officer, the Administrative Services Supervisor shall ensure the procedures are completed for each of the following approved levels of discipline:

A.    Termination/Demotion/Suspension- Greater than 10 days

    1.    Prepare a Notice of Discipline to the subject member or employee for signature by the City Administrator.

    2.    Once the Notice of Discipline is signed by the City Administrator, the Notice of Discipline shall be personally served on or mailed, via US Certified Mail, to the subject member or employee.

        a.    File the proof of service or return receipt in the Investigative File.

        b.    If a return receipt is not received within 10 calendar days, attempt to verify service. If proof of service cannot be verified, arrangements for personal service shall be made.

    3.    Forward a copy of the signed Notification of Discipline to the:

        a.    Subject member/employee's Deputy Chief/Director;
        b.    Office of Personnel/Employee Relations;
        c.    Personnel Division; and
        d.    Fiscal Services Division.

B.    Fine/Salary Reduction/Suspension – Less than 10 Days

    1.    Prepare a Notice of Discipline to the subject member or employee for signature by the Chief of Police.

    2.    Once the Notice of Discipline is signed by the Chief of Police, the Notice of Discipline shall be personally served on or mailed, via US Certified Mail, to the subject member or employee.

**TYSON- COH Resp. to 2nd RFP
GRUBER 01480**

Hollywood, Florida Police Department
Independent Assessment of Internal Affairs

      a.    File the proof of service or return receipt in the Investigative File.

      b.    **If** a return receipt is not received within 10 calendar days, attempt to verify service.

      c.    **If** proof of service cannot be verified, arrangements for personal service shall be made.

3.    Forward a copy of the signed Notification of Discipline to the:

      a.    Subject member or employee's Deputy Chief/Director;
      b.    Office of Personnel Resource Management;
      c.    Personnel Division; and
      d.    Fiscal Services Division.

C.    Written Reprimand

1.    Prepare the Written Reprimand to the subject member or employee for signature by the Bureau Deputy Chief/Director or the Chief of Police.

2.    Forward the approved original Written Reprimand through the subject member or employee's chain-of-command[1] to the immediate supervisor for administration of discipline.

3.    File the signed copy of the Written Reprimand verifying discipline was administered on the subject member or employee, in the Investigative File, upon receipt.

---

[1] A written reprimand approved for a subject member or employee, assigned to the Bureau of Field Operations, shall be forwarded directly to the BFO Administration Unit for distribution through the appropriate chain-of-command.

**TYSON- COH Resp. to 2nd RFP**
**GRUBER 01481**

Hollywood, Florida Police Department
Independent Assessment of Internal Affairs

Internal Affairs Call-Out Procedures                                    Addendum 8

I.      IA CALL-OUT PROCEDURES

    A.      The Investigative Section Commander shall be notified of all call-outs.

    B.      The IA Division shall establish and maintain an investigator Call-Out (Stand-By) protocol memorandum for call-outs at any time for the following circumstances:

        1.      All use of Level 1 force or In-Custody Death incidents;

        2.      All vehicle pursuit related death incidents;

        3.      Any incident likely to generate unusual public interest and/or bring the Department into disrepute; or

        4.      When directed by a commander with the approval of an IA commander.

    C.      The IA Call-Out Protocol memorandum shall designate the order of call-outs and be posted on the Sign-Out Bulletin Board in the IA Investigative Section office.

    D.      The IA Call-Out Protocol memorandum shall be forwarded and kept on file with the Patrol Desk and the Communications division.

    E.      Specific Call-Out Investigator's responsibilities are enumerated in the following directives:

        1.      IA Policy and Procedure _____, Procedures for Force and Death Investigations:

            a.      Level 1 force incidents; and

            b.      In-custody death incidents.

        2.      IA Policy and Procedure _____, Vehicle Pursuit Related Deaths for vehicle pursuit related death incidents.

        3.      Investigators shall use the general guidelines for investigations enumerated in Department Training Bulletin _____, Internal Investigation Procedure Manual.

_____
Internal Affairs Division Coordinator

**TYSON- COH Resp. to 2nd RFP
GRUBER 01482**