UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 116-62215-CIV-DIMITROULEAS

JEAN SUAREZ, individually and as
Personal Representative of the Estate of
DANIEL TYSON, deceased,

    Plaintiff,
vs.

CITY OF HOLLYWOOD,

    Defendant.
_____/

## OMNIBUS ORDER ON *DAUBERT* MOTIONS

THIS CAUSE is before the Court on Defendant's Motion to Preclude Expert Witness Testimony [DE 101] and Plaintiff's Motion to Exclude the Report and Testimony of Defendant's Experts Gary Michael Vilke, M.D. and Charles W. Drago [DE 110]. The Court has carefully considered the Motions, the Responses [DE 122, 127], and the Replies [DE 132, 134], the documents and exhibits filed in the record, and is otherwise fully advised in the premises.

Plaintiff brought this wrongful death action, alleging that her son, Daniel Tyson, died when police used unnecessary and unreasonable excessive force against Tyson, who suffered from mental illness at the time of his death, by repeatedly discharging a Taser stun gun, as well as applying physical force, after police had restrained him in handcuffs and leg shackles face down on the ground. Second Am. Compl. [DE 76] ¶ 1. Plaintiff asserts claims for wrongful death, violation of the Americans with Disabilities Act, violation of § 504 of the Rehabilitation Act, and violation of 42 U.S.C. § 1983.

Both parties filed motions to exclude each other's expert witnesses under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence

1

(the "Rules"). The Court will first set forth the applicable legal standards governing the admissibility of expert testimony and will then consider each expert witness in turn.

A.     **Legal Standard**

Rule 702,[1] as explained by *Daubert* and its progeny, governs the admissibility of expert testimony. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). "Under Rule 702 and *Daubert*, district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." *Rink*, 400 F.3d at 1291 (quoting *Daubert*, 509 U.S. at 589). Expert evidence is reliable and relevant—and, therefore, admissible—when the following factors are met:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches her conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* (internal quotations omitted). The party offering the expert must prove admissibility—under these three prongs—by a preponderance of the evidence. *Daubert*, 509 U.S. at 1292.

Under the first prong, "experts may be qualified in various ways." *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Therefore, "[w]hile scientific training or education may

---

[1] Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

provide possible means to qualify, experience in a field may offer another path to expert status." *Id.* at 1260-61. "The qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) (quoting *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 585 (N.D. Fla. 2009)).

Under the second prong, courts have set forth the following list of *nonexclusive* factors to assist in determining whether an expert's methodology is reliable: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community." *Rink*, 400 F.3d at 1291 (citing *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Tech*, 326 F.3d at 1341. When determining whether a party has met its burden, "[a] trial judge has 'considerable leeway' in deciding how to determine when a particular expert's testimony is reliable and how to establish reliability." *Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co.*, 649 F. Supp. 2d 1363, 1371 (S.D. Fla. 2009) (quoting *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 302 (11th Cir. 2009)). Accordingly, "[t]o the extent that expert opinions are derived from literature review, witness interviews and data analysis, they are not automatically rendered unreliable by their non-susceptibility to empirical verification." *United States v. Levinson*, No. 10–80166–CR, 2011 WL 1467225, at *4 (S.D. Fla. Mar. 17, 2011) (citing *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir.2009)).

Under the third prong, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63. "[W]here an expert opinion has a tendency to confuse the trier of fact, it may not satisfy the helpfulness prong." *J.G. v. Carnival Corp.*, No. 12–21089–CIV, 2013 WL 752697, at *4 (S.D. Fla. Feb. 27, 2013) (citing *Frazier*, 387 F. 3d at 1263). Moreover, to assist the trier of fact, "'[e]xpert testimony must be relevant to the task at hand . . . *i.e.*, that it logically advances a material aspect of the case.'" *Coral Way, L.L.C. v. Jones*, No. 05-21934-CIV, 2006 WL 5249734, at *2 (S.D. Fla. Oct. 17, 2006) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004)).

**B.     Plaintiff's Motion**

    **1. Dr. Gary Michael Vilke**

Defendant has proffered the expert testimony of Dr. Gary Michael Vilke ("Dr. Vilke"), board certified emergency medicine physician and clinical professor[2] with experience in cardiac, arrest, Excited Delirium Syndrome (ExDS), and the physiologic effects of TASER Electronic Control Devices ("Tasers") on humans. In his report, Dr. Vilke opines that: 1) the restraining process did not cause Tyson's cardiac arrest and death; 2) the use of the Taser on Tyson did not cause or contribute to his cardiac arrest; and 3) Tyson was exhibiting signs and symptoms consistent with ExDS, which, exacerbated by a severely diseased heart and continued exertion from resistance, is the probable cause of his cardiac arrest and death.

Plaintiff moves to preclude Dr. Vilke from testifying on his opinion that the restraining process did not cause Tyson's death. Plaintiff takes issue with the reliability of this opinion,

---

[2] Vilke received a bachelor of science in zoology at the University of California, Berkley, and an M.D. from the University of California, San Diego School of Medicine, and is board certified in emergency medicine.

arguing that Dr. Vilke could not point to any studies with variables that matched Tyson's at the time of his death – handcuffed, leg shackled, and in a prone position – on which his opinion was based and that Vilke did not take into account the weight of the officers putting pressure on Tyson's body before his death.

The Court has "'considerable leeway' in deciding how to determine whether an expert's testimony is reliable and how to determine reliability. *Coconut Key Homeowners Ass'n, Inc.*, 649 F. Supp. 2d at 1371. Accordingly, "[t]o the extent that expert opinions are derived from literature review, witness interviews and data analysis, they are not automatically rendered unreliable by their non-susceptibility to empirical verification." *Levinson*, 2011 WL 1467225, at *4. Dr. Vilke considered medical and scientific literation and his own research and experience. Additionally, he considered the position of each officer and where weight was being placed on Tyson along with information regarding Tyson's condition during the restraint (breathing, continuing to resist). To the extent Plaintiff takes issue with the accuracy of the data from which Dr. Vilke's opinion was derived, such challenges properly go to the weight and persuasiveness of the expert testimony, not its admissibility. *See Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. Sept. 7, 2011). Accordingly, the opposing party's criticisms may well form the basis for "[v]igorous cross-examination and "presentation of contrary evidence" at trial. *See Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001).

Plaintiff also argues that Dr. Vilke's opinion that the use of the Taser did not contribute to Tyson's death is unreliable because Dr. Vilke did not review any studies involving use of a Taser on a person with severe arteriosclerosis or mental illness or both. Plaintiff does not argue that such studies exist and that Dr. Vilke failed to considered them, but rather that such studies have never been performed. The Court disagrees. The many studies reviewed by Dr. Vilke involving the effect of use of a Taser on humans, particularly in light of his own background in researching Taser use, are not so dissimilar as to render his opinion unreliable.

5

Lastly, Plaintiff argues that Dr. Vilke's final opinion that Tyson's death was caused by ExDS exacerbated by his diseased heart and physical exertion should be excluded because he failed to reliably rule out prone restraint and Taser use as causes of death. Plaintiff's argument is premised on their contention that his prior opinions are unreliable. Because the Court finds that Dr. Vilke's prior opinions are not unreliable such that he should be precluded from testifying about them, the Court also will not preclude testimony on this final opinion.

### 2.   Charles W. Drago

Defendant has proffered the expert testimony of Charles W. Drago ("Mr. Drago")[3] on the City's police policies and practices. Mr. Drago offered three opinions: 1) there is no evidence in the materials reviewed that the Hollywood Police Department failed to properly train their police officers in the proper use of the Taser; 2) there is no evidence in the materials reviewed that the Hollywood Police Department failed to properly train their police officers in the proper procedures for dealing with the mentally ill; and 3) there is also no evidence in the materials reviewed that the Hollywood Police Department failed to properly train or supervise their police officers in the proper Use of Force.

Plaintiff argues that Mr. Drago should not be permitted to testify that the officers were "actually properly trained"—rather than whether the training program is sufficient—because Mr. Drago did not conduct any independent investigation to determine whether they were, in fact, actually trained. Plaintiff argues that Mr. Drago, for example, did not attend any of the City's or FDLE's classes or sit in on a ride-along with an officer in training to confirm whether officers are being properly trained and supervised. Plaintiff contends that, instead, Mr. Drago merely reviewed training materials, sign-off sheets, and tests. For these same reasons, Plaintiff contends

---

[3] Mr. Drago has worked in law enforcement in various positions for 30 years. He was a Florida State Certified Instructor in Police Procedures and served as a Field Training Officer and police instructor in the Broward County Police Academy for approximately ten years. He has an associate's degree and bachelor's degree in criminal justice and graduated from the Southern Police Institute Command Officer's School at The University of Louisville.

that Mr. Drago's opinions are not helpful to the jury as they are nothing more than a recitation of the written training materials.

In response, Defendant points to the range of materials that Mr. Drago reviewed and evaluated through the lens of his more than thirty years of law enforcement experience. Mr. Drago reviewed not only the Hollywood Police Department policies and training materials, but also the deposition transcript of the City's corporate representative, Lieutenant Thea Basler, who testified about the Hollywood Police Department's training programs and officer training, the personnel file and training records for each of the involved officers, and the homicide investigative file, including incident reports and officer sworn statements.

The Court finds Mr. Drago's opinions, based on his review of pertinent material coupled with his law enforcement experience, to be sufficiently reliable. *See Levinson*, 2011 WL 1467225, at *4. Drago's failure to attend City or FDLE classes or attend a ride-along are issues that Plaintiff may question him about on cross-examination at trial. The Court also agrees with Defendant that Mr. Drago's opinions will be helpful to the jury. Whether a policy training program meets generally accepted police practices is outside the common understanding of a typical juror.

Based upon the foregoing, the Court will allow Mr. Drago's proffered expert testimony.

**C.     Defendant's Motion**

    1.     **Roy Taylor**

Plaintiff has proffered the expert testimony of Roy Taylor ("Mr. Taylor")[4] for the purpose of testifying regarding the City's use of force and other procedures and whether the City

---

[4] Taylor has worked in law enforcement in various position for 38 years. He is a certified Taser instructor, a former adjunct faculty member teaching criminal justice at Wake Technical College and South-Eastern Community College, and is a Ph.D. candidate in the Criminal Justice and Public Policy program at Walden University.

7

acted in accordance with established law enforcement standards.

Defendant moves to preclude Mr. Taylor from testifying on numerous grounds. Defendant first argues that Mr. Taylor is not qualified to testify that the use of a Taser can cause a person's death and that the use of a Taser caused Tyson's death. Plaintiff responds that Mr. Taylor was not offered to provide, and will not provide at trial, an opinion on the cause of Daniel's death. [DE 122] at 3 n.1. Accordingly, this portion of Defendant's motion is denied, without prejudice, as moot.

Defendant also argues that Mr. Taylor is "arguably not qualified to offer an expert opinion regard the City's policing policies and procedures either." Defendant does not elaborate on this argument and provides no support for it. Upon a careful review of the record, the Court rejects Defendant's argument and finds that Mr. Taylor is sufficiently qualified in terms of education and experience to provide testimony regarding the City's policing policies and procedures.

Defendant also moves to preclude Mr. Taylor from testifying at trial as to opinions that were disclosed for the first time during his deposition in this case. Plaintiff responds that Mr. Taylor will testify at trial in accordance with the opinions set forth in his written report and detailed further in his deposition. The Court, therefore, denies Defendant's motion on this issue, without prejudice. The Court will exclude any new opinions presented at trial that were not previously disclosed but will allow Mr. Taylor to testify regarding any opinion disclosed in his written report, including additional detail about those opinions.

Defendant next argues that Mr. Taylor's opinions regarding the City's policies, training, and supervision are not sufficiently reliable. However, Defendant's criticisms, for example that insufficiencies in the City's policies and procedures identified by Taylor also exist in his own

company's policies and practices, go to the weight and persuasiveness of Mr. Taylor's testimony and may addressed by cross-examination at trial.

Finally, Defendant argues that Mr. Taylor's testimony that the officer's use of force was "excessive," "unreasonable," or violated department policy should be precluded as unhelpful to the jury. Defendant's primary complaint is that Mr. Taylor's opinion is based on a flawed interpretation of a selective record. Again, flaws in the basis of Mr. Taylor's opinion go to the weight of his testimony, not its admissibility, and those perceived flaws can be addressed through cross-examination. *See Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011). Defendant also argues that these opinions may confuse the jury regarding the bases on which they could find Defendant liable. The Court disagrees as the jury will be instructed on the applicable law. *See Ayers v. Harrison*, 650 F. App'x 709, 719 (11th Cir. 2016) (testimony by "use of force" experts "is generally admissible as long as the jury is properly informed that the expert is testifying only 'regarding prevailing standards in the field of law enforcement.'") (quoting *Samples v. City of Atlanta*, 916 F.2d 1548, 1551 (11th Cir. 1990)).

Based upon the foregoing, the Court will allow the introduction at trial of Mr. Taylor's proffered expert testimony, subject to the limitations above.

**2.     Dr. Mark Shuman**

Plaintiff proffers the testimony of Dr. Mark Shuman ("Shuman"), a medical doctor and current Associate Medical Examiner at the Miami-Dade County's Medical Examiner Department. In his report, Dr. Shuman opined that "[t]he use of a Taser conductive energy device may have contributed to [Tyson's] death as the result of additional stress caused by pain, but only if there was a temporal association with the cardiopulmonary arrest and the last discharge."

Defendant seeks to preclude Dr. Shuman from testifying that the use of a Taser contributed to Tyson's death. Defendant argues that Dr. Shuman's opinion is unreliable because Dr. Shuman expressed uncertainty as to the amount of pain someone experiencing ExDS might feel if Tased. Defendant asserts that its own expert has studied this question and concluded that a Taser exposure does not result in significant increases in characteristics of physiologic stress. In essence, Defendant's argument is that it and its expert disagree with Dr. Shuman's opinion that Taser use can cause increased physiologic stress. This disagreement can be addressed through cross-examination, the presentation of Dr. Vilke's testimony, and contrary evidence. *See S. States Co-op., Inc. v. Melick Aquafeeds, Inc.*, 476 F. App'x 185, 189 (11th Cir. 2012) ("[T]he court's role as a gatekeeper is not intended to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (citations and quotations omitted). Therefore, the Court will allow Plaintiff to proffer this testimony at trial.

### 3. Dr. Daniel Wohlgelernter

Plaintiff proffers the testimony of Dr. Daniel Wohlgelernter in rebuttal to Dr. Vilke's opinion that Tyson's death was not caused by the restraining process by City of Hollywood police officers. As described above, Dr. Vilke intends to testify that Tyson's death was caused by ExDS, exacerbated by a diseased heart and continued exertion from resistance, and not the use of the Taser on Tyson or the restraining process. In rebuttal, Dr. Wohlgelernter identifies facts and assumptions that, in his opinion, Dr. Vilke did not properly factor into his analysis and proffers his own opinion that Tyson's cause of death was restraint/compressive asphyxia with resultant hypoxia/hypoxemia causing PEA cardiac arrest and not ExDS.

10

Defendant moves to exclude Dr. Wohlgelernter's testimony, arguing that he is not a proper rebuttal expert but rather offers opinions on a novel theory of Plaintiff's case. The Court disagrees. If Defendant calls Dr. Vilke at trial, Plaintiff may call Dr. Wohlgelernter in rebuttal; Plaintiff may not call him in her case in chief, however.

Defendant also argues that Dr. Wohlgelernter should be precluded from testifying because he is not qualified and his opinion is unreliable. Upon a careful review of Dr. Wohlgelernter's report and the parties' arguments, the Court finds that he is sufficiently qualified in terms of education and experience to provide the proffered opinion. Dr. Wohlgelernter received his B.A., *summa cum laude*, in biology from Yeshiva College and his M.D. from Yale University School of Medicine. He is currently the Cardiology Section Chief at St. John's Hospital in Santa Monica, California, is a former professor of medicine, and has written extensively on issues related to cardiology. His opinions here were formulated from a review of a records in this case, relevant medical literature, and his own education and experience. The Court will allow the introduction at trial of Wohlgehlernter's proffered expert testimony in rebuttal, as stated above.

**E.     Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Preclude Expert Witness Testimony [DE 101] and Plaintiff's Motion to Exclude the Report and Testimony of Defendant's Experts Gary Michael Vilke, M.D. and Charles W. Drago [DE 110] are hereby **DENIED,** as explained above.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 9th day of November, 2018.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of record